UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LEROY PEOPLES,

                              Plaintiff,


v.                                              9:22-cv-1263
                                                (GTS/TWD)


ANTHONY ANNUCCI, et al.,

                              Defendants.
_____

APPEARANCES:                                    OF COUNSEL:

LEROY PEOPLES
*Plaintiff, pro se*
Dell Motel
609 Court Street
Rm #8
Binghamton, NY 13904

NEW YORK STATE ATTORNEY GENERAL               AIMEE COWAN, ESQ.
Attorneys for Defendants
New York State Attorney General - Syracuse Regional Office
300 South State Street - Suite 300
Syracuse, NY 13202

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## <u>REPORT-RECOMMENDATION AND ORDER</u>

## I.      INTRODUCTION

       This matter has been referred for a report and recommendation by the Hon. Glenn T.

Suddaby, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).

Plaintiff Leroy Peoples ("Plaintiff") commenced this action pursuant to 42 U.S.C. § 1983 while

he was in the custody of the New York State Department of Corrections and Community

Supervision ("DOCCS"). *See* Dkt. No. 1 at 1-2.[1]  Currently before the Court is Defendant John

Shea's ("Defendant") motion for summary judgment. Dkt. No. 57. For the reasons set forth

below, the undersigned recommends the Defendant's motion be granted.

## II.    BACKGROUND

Prior to the incident giving rise to this cause of action, Plaintiff was serving a sentence in

the custody of DOCCS. Dkt. No. 57-10 at 1; *see also* Dkt. No. 1 at 4. Defendant Shea was

"assigned to supervise Plaintiff after his release to parole supervision in early 2021." Dkt. No.

57-10 at 1. Defendant first met with Plaintiff on February 5, 2021. *See* Dkt. No. 57-11 at 23.

On June 14, 2021, Plaintiff's wife, Sandy Peoples, met with Defendant at his office

where she reported that the previous night, she had been involved in a physical altercation with

Plaintiff at their shared residence, Plaintiff had stolen $1,000, and she was unaware of Plaintiff's

whereabouts but felt afraid. Dkt. No. 57-10 at 2; *see also* Dkt. No. 57-11 at 16. The Defendant

advised Ms. Peoples to contact the Binghamton Police Department. Dkt. No. 57-10 at 2. Ms.

Peoples provided a written statement to the Defendant, wherein she detailed Plaintiff, *inter alia*,

"became violent, physically hitting [her] in the face, arms, and body." Dkt. No. 57-12 at 1. Ms.

Peoples also provided a written statement to an officer of the Binghamton Police Department the

same day. *See* Dkt. No. 57-13 at 1-4.

The Binghamton Police Department charged Plaintiff with harassment, criminal mischief,

grand larceny, and criminal obstruction of breathing or blood circulation. *See* Dkt. No. 57-14 at

1, 10-12. The Police Department advised the Defendant of the charges. Dkt. No. 57-10 at 2;

---

[1] Citations to the parties' submissions will refer to the pagination generated by CM/ECF, the Court's electronic filing system. Unless otherwise indicated, excerpts from the record are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

Dkt. No. 57-11 at 13.  On June 14, and 15, 2021, Defendant "made several attempts to contact Plaintiff via telephone and to locate Plaintiff at his home."  Dkt. No. 57-10 at 2.  Plaintiff's arraignment on the aforementioned charges was scheduled for June 17, 2021, but he failed to appear.  Dkt. No. 57-10 at 2; Dkt. No. 57-11 at 13.  A warrant was issued and Plaintiff was arrested by the Binghamton Police Department Warrant Squad on June 18, 2021.  Dkt. No. 57-10 at 2.

Following Plaintiff's arrest, Defendant and Senior Parole Officer Murel Lorgren signed a parole warrant on June 18, 2021, charging Plaintiff with a violation of the conditions of his parole release agreement.  Dkt. No. 57-15 at 1.  Defendant Shea also imposed a "Special Condition" on Plaintiff, as documented in an acknowledgement signed by Plaintiff, which states, in relevant part, "I will NOT have direct, indirect, third party, or electronic contact with Sandy Peoples, or be in the area of their residence, employment, or any other place they may reasonably visit without prior written permission from my Parole Officer[.]"  Dkt. No. 57-17 at 1 (emphasis in original).

Binghamton City Court Judge Carol Cocchiola issued a Temporary Order of Protection, dated June 18, 2021, requiring Plaintiff to: "[r]efrain from assault, stalking, harassment, aggravated harassment, menacing, reckless endangerment, strangulation, criminal obstruction of breathing or circulation, disorderly conduct, criminal mischief, sexual abuse, sexual misconduct, forcible touching, intimidation, threats, identity theft, grand larceny, coercion, unlawful dissemination or publication of intimate image(s) or any criminal offense against" Sandy Peoples, to remain in effect until December 18, 2021.  Dkt. No. 57-18 at 1-2.  Additionally, on June 21, 2021, Defendant authorized a "Violation of Release Report" detailing Plaintiff's alleged violations of the conditions of his parole release.  Dkt. No. 57-16 at 1-3.

Plaintiff was held at the Broome County Jail from the time of his June 18, 2021, arrest until April 28, or 29, 2022.  Dkt. No. 57-8 at 16-17.  Plaintiff corresponded with Ms. Peoples throughout his time in custody at the Broome County Jail.  Dkt. No. 57-10 at 3; Dkt. No. 57-8 at 17.[2]  Defendant Shea filed a Supplementary Violation of Release Report on July 9, 2021, stating:

> According to Broome County Jail phone records, since being lodged, [Plaintiff] has called Sandy [Peoples] over 30 times in an attempt to have her drop the charges and not show up to court.  Calls were placed to . . . [a phone] number [] known by Parole to be the phone number for Sandy Peoples.

Dkt. No. 57-19 at 1.  Parole Revocation Specialist Katarzyna Lis-Johnson filed a second Supplementary Violation of Release Report, dated November 10, 2021, regarding Plaintiff's communication with Ms. Peoples.  Dkt. No. 57-20 at 1-2.

On April 1, 2022, Binghamton City Court Judge Carol Cocchiola issued a second Temporary Order of Protection, which Ordered Plaintiff to: "[r]efrain from assault, stalking, harassment, aggravated harassment, menacing, reckless endangerment, strangulation, criminal obstruction of breathing or circulation, disorderly conduct, criminal mischief, sexual abuse, sexual misconduct, forcible touching, intimidation, threats, identity theft, grand larceny, coercion, unlawful dissemination or publication of intimate image(s) or any criminal offense against Sandy Peoples . . . ."  Dkt. No. 1-2 at 16; *see also* Dkt. No. 1 at 7.  Judge Cocchiola

---

[2] In his deposition in connection with the instant action, Plaintiff was asked the following questions and provided the following answers:

> Q.      Okay, So you were in Broome County Jail from June 2021
>         to April 2022?
> A.      Yes.
> Q.      Gotcha. And you said you did continue to contact your wife
>         during that entire period?
> A.      The whole time I was in jail, yes.

Dkt. No. 57-8 at 17.

further ordered the "order of protection shall remain in force until and including 04/01/2023 . . . ." Dkt. No. 1-2 at 16.

On May 18, 2022, Plaintiff, represented by counsel, appeared before Administrative Law Judge David Stanton for a parole revocation hearing.  *See* Dkt. No. 57-21 at 1, 4.  On May 25, 2022, Judge Stanton revoked Plaintiff's parole status and ordered Plaintiff to be held until his maximum expiration date.  Dkt. No. 57-21 at 10; Dkt. No. 57-22 at 1.  Accordingly, Plaintiff was "released from parole supervision on May 26, 2022."  Dkt. No. 57-10 at 3.

On July 25, 2022, Plaintiff's Offender Rehabilitation Coordinator at Attica Correctional Facility served Plaintiff with an "Addition of Name to Negative Correspondence/Telephone List" form, instructing him to "discontinue corresponding with and telephoning . . . Sandy Peoples . . . ."  Dkt. No. 57-4 at 1.  The negative correspondence memorandum referred to the "OOP exp. 4/1/23."  Dkt. No. 57-4 at 1; *see also* Dkt. No. 57-8 at 31.

While housed at Clinton Correctional Facility, Plaintiff filed a grievance dated December 15, 2022, alleging "I have been waiting over one-month, and on-going, for a answer from Ms. K. Rocque (ORC) regarding the continuous denial of my right to communicate with my spouse." Dkt. No. 57-5 at 3.  Plaintiff sought "to lift the negative correspondence," he had received in July.  Dkt. No. 57-8 at 36.

Plaintiff commenced this action by filing a complaint, dated November 22, 2022, pursuant to 42 U.S.C. § 1983, along with a motion for leave to proceed *in forma pauperis* ("IFP").  *See* Dkt. Nos. 1-2.  Plaintiff alleged, *inter alia*, Defendant Shea "'arbitrarily and capriciously' imposed a new special condition of parole to not have contact with my wife . . . . This special condition of parole is still currently imposed and I am denied any contact with my wife."  Dkt. No. 1 at 4.  By Order dated January 17, 2023, Judge Suddaby found, to the extent

5

Plaintiff sought to assert "Section 1983 claims based on defendant Shea's initial imposition of the no-contact condition and charged violation of that condition, he has failed to state a claim upon which relief may be granted." Dkt. No. 5 at 13. However, insofar as Plaintiff sought "to challenge the constitutionality of the continued imposition of the no-contact condition after the conclusion of his final revocation hearing, when a determination was made that he would be incarcerated for violating the terms of his parole, this claim is not barred by *Heck* and its progeny because the continued existence of the no-contact condition following plaintiff's final revocation hearing has no impact on his current incarceration." Dkt. No. 5 at 16. Accordingly, Judge Suddaby ordered "plaintiff's Section 1983 intimate association claim against defendant Shea, based on the continued existence of the no-contact condition following plaintiff's final revocation hearing, **SURVIVES** sua sponte review and requires a response . . . ." *Id.* at 17 (emphasis in original).

Defendant Shea filed an answer. *See generally*, Dkt. No. 33. Plaintiff was deposed on December 20, 2023. *See* Dkt. No. 57-8. On March 15, 2024, the Defendant filed a motion for summary judgment. *See generally*, Dkt. No. 57. Defendant contends he is entitled to summary judgment because: (1) Plaintiff failed to exhaust his administrative remedies before commencing the instant action; (2) Plaintiff failed to demonstrate the Defendant's personal involvement; and (3) Defendant is entitled to qualified immunity. *See* Dkt. No. 57-2 at 12-25.

The Court issued a notice to Plaintiff of the April 5, 2024, deadline to respond to the Defendant's motion. Dkt. No. 58. On April 11, 2024, the Court noted Plaintiff had failed to file a response and, in light of Plaintiff's *pro se* status, sua sponte granted an extension of time until May 13, 2023, to submit his opposition to Defendant's motion. Dkt. No. 60. On May 3, 2024, Plaintiff filed a letter motion requesting return of his filing fees, Dkt. No. 61, which Judge

Suddaby denied without prejudice by Text Order dated May 14, 2024. Dkt. No. 62. Plaintiff has not opposed Defendant's motion for summary judgment. On May 16, 2024, the Defendant filed a letter in further support of his motion requesting the Court accept his factual assertions as true and deem Plaintiff to have consented to the legal arguments contained in Defendant's memorandum of law. Dkt. No. 63. Plaintiff filed a notice of change of address dated June 6, 2024, Dkt. No. 65, however, a copy of the docket sheet subsequently sent to the address contained therein was returned as "not deliverable." Dkt. No. 66.

## III.    LEGAL STANDARD

### A. Summary Judgment

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is warranted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-52 (1986). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Salahuddin v. Gourd*, 467 F.3d 263, 272-73 (2d Cir. 2006). A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005). The movant may meet this burden by showing the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing there is a genuine issue for trial. *Salahuddin*, 467 F.3d at 273. In that

context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Conclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998).

In determining whether a genuine issue of material fact exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008). Where a party is proceeding *pro se*, the court is obligated to "read [the *pro se* party's] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). However, that status "does not relieve [a *pro se*] plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (internal quotation marks and citation omitted).

In applying the summary judgment standard, the district court should not weigh evidence or assess the credibility of witnesses. *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996); *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996) ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment.").

**B. Local Rule 56.1**

Local Rule 56.1 requires a party moving for summary judgment to file and serve a Statement of Material Facts. L.R. 56.1(a). "The Statement of Material Facts shall set forth, in numbered paragraphs, a short and concise statement of each material fact about which the

moving party contends there exists no genuine issue." *Id*. The opposing party is required to file

a response to the Statement of Material Facts "admitting and/or denying each of the movant's

assertions in matching numbered paragraphs." L.R. 56.1(b). "The Court shall deem admitted

any properly supported facts set forth in the Statement of Material Facts that the opposing party

does not specifically controvert." *Id*. (emphasis in original).

Pursuant to Local Rule 56.1(a), Defendants filed and served a Statement of Material

Facts. Dkt. No. 57-1. As previously stated, Plaintiff did not respond to Defendant's motion for

summary judgment. Where, as in this case, a party has failed to respond to the movant's

Statement of Material Facts in the manner required under Local Rule 56.1(b), the facts in the

movant's statement to which the plaintiff has not properly responded will be accepted as true (1)

to the extent that they are supported by evidence in the record, and (2) provided that the

nonmovant, if proceeding *pro se*, has been specifically advised of the possible consequences of

failing to respond to the motion.[3] *See Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996); *see*

*also*, *e.g.*, *West v. Lagree*, No. 9:22-CV-0231 (MAD/CFH), 2024 WL 3649891, at *6 (N.D.N.Y.

June 10, 2024) ("While '[p]ro se litigants are . . . not excused from meeting the requirements of

Local Rule 56.1,' the Court retains discretion 'to consider the substance of the plaintiff's

arguments' even where there is incomplete compliance with the rule.") (alterations in original)

(quoting *Wali v. One Source Co.*, 678 F. Supp. 2d 170, 178 (S.D.N.Y. 2009) (internal citations

omitted)), *report and recommendation adopted*, 2024 WL 3548785 (N.D.N.Y. July 26, 2024).

Here, in deference to Plaintiff's *pro se* status, the Court will review the entire summary

judgment record to ascertain the undisputed material facts, citing to the facts as set forth in

Defendants' Statement of Facts when properly supported by the record, and also referring to

---

[3] Plaintiff was provided with the requisite notice. *See* Dkt. No. 57-23.

Plaintiff's sworn submissions when practicable. *See GlobalRock Networks, Inc. v. MCI Commc'ns Servs., Inc.*, 943 F. Supp. 2d 320, 329 (N.D.N.Y. 2013) ("Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather, the court must be satisfied that the citations to evidence in the record support the movant's assertions.") (citing *Giannullo v. City of New York*, 322 F.3d 139, 143 n.5 (2d Cir. 2003)).

## IV.    ANALYSIS

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The Supreme Court has held "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  Inmates must exhaust their administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *See Giano v. Goord*, 380 F.3d 670, 675 (2d Cir. 2004), *abrogated on other grounds*, *Ross v. Blake*, 578 U.S. 632 (2016).

Further, "the PLRA exhaustion requirement requires proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).  In order to properly exhaust his administrative remedies, an inmate must complete the administrative review process in accordance with the applicable state rules. *Jones v. Bock*, 549 U.S. 199, 218-19 (2007) (citing *Woodford*, 548 U.S. at 81).  DOCCS has a well-established Inmate Grievance Program ("IGP"), set forth in 7 N.Y.C.R.R. § 701 *et seq*.

> Generally, the DOCCS IGP involves the following procedure for the filing of grievances.  First, an inmate must file a complaint with the

facility's IGP clerk within twenty-one calendar days of the alleged occurrence. [7 N.Y.C.R.R.] § 701.5(a). A representative of the facility's Inmate Grievance Resolution Committee ("IGRC") has sixteen calendar days from receipt of the grievance to informally resolve the issue. *Id*. § 701.5(b)(1). If there is no such informal resolution, the full IGRC conducts a hearing within sixteen calendar days of receipt of the grievance and issues a written decision within two working days of the conclusion of the hearing. *Id*. §§ 701.5(b)(2), (3). Second, a grievant may appeal the IGRC decision to the facility's superintendent within seven calendar days of receipt of the IGRC's written decision. *Id*. § 701.5(c)(1). If the grievance involves an institutional issue (as opposed to a DOCCS-wide policy issue), the superintendent must issue a written decision within twenty calendar days of receipt of the grievant's appeal. *Id*. § 701.5(c)(3)(ii). Grievances regarding DOCCS-wide policy issues are forwarded directly to the central office review committee ("CORC") for a decision under the process applicable to the third step. *Id*. § 701.5(c)(3)(i). Third, a grievant may appeal to CORC within seven working days of receipt of the superintendent's written decision. *Id*. § 701.5(d)(1)(i). CORC is to render a written decision within thirty calendar days of receipt of the appeal. *Id*. § 701.5(d)(3)(ii).

*Hudson v. Kirkey*, No. 9:20-CV-00581 (LEK/DJS), 2023 WL 2324988, at *3 (N.D.N.Y. Mar. 2, 2023) (additional citation omitted). Exhaustion of the grievance procedure only occurs *after* CORC has rendered its decision. *Torres v. Carry*, 672 F. Supp. 2d 338, 344 (S.D.N.Y. 2009).

Because non-exhaustion is an affirmative defense, the defendant bears the burden of showing that an incarcerated individual has failed to satisfy the exhaustion requirements. *Jones*, 549 U.S. at 216. Here, the Defendant has satisfied the burden of demonstrating Plaintiff failed to exhaust his administrative remedies prior to commencing this action.

In his deposition, Plaintiff testified he filed one grievance concerning his ability to communicate with his wife, dated December 15, 2022. Dkt. No. 57-8 at 24-25, 29; *see also*, Dkt. No. 57-5 at 3. As Defendant points out, Plaintiff's complaint in the instant action was filed on November 28, 2022, "17 days *before* Plaintiff filed" said grievance. Dkt. No. 57-2 at 15 (emphasis in original). Because Plaintiff did not submit a grievance to Clinton Correctional

Facility's IGP clerk, much less appeal to CORC, before filing his complaint, it necessarily follows that Plaintiff did not properly exhaust his administrative remedies prior to commencing this action. *See*, *e.g.*, *Haywood v. Fuller*, No. 9:18-CV-01097 (MAD/DEP), 2019 WL 2442142, at *3 (N.D.N.Y. June 12, 2019) ("To the extent a civil rights claim must be exhausted by the grievance process, completion of the three-tiered process, through and including a final decision by the CORC, must be completed *before an action asserting that claim may be filed in court*.") (emphasis added) (collecting cases). Therefore, even assuming, *arguendo*, the grievance properly alerted the facility to Plaintiff's complaint against Defendant Shea,[4] Plaintiff's failure to complete DOCCS' established grievance process requires dismissal of his complaint on exhaustion grounds.

Finally, as the Defendant emphasizes, *see* Dkt. No. 57-2 at 15-16, "[d]ismissal is appropriate even if, as is the case here, the plaintiff's claims have since been exhausted." *Burrell v. Nelson*, No. 9:22-CV-0702 (DNH/ATB), 2023 WL 4373288, at *5 (N.D.N.Y. June 13, 2023) (citations omitted), *report and recommendation adopted*, 2023 WL 4365298 (N.D.N.Y. July 6, 2023). In other words, "[t]he fact that [plaintiff] subsequently exhausted his administrative remedies is irrelevant as he was required to properly exhaust before he sued." *Bowie v.*

---

[4] Defendant further argues Plaintiff failed to exhaust his administrative remedies because, even if he had filed his complaint after receiving a decision from CORC, "Plaintiff still failed to exhaust his administrative remedies because the facility was not properly alerted to his complaint against Officer Shea." Dkt. No. 57-2 at 16. To that end, Defendant avers Plaintiff's grievance "makes no mention of any alleged parole conditions imposed by Officer Shea or even the alleged imposition of any parole conditions in general," therefore, "Plaintiff's grievance was insufficient to alert prison officials that he was alleging some wrongdoing beyond that alleged against the individual specifically named in the grievance." *Id.* at 18. Because Plaintiff's complaint pre-dates his grievance, however, eliminating any dispute as to whether Grievance No. CL-0867-22 was properly exhausted, the undersigned need not determine whether the facility was properly alerted to the Defendant's alleged restriction of Plaintiff's right to intimate association by such grievance.

*Woodruff*, No. 9:18-CV-0266 (BKS/ML), 2019 WL 7606078, at *5 (N.D.N.Y. Sept. 20, 2019) (citing *Burgos v. Craig*, 307 Fed. App'x 469, 471 (2d Cir. 2008)), *report and recommendation adopted*, 2019 WL 5445519 (N.D.N.Y. Oct. 23, 2019); *see also*, *e.g.*, *Gambino v. Carey*, No. 9:20-CV-0162 (DNH/DJS), 2021 WL 1406742, at *4 (N.D.N.Y. Mar. 26, 2021) (explaining, "the subsequent determination of Plaintiff's claim by CORC does not remedy this failure to exhaust prior to filing suit.") (citation omitted), *report and recommendation adopted*, 2021 WL 1404556 (N.D.N.Y. Apr. 14, 2021); *Scott v. Uhler*, No. 9:16-CV-0403 (TJM/CFH), 2019 WL 5197139, at *5 (N.D.N.Y. July 31, 2019) ("Receiving a decision from CORC after filing a federal lawsuit does not satisfy the PLRA's requirement that administrative remedies be exhausted before filing suit . . . .") (citing *Neal v. Goord*, 267 F.3d 116, 122-23 (2d Cir. 2001)), *report and recommendation adopted*, 2019 WL 4667495 (N.D.N.Y. Sept. 25, 2019).

In sum, there is no genuine issue of material fact as to Plaintiff's failure to exhaust his administrative remedies; therefore, the undersigned recommends granting the Defendant's motion for summary judgment. *See*, *e.g.*, *Gambino*, 2021 WL 1406742, at *4-5; *Jenkins v. Short*, No. 9:19-CV-1352 (GTS/TWD), 2020 WL 9264842, at *7 (N.D.N.Y. Nov. 17, 2020), *report and recommendation adopted*, 2021 WL 958512 (N.D.N.Y. Mar. 15, 2021).  Because the Court recommends Defendant Shea's motion be granted on the basis of exhaustion, it does not reach the Defendant's additional arguments regarding personal involvement and qualified immunity. *See*, *e.g.*, *Davis v. Doe*, No. 9:16-CV-0994 (MAD/DJS), 2017 WL 8640829, at *5 n.4 (N.D.N.Y. Dec. 29, 2017), *report and recommendation adopted*, 2018 WL 1582230 (N.D.N.Y. Mar. 27, 2018).

**V.    CONCLUSION**

After carefully reviewing the record, the parties' submissions, and the applicable law, and for the reasons stated herein, it is hereby

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 57) be **GRANTED**; and it is further

**RECOMMENDED** that Plaintiff's intimate association claim against Defendant Shea be **DISMISSED**; and it is further

**ORDERED** that the Clerk provide to Plaintiff a copy of this Report-Recommendation and Order, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.[5]  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

**IT IS SO ORDERED.**

Dated: February 3, 2025
Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

---

[5] If you are proceeding *pro se* and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

2024 WL 3649891
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Adam WEST, Plaintiff,

v.

C. LAGREE,[1] et al., Defendants.

| 1 | In plaintiff's complaint, he spelled defendant's last name as "Legree." <u>See</u> Compl. at 1-2. In his declaration, defendant clarifies that his last name is spelt "Lagree." <u>See</u> Dkt. No. 50-3 at 1. Accordingly, the Clerk is respectfully directed to correct the case caption to reflect the spelling of defendant's name as "Lagree." |
|---|---|

No. 9:22-CV-00231 (MAD/CFH)
|
Signed June 10, 2024

**Attorneys and Law Firms**

Adam West, 14-A-5495, Cayuga Correctional Facility, P.O. Box 1186, Moravia, New York 13118, Plaintiff pro se.

NICHOLAS W. DORANDO, ESQ., Assistant Attorney General, Attorney General for the State of New York, The Capitol, Albany, New York 12224, Attorney for defendants.

## REPORT-RECOMMENDATION AND ORDER[2]

| 2 | This matter was referred to the undersigned for Report-Recommendation and Order pursuant to 28 U.S.C. § 636(b) and N.D.N.Y. L.R. 72.3(c). |
|---|---|

CHRISTIAN F. HUMMEL, UNITED STATES MAGISTRATE JUDGE

**\*1** Plaintiff pro se Adam West ("plaintiff"), an inmate who was, at all relevant times, in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") at Great Meadow Correctional Facility ("Great Meadow C.F."), brings this action pursuant to 42 U.S.C. § 1983, alleging that defendants Sergeant ("Sgt.") Christopher Lagree and Lieutenant ("Lt.") George Murphy (collectively, "defendants")[3] violated his constitutional rights under the Fourth and Fourteenth Amendments. <u>See</u> Dkt. No. 1 ("Compl."). Presently before the Court is defendants' motion for summary judgment brought pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). <u>See</u> Dkt. No. 50. Plaintiff opposed, and defendants replied. <u>See</u> Dkt. Nos. 56, 58. For the following reasons, it is recommended that defendants' motion be granted in part and denied in part.

| 3 | Plaintiff filed his complaint on or about March 7, 2022, also naming John Doe 1, John Doe 2, and John Doe 3 as defendants. <u>See</u> Dkt. No. 1-2 at 1. In the more than two years that have passed, plaintiff has not identified the John Doe defendants, and has not served process upon them. "This failure is not the result of lack of opportunity." <u>Santiagocruz v. Doe #4</u>, No. 9:21-CV-0806 (TJM/ML), 2023 WL 9600956, at *1 n.1 (N.D.N.Y. Dec. 15, 2023), <u>report and recommendation adopted sub nom. Santiagocruz v. Gordon</u>, 2024 WL 532499 (N.D.N.Y. Feb. 8, 2024). Plaintiff has had more than two years—far more than the typical 120-day period—to identify and serve defendants John Doe 1, John Doe 2, and John Doe 3, and the Court is under no obligation to extend the deadline indefinitely. <u>See, e.g., Thomas</u> |
|---|---|

v. Keane, 99-CV-4302 (DC), 2001 WL 410095, at *1, *5 (S.D.N.Y. April 23, 2001) (dismissing a claim under Fed. R. Civ. P. Rule 4(m) where the pro se plaintiff failed to serve the John Doe defendants within roughly two years of filing complaint); Waldo v. Goord, 97-CV-1385 (LEK/DRH), 1998 WL 713809, at *5 (N.D.N.Y. Oct. 1, 1998) (dismissing a claim under Fed. R. Civ. P. Rule 4(m) where the pro se plaintiff failed to serve the John Doe defendants within a year of filing his complaint). It is, therefore, recommended that plaintiff's claims against defendants John Doe 1, John Doe 2, and John Doe 3 be dismissed without prejudice for lack of timely service.

## I. Background

On review of defendants' motion for summary judgment, the facts will be related herein in the light most favorable to plaintiff as the nonmoving party. See Rattner v. Netburn, 930 F.2d 204, 209 (2d Cir. 1991) ("In assessing the record ... to determine whether there is a genuine issue as to any material fact, the court is required to resolve all ambiguities and draw all factual inferences in favor of the party against whom summary judgment is sought.").

## A. Undisputed Facts [4]

[4]    In support of their motion, defendants filed a Statement of Material Facts. See Dkt. No. 50-1. Plaintiff responded to defendants' Statement, admitting to nearly all of defendants' alleged facts in corresponding paragraphs. See Dkt. No. 56 at 1-3. Thus, to the extent that defendants' Statement of Material Facts is supported by the record, and not otherwise controverted by plaintiff, the Court will deem defendants' facts admitted by plaintiff. See Sledge v. Kooi, 564 F.3d 105, 107 n.2 (2d Cir 2009) (per curiam) (requiring the plaintiff, "when opposing a motion for summary judgment, to rely not 'upon the mere allegations' of his Complaint, but rather to 'set forth specific facts showing that there is a genuine issue of material fact' through affidavits and reference to discovery, [by] respond[ing] to each of the assertions in [the] statement of material facts with specific reference to the record and 'any facts set forth [therein] shall be deemed admitted unless specifically controverted' " by the plaintiff).

**\*2**    "Plaintiff was housed at [Great Meadow C.F.] from July 1, 2021 until September 27, 2021[.]" Dkt. No. 50-1 at 1, ¶1. "On August 4, 2021, Correction Officer G. Lehoisky ('C.O. Lehoisky') searched [p]laintiff's cell and discovered two photographs which contained gang material in [p]laintiff's possession." Id. at 1, ¶2; see Dkt. No. 50-2 at 3-4, ¶15. "During the search, C.O. Lehoisky observed [p]laintiff swallowing an object that was suspected to be contraband." Dkt. No. 50-1 at 1, ¶3; see Dkt. No. 50-2 at 3-4, ¶15. C.O. Lehoisky subsequently issued plaintiff a misbehavior report, and placed plaintiff on a contraband watch. [5] See Dkt. No. 50-1 at 1-2, ¶¶4-5.

[5]    "Under DOCCS' Directive 4910, entitled 'Control of and Search for Contraband,' incarcerated individuals are placed on a contraband watch when there is probable cause to believe that the incarcerated individual ingested or inserted contraband into their body." Dkt. No. 50-1 at 2, ¶6. "Once a determination is made that an incarcerated individual is to be placed on a contraband watch, DOCCS' directive 4910(V)(J) mandates a series of actions to be taken, including a strip frisk." Id. at 2, ¶7. "According to directive 4910(V)(J)(5)(d), all incarcerated individuals are to be subjected to a strip frisk prior to entering the Drug/Special Watch cell." Id. at 2, ¶8. "A strip frisk means a search of an incarcerated individual's clothes and body, including a visual inspection of body cavities." Id. at 2, ¶9. "For a male, this involves a mouth search, running hands through the incarcerated individual's hair, lifting arms to expose his armpits, lifting his testicles to expose the area behind his testicles, and bending over and spreading his buttocks to expose his anus to the frisking officer." Id. at 2, ¶10.

C.O. Lehoisky took plaintiff to Drug Watch Room #1, and strip frisked plaintiff. See Dkt. No. 50-1 at 2, ¶11. "C.O. Lehoisky completed a Report of Strip Frisk on Admission." Id. at 2, ¶12; see Dkt. No. 50-3 at 3, ¶13. "The strip search entailed [p]laintiff taking his clothes off and the officers checking his feet, hands, underarms, and the area behind his testicles." Dkt. No. 50-1 at 3, ¶13. "Plaintiff was also required to spread his buttocks and expose his anus." Id. at 3, ¶14. "The searching officers were

male and no one except the searching officers were present." Id. at 3, ¶15. "Plaintiff remained in Drug Watch Room 1 until August 11, 2021." Id. at 3, ¶17.

"On August 11, 2021[,] while [p]laintiff was in Drug Watch Room #1, he moved his mattress in front of his cell window, blocking visibility into his cell." Dkt. No. 50-1 at 3, ¶18. "Plaintiff was then moved from Drug Watch Room 1 to Drug Watch Room 2[,] at approximately 3:00 P.M." Dkt. No. 50-6 at 5; see Dkt. No. 50-1 at 3, ¶19. At this time, "C.O. Hall was assigned to Drug Watch Room 2." Dkt. No. 50-1 at 3, ¶20.

"On or about August 12, 2021[,] at or about 7:45 A.M., [p]laintiff was in Drug Watch Room 2." Dkt. No. 50-1 at 3, ¶21. That morning, "Sergeant Woodruff directed C.O. Londrigan to search Drug Watch Room 1 for contraband," as plaintiff was just moved out of that room. Id. at 3, ¶22. "C.O. Londrigan searched Drug Watch Room 1 at approximately 7:45AM, and he recovered" two ceramic razor blades "in the right rear corner [sic] of cell under debris, which CO Londrigan secured on his person and finished the search with no more contraband found." Id. at 4, ¶23. As a result, "[p]laintiff was issued an Incarcerated Misbehavior Report ('The August 12 incident'), charging him with the following rule violations: Contraband (113.23), Weapon (113.10), Smuggling (114.10)." Id. at 4, ¶24. "Lt. Owen reviewed the [report], and served it upon [p]laintiff on August 18, 2021, at 12:15 P.M." Id. at 4, ¶25.

**\*3** "On August 13, 2021, at 4:00 P.M., C.O. Miller observed [p]laintiff defecating on the floor in Drug Watch Room #2, in violation of an express order not to do so." Dkt. No. 50-6 at 6; see Dkt. No. 50-1 at 4, ¶26. "C.O. Miller issued [p]laintiff an Incarcerated Misbehavior Report ('The August 13 incident') for this incident, charging [p]laintiff with the following rule violations: Direct Order (106.10) and Unhygienic Act (118.22)." Dkt. No. 50-6 at 6; see Dkt. No. 50-1 at 4, ¶27. "This Misbehavior Report was also served on [p]laintiff on August 18, 2021 at 12:15 P.M." Dkt. No. 50-6 at 6; see Dkt. No. 50-1 at 4, ¶28.

"A [disciplinary] hearing was commenced on August 31, 2021 relative to the above-mentioned misbehavior reports." Dkt. No. 50-1 at 5, ¶33. Prior to the hearing, however, "[p]laintiff was provided with a Tier Assistant—Tier Assistant DeMarsh—who met with [p]laintiff on August 20, 2021 at 10:00 A.M." Id. at 4, ¶30. "Tier Assistant DeMarsh submitted several document[s], evidence, and witness requests on [p]laintiff's behalf[,]" and "concluded their work on August 24, 2021 after giving [p]laintiff all available documents and evidence." Id. at 5, ¶¶31-32. Lt. Murphy then conducted plaintiff's Tier III hearing on August 31, 2021. See id. at 5, ¶¶33-34.

"Following the commencement of the proceeding, the hearing was adjourned and was re-convened on September 7, 2021, where [Lt.] Murphy reviewed [relevant evidence]." Dkt. No. 50-1 at 5, ¶35. "The hearing was then adjourned to September 15, 2021, when [Lt. Murphy] received testimony from Officer Hall, at [p]laintiff's request, relative to the August 12 incident." Id. at 5, ¶36. "Further, [Lt.] Murphy called an incarcerated individual witness, at [p]laintiff's request." Id. at 5, ¶37. "The [h]earing was [then, again,] briefly adjourned so [Lt.] Murphy could receive photographic evidence that [p]laintiff requested." Id. at 5, ¶38.

"At each stage in the proceeding, [p]laintiff was present." Dkt. No. 50-1 at 5, ¶39. "While [Lt.] Murphy placed his findings on the record, he also prepared a written form stating the disposition, the evidence relied upon, and the reasons for the sanction imposed, which form was delivered to the [p]laintiff on the record, although he declined to sign the acknowledgment of receipt." Id. at 6, ¶40.

### B. Plaintiff's Disputed Allegations

Plaintiff alleges that, on August 4, 2021, at around 3:00 P.M., he "was ambushed by Sgt. Lagree and other [correctional] officers," who "immediately threw [plaintiff] on the wall to frisk [him]." Dkt. No. 56 at 7; Compl. at 7. The officers then walked plaintiff "into an undisclosed location and [told] him to strip off [his] clothes, which [plaintiff] complied." Compl. at 7. "They searched everywhere humanly possible." Id. They then took plaintiff back to his cell, and they searched his cell "for what seemed like

an hour or close to it." Id. Plaintiff observed Sgt. Lagree "whisper to one of the officers." Id. at 8. The officers then escorted plaintiff to "the clinic," where Sgt. Lagree asked plaintiff to consent to an x-ray. Id. Plaintiff declined, explaining that he "did not want to expose [him]self to radiation unless it was for emergency medical records." Id.

Sgt. Lagree thereafter housed plaintiff "inside a dryroom with no sink, toilet nothing but a bed," and the room smelled of feces and had traces of feces on the walls and mattress. Compl. at 8. Sgt. Lagree did not provide plaintiff with an explanation for transferring him to the dryroom, nor did he issue plaintiff a misbehavior report. See id. at 11. Sgt. Lagree told plaintiff that he could leave the dryroom only after "2 clean defecations, & 2 x-rays." Id. at 8. Plaintiff "immediately told [Sgt. Lagree that] clearing 2 x-rays is not part of procedure." Id. Plaintiff thought Sgt. Lagree "was bluffing" and that if he took two clean defecations, he would be released. Id. "After about 8 days and 2 defecations[, however, plaintiff] was not released." Id.

**\*4** On August 12, 2021, at around 10:00 A.M., plaintiff submitted to an x-ray. See Compl. at 8. Unidentified prison officials told plaintiff that "they [saw] an object in [his] teeth, for which [plaintiff] explained to them [he] had a metal filling in [his] teeth and to go speak with dental to confirm." Dkt. No. 56 at 7. Officers then took plaintiff back to the dryroom, where he requested to speak to a lieutenant "to let him know that the officers were violating [his] rights." Compl. at 8. Because the officers did not respond to plaintiff's request, plaintiff "obscure[d] the view of the cell with the mattress and demanded to see [a lieutenant]." Id. An hour later, a lieutenant arrived at the dryroom and directed plaintiff to exit. See id. After plaintiff complied, Sgt. Woodruff directed a correctional officer to search the dryroom. See id. The officers found no contraband, but an officer told plaintiff that he needed another x-ray because "they" saw "something in [his] teeth." Id.

On August 13, 2021, at around 4:00 P.M., plaintiff "had to defecate" and requested the observation officer "to bring [him] the bin so [he] could relieve [him]self." Compl. at 9. Plaintiff warned the observation officer it was an emergency. See id. The observation officer ignored the warning and told plaintiff to wait fifteen minutes for the sergeant. See id. After waiting ten minutes, "instead of defecting on [him]self," plaintiff defecated on the floor of the dryroom. Id. The sergeant that responded to the incident directed a correctional officer to issue plaintiff a misbehavior report. See id.

On August 17, 2021, at around 9:00 A.M., plaintiff submitted to another x-ray. See Compl. at 9. "Just like the time before[, plaintiff] wasn't given [a] radiation suit to prevent [him] from radiation[.]" Id. Although plaintiff was supposed to be released from the dryroom soon after the x-ray, plaintiff was instead escorted to the Special Housing Unit ("SHU") because the officers "found something." Id.

Plaintiff was issued two misbehavior reports and, thus, was subjected to a disciplinary hearing. See Compl. at 9-10. In preparation for his hearing, plaintiff requested video surveillance footage from August 11 and August 12. See id. at 10. Although a preservation form indicated that both the August 11 and August 12 videos had been preserved, only the August 12 footage was shown at plaintiff's hearing. See id. Lt. Murphy told plaintiff that the August 11 video surveillance footage he requested "was unobtainable," but offered no other explanation. Id.; see Dkt. No. 56 at 9. Lt. Murphy also "disregarded ... facts" during the hearing and relied on false testimony in reaching his determination. Compl. at 9-11. Lt. Murphy "eventually sentenced [plaintiff] to 270 days [in the] SHU." Id. at 9. However, "that [sentence] was later modified to 180 days after [plaintiff] appeal[ed]" the hearing determination. Id.


## II. Legal Standard

A motion for summary judgment may be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the burden of demonstrating the absence of disputed material facts by citing to "the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c). A fact is material if it "might affect the outcome of the suit,"

as determined by the governing substantive law; a "dispute about a material fact is 'genuine' ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

If the moving party meets this burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." <u>Anderson</u>, 477 U.S. at 248 (citation omitted); <u>see</u> <u>Wright v. Goord</u>, 554 F.3d 255, 266 (2d Cir. 2009). "When ruling on a summary judgment motion, the district court ... must resolve all ambiguities and draw all reasonable inferences against the movant." <u>Dallas Aerospace, Inc. v. CIS Air Corp.</u>, 352 F.3d 775, 780 (2d Cir. 2003). Still, the nonmoving party cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." <u>Knight v. U.S. Fire Ins. Co.</u>, 804 F.2d 9, 12 (2d Cir. 1986) (citing <u>Quarles v. Gen. Motors Corp.</u>, 758 F.2d 839, 840 (2d Cir. 1985) (per curiam)); <u>see also</u> <u>Hicks v. Baines</u>, 593 F.3d 159, 166 (2d Cir. 2010) ("[M]ere conclusory allegations or denials ... cannot by themselves create a genuine issue of material fact where none would otherwise exist.") (citation omitted).

 **\*5**  Where a party seeks judgment against a pro se litigant, or a pro se litigant moves for summary judgment, the Court must afford the pro se litigant special solicitude. <u>See</u> <u>Treistman v. Fed. Bureau of Prisons</u>, 470 F.3d 471, 477 (2d Cir. 2006) (per curiam). As the Second Circuit explained,

> [t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," that a pro se litigant's submissions must be construed "liberally," and that such submissions must be read to raise the strongest arguments that they "suggest[.]" At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, or arguments that the submissions themselves do not "suggest," that we should not "excuse frivolous or vexatious filings by pro se litigants," and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law[ ]" ....

<u>Id.</u> (citations omitted); <u>see</u> <u>also</u> <u>Sealed Plaintiff v. Sealed Defendant</u>, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that when [a] plaintiff proceeds pro se, ... a court is obligated to construe his pleadings liberally.") (citations and quotation marks omitted).

### III. Discussion

Plaintiff alleges that Sgt. Lagree violated his Fourth Amendment rights against unreasonable searches and seizures by forcing him to submit to two x-rays. <u>See</u> Dkt. No. 56 at 8; <u>see also</u> Compl. at 11. Plaintiff also brings a Fourteenth Amendment claim against Lt. Murphy, claiming that Lt. Murphy violated his due process rights. <u>See</u> Dkt. No. 56 at 9; <u>see also</u> Compl. at 10-11. Defendants move for summary judgment, arguing that "there is not a material dispute of fact." Dkt. No. 58 at 1. Specifically, defendants contend that (1) Sgt. Lagree did not violate plaintiff's Fourth Amendment rights; (2) Lt. Murphy provided plaintiff with sufficient process and, thus, did not violate plaintiff's Fourteenth Amendment rights; and (3) Sgt. Lagree and Lt. Murphy are nevertheless entitled to qualified immunity. <u>See</u> Dkt. No. 50-6 at 8-21.

### A. Procedural Issues

As an initial matter, defendants point out that plaintiff "admits nearly all material facts" in his response to defendants' Statement of Material Facts. Dkt. No. 58 at 1-2. Defendants argue that plaintiff's admissions are "fatal" to his Fourth and Fourteenth Amendment claims, as there is not a material dispute of fact. <u>Id.</u> at 2.

N.D.N.Y. Local Rule 56.1 mandates that the party moving for summary judgment file a Statement of Material Facts setting forth the "material fact[s] about which the moving party contends there exists no genuine issue." N.D.N.Y. L.R. 56.1(a). The party opposing a motion for summary judgment must "file a separate Response to the Statement of Material Facts. The opposing party response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in

a short and concise statement, in matching numbered paragraphs." Id., at 56.1(b). "Each denial shall set forth a specific citation to the record where the factual issue arises." Id.; see Lee v. City of Troy, 520 F. Supp. 3d 191, 198 (N.D.N.Y. 2021) ("Because a naked denial of a fact the movant claims to be undisputed would do little to help the Court, the opposing party must support every denial with a citation to record evidence supporting a genuine dispute of material fact."). "The Court may deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert." N.D.N.Y. L.R. 56.1(b); see Douglas v. City of New York, No. 18-CV-9327 (KPF), 2022 WL 294075, at *4 (S.D.N.Y. Feb. 1, 2022).

**\*6** While "[p]ro se litigants are ... not excused from meeting the requirements of Local Rule 56.1," the Court retains discretion "to consider the substance of the plaintiff's arguments" even where there is incomplete compliance with the rule. Wali v. One Source Co., 678 F. Supp. 2d 170, 178 (S.D.N.Y. 2009) (internal citations omitted); see Holtz v. Rockefeller & Co., 258 F.3d 62, 73 (2d Cir. 2001) ("[W]hile a court is not required to consider what the parties fail to point out in their Local Rule 56.1 Statements, it may in its discretion opt to conduct an assiduous review of the record even where one of the parties has failed to file such a statement.") (internal quotation marks omitted); see also Liverpool v. Davis, 442 F. Supp. 3d 714, 723 (S.D.N.Y. 2020) ("Nevertheless, even where there is incomplete compliance with the Local Rules, a court retains discretion to consider the substance of the plaintiff's arguments.") (internal quotation marks and citations omitted).

Here, as defendants assert, plaintiff admits nearly all facts contained in defendants' Statement of Material Facts. See Dkt. No. 56 at 1-3. Nevertheless, plaintiff also provides additional assertions throughout his opposition papers to argue that there is, indeed, a dispute of material fact. See id. at 1-10. The undersigned recognizes that plaintiff's compliance with Local Rule 56.1 is imperfect. However, in light of special solicitude, and in deference to plaintiff's pro se status, the undersigned will exercise its discretion to conduct "its own assiduous review of the record" for any disputes of material fact. Abraham v. Leigh, 471 F. Supp. 3d 540, 554 (S.D.N.Y. 2020); see FED. R. CIV. P. 56 advisory committee's note to 2010 amendment (noting that when a party "fails to properly address another party's assertion of fact as required by Rule 56(c)," "the court may choose not to consider the fact as undisputed, particularly if the court knows of record materials that show grounds for genuine dispute," and "the court may seek to reassure itself by some examination of the record before granting summary judgment against a pro se litigant"); see, e.g., Ford v. Deacon, No. 9:16-CV-01001 (MAD/TWD), 2018 WL 5729352, at *9 (N.D.N.Y. Aug. 27, 2018) ("[I]n deference to [the p]laintiff's pro se status, the Court, in the exercise of its discretion, has opted to conduct an assiduous review of the entire summary judgment record despite [the p]laintiff's failure to comply with the local rule."), report and recommendation adopted, 2018 WL 4501208 (N.D.N.Y. Sept. 20, 2018), aff'd, 793 F. App'x 13 (2d Cir. 2019) (summary order); Sanders v. St. Mary, No. 9:19-CV-1314 (BKS/TWD), 2021 WL 1575944, at *2 (N.D.N.Y. Apr. 22, 2021) ("As to any facts not contained in Defendants' Statement of Material Facts, in light of the procedural posture of this case, the Court is 'required to resolve all ambiguities and draw all permissible factual inferences' in favor of Plaintiff.") (quoting Terry v. Ashcroft, 336 F.3d 128, 137 (2d Cir. 2003)), report and recommendation adopted, 2021 WL 1999781 (N.D.N.Y. May 19, 2021).

Second, defendants also argue that plaintiff raises "for the first time in his opposition [papers,] that the Fourth Amendment violation by [Sgt.] Lagree was forcing [p]laintiff to comply with x-ray imaging." Dkt. No. 58 at 2. Defendants contend that plaintiff cannot advance such an argument before the Court because it constitutes a new claim, as "the only Fourth Amendment claim before this Court arose from the allegations that [Sgt.] Lagree escorted [p]laintiff to 'an undisclosed location,' made [him] take off his clothes, and then 'searched everywhere humanly possible' without justification." Id. Defendants assert that "[i]nsofar as references to x-ray imagining do exist in the Complaint, the Court reviewed the Complaint in its entirety, liberally construed [p]laintiff's pleadings, and did not find a cause of action as it relates to x-ray imagining" and "[p]laintiff has not moved to amend his complaint to include a claim related to x-rays[.]" Id.

**\*7** "A party generally may not assert a cause of action for the first time in response to a summary judgment motion." Simpson v. Town of Warwick Police Dep't, 159 F. Supp. 3d 419, 440 (S.D.N.Y. 2016) (citations and quotation marks omitted) (collecting cases); see Lyman v. CSX Transp., Inc., 364 F. App'x 699, 702 (2d Cir. 2010) (summary order) (finding that the district court did not abuse its discretion in declining to consider "new theories of liability" raised for the first time in opposition to summary judgment); see also Mediavilla v. City of New York, 259 F. Supp. 3d 82, 106 (S.D.N.Y. 2016) ("Because this theory of excessive

force is raised for the first time in [the] [p]laintiff's opposition to [the] [d]efendants' motion for summary judgment, [the Court] need not consider it here. It is well settled that a litigant may not raise new claims not contained in the complaint in opposition to a motion for summary judgment.") (citations omitted). "The rule is no different for pro se plaintiffs." King v. Puershner, No. 17-CV-1373 (KMK), 2019 WL 4519692, at *10 (S.D.N.Y. Sept. 19, 2019) (citing Wright v. Jewish Child Care Ass'n of N.Y., 68 F. Supp. 3d 520, 529 (S.D.N.Y. 2014) (holding that even pro se plaintiffs may not assert new claims in opposition to a motion for summary judgment)).

"However, under Federal Rule of Civil Procedure 15(b), the Court may consider claims outside those raised in the pleadings 'so long as doing so does not cause prejudice' to defendants." Simpson, 159 F. Supp. 3d at 440 (citing Cruz v. Coach Stores, Inc., 202 F.3d 560, 569 (2d Cir. 2000)). "Accordingly, in contrast to claims that are entirely new, claims that are related to or are mere variations of previously pleaded claims may be raised on a motion for summary judgment where the defendant was clearly on notice from the complaint and was not unfairly prejudiced." Id. (citation and internal quotation marks omitted); see also Duling v. Gristede's Operating Corp., 265 F.R.D. 91, 99 (S.D.N.Y. 2010) ("Courts also consider the extent to which the new claims are related to the existing ones and whether a party has had prior notice of a proposed new claim.").

Although plaintiff's complaint could have been clearer in articulating a Fourth Amendment claim based upon the x-ray searches, it was nonetheless sufficient to put defendants on notice that plaintiff intended to pursue such an argument. See Ragusa v. Malverne Union Free Sch. Dist., 381 F. App'x 85, 89 (2d Cir. 2010) (summary order) ("While Ragusa's complaint might have been clearer in articulating this theory of retaliation, we conclude that it was sufficient to place defendants on notice that she intended to pursue such an argument."); see also Delanuez v. City of Yonkers, No. 20-CV-4476 (PED), 2022 WL 16540682, at *6 (S.D.N.Y. Oct. 28, 2022). Indeed, plaintiff's complaint specifically alleges that Sgt. Lagree was "violating [plaintiff's] rights" by forcing him to submit to two x-rays because "clearing 2 x-rays is not part of procedure." Compl. at 8. Further, plaintiff claimed that Sgt. Lagree failed to give him "a reasonable explanation for why he had to submit to an x-ray" so his "right from unreasonable search and seizures were [sic] ... violated." Id. at 11. These allegations provide Sgt. Lagree with sufficient notice that plaintiff intended to pursue a Fourth Amendment claim based upon the x-ray searches.

Further, defendants would not be prejudiced by the inclusion of plaintiff's Fourth Amendment claim based upon the x-ray searches because such claim arises from a similar nucleus of operative facts and asserts similar legal theories as the Fourth Amendment claim already alleged. See Monahan v. New York City Dep't of Corr., 214 F.3d 275, 284 (2d Cir. 2000) ("In determining what constitutes 'prejudice,' [courts] generally consider whether the assertion of the new claim or defense would '(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction.' ") (quoting Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993)). In fact, this claim arises from the same facts that support plaintiff's strip search claim and, although the legal theories are similar as opposed to identical, that is insufficient to establish prejudice. See Cruz, 202 F.3d at 569 ("In opposing a Rule 15(b) amendment, a party cannot normally show that it suffered prejudice simply because of a change in its opponent's legal theory. Instead, a party's failure to plead an issue it later presented must have disadvantaged its opponent in presenting its case.") (internal quotation marks and citation omitted); see also Delanuez, 2022 WL 16540682, at *7 (considering the plaintiff's "new" malicious prosecution claim because "[a]lthough [the plaintiff's] complaint could have been clearer in articulating a malicious prosecution claim, it was nonetheless sufficient to put [the d]efendants on notice that he intended to pursue such an argument" and "the [d]efendants would not be prejudiced by the inclusion of [the plaintiff's] malicious prosecution claim"). Accordingly, the undersigned will consider the merits of plaintiff's Fourth Amendment claim based upon the x-ray searches.

### B. Plaintiff's Fourth Amendment Claims

**\*8** Plaintiff argues that Sgt. Lagree violated his Fourth Amendment rights "from unreasonable search[es] and seizures." Compl. at 11. Specifically, plaintiff claims that Sgt. Lagree (1) escorted plaintiff to "an undisclosed location[,] told [him] to strip off [his] clothes," and then "searched everywhere humanly possible"; and (2) forced plaintiff to submit to two x-rays. Id. at 7-8, 11.

The Fourth Amendment establishes that "[t]he right of the people to be secure in their persons ... against unreasonable searches and seizures[ ] shall not be violated." U.S. CONST. AMEND. IV. However, inmates are generally not afforded the same privacy rights as non-inmates because "[l]oss of ... privacy [is an] inherent incident[ ] of confinement." Bell v. Wolfish, 441 U.S. 520, 536 (1979); see Perez v. N.Y.S. Dep't of Corr. Servs., No. 9:08-CV-1031 (LEK/RFT), 2010 WL 1235637, at *5 (N.D.N.Y. Mar. 17, 2010), report and recommendation adopted, 2010 WL 1253641 (N.D.N.Y. Mar. 31, 2010), amended, 2010 WL 1608868 (N.D.N.Y. Apr. 20, 2010), aff'd, 448 F. App'x 152 (2d Cir. 2012) (summary order); see also Nash v. McGinnis, 315 F. Supp. 2d 318, 320 (W.D.N.Y. 2004) ("One of the incidents of confinement for a convict is the loss of privacy, which serves the legitimate purpose of retribution as well as the institutional security needs of the prison system. We therefore hold that 'society is not prepared to recognize as legitimate any subjective expectation of privacy that a [convict] might have in his prison cell.' ") (quoting Willis v. Artuz, 301 F.3d 65, 69 (2d Cir. 2002)). As relevant here, it is well established that "inmates retain a limited right to bodily privacy under the Fourth Amendment." Harris v. Miller, 818 F.3d 49, 57 (2d Cir. 2016); see Covino v. Patrissi, 967 F.2d 73, 78 (2d Cir. 1992). "To state a cognizable privacy claim, an inmate must allege that (1) he exhibited an actual, subjective expectation of bodily privacy, and (2) prison officials lacked sufficient justification to intrude on the inmate's Fourth Amendment rights." Telesford v. Annucci, 693 F. App'x 1, 3 (2d Cir. 2017) (summary order) (internal quotation marks and citation omitted).

### 1. Strip Search

"There is a long-established principle that the routine, random strip searches of inmates, including body cavity inspections, do not violate the Fourth Amendment." Vaughn v. Strickland, Nos. 12-CV-02696 (JPO), 2013 WL 3481413, at *4 (S.D.N.Y. July 11, 2013) (internal quotation marks and citation omitted); see Rodriguez v. Dougherty, No. 3:23-CV-1542 (KAD), 2024 WL 1860057, at *5 (D. Conn. Apr. 29, 2024) ("Strip searches, including visual body cavity searches, have been upheld as reasonable when they are related to a legitimate penological interest, even where there is no probable cause for the particular search.") (citing Loving v. Morton, No. 20-CV-11135 (KMK), 2022 WL 2971989, at *7 (S.D.N.Y. July 27, 2022)). "Nevertheless, 'the Fourth Amendment still requires all searches conducted within a prison, including strip searches, to be reasonable.' " Vaughn, 2013 WL 3481413, at *4 (quoting Jean-Laurent v. Wilkerson, 438 F. Supp. 2d 318, 323 (S.D.N.Y. 2006), aff'd, 461 F. App'x 18 (2d Cir. 2012) (summary order)). In assessing reasonableness under the Fourth Amendment, "[c]ourts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." Bell, 441 U.S. at 558; see Fernandez v. Badami, No. 20-CV-10287 (VB), 2023 WL 2971771, at *5 (S.D.N.Y. Apr. 17, 2023); see also Jones v. Falco, No. 20-CV-3485 (VB), 2022 WL 3668358, at *4 (S.D.N.Y. Aug. 25, 2022).

 **\*9** Here, in his complaint, plaintiff alleges that Sgt. Lagree escorted him to "an undisclosed location[,] told [him] to strip off [his] clothes[, and then] searched everywhere humanly possible." Compl. at 7-8. However, in his opposition papers, plaintiff does not appear to challenge the constitutionality of the strip search. See generally Dkt. No. 56. In fact, as defendants' argue, plaintiff admits "the procedure of a strip frisk and that the strip frisk he received was substantially in compliance with the procedure." Dkt. No. 58 at 2; see Dkt. No. 50-1 at 2-3, ¶¶9-15; see also Dkt. No. 56 at 1. Specifically, "[t]he strip search entailed [p]laintiff taking his clothes off and the officers checking his feet, hands, underarms, and the area behind his testicles." Dkt. No. 50-1 at 3, ¶13. "Plaintiff was also required to spread his buttocks and expose his anus." Id. at 3, ¶14. "The searching officers were male and no one except the searching officers were present." Id. at 3, ¶15. Even liberally construing plaintiff's allegations, there is no indication that this search was done in a humiliating manner, or otherwise conducted in an unreasonable manner unrelated to a legitimate penological concern. See Smith v. City of New York, No. 14-CV-5934 (JCF), 2015 WL 3929621, at *2 (S.D.N.Y. June 17, 2015) (explaining that, to establish that a strip search was unconstitutional, "the plaintiff must allege facts suggesting that the search did not serve a legitimate penological purpose, but was instead designed to intimidate, harass, or embarrass him, or was an exaggerated response to legitimate concerns") (internal quotation marks and citations omitted); see also Jean-Laurent, 438 F. Supp. 2d at 323 ("Generally, strip searches have been upheld as a reasonable security measure within a correctional facility[,] even in the absence of probable cause[,] as long as they are related to a legitimate penological goal.").

Moreover, "[i]t is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006). Personal involvement can include "direct participation by the supervisor in the challenged conduct." Hayut v. State Univ. of N.Y., 352 F.3d 733, 753 (2d Cir. 2003). Personal involvement by a supervisor can

> also be established by evidence of an official's (1) failure to take correct action after learning of a subordinate's unlawful conduct, (2) creation of a policy or custom fostering the unlawful conduct, (3) gross negligence in supervising subordinates who commit unlawful acts, or (4) deliberate indifference to the rights of others by failing to act on information regarding the unlawful conduct of subordinates.

Id.

Here, Sgt. Lagree declares that "[u]pon review of paperwork completed at the time of [p]laintiff's strip frisk, [he] would not have been present ... because [he] was the administrative sergeant for the facility at the time and was responsible for supervising [a] shift change," which "required [him] to be present at the front desk for employee frisks." Dkt. No. 50-3 at 3-4, ¶15. In response, plaintiff admits that he is "unsure" whether Sgt. Lagree was actually present during the strip search. Dkt. No. 56 at 2, ¶16; see Dkt. No.50-1 at 3, ¶16. In fact, plaintiff offers no facts to indicate that Sgt. Lagree was personally involved in the August 4, 2021, strip search. See Moore v. Albany Cnty., No. 9:19-CV-630 (TJM/TWD), 2022 WL 4133205, at *6 (N.D.N.Y. Sept. 12, 2022) (granting the defendant's motion for summary judgment because the "[p]laintiff ha[d] offered no evidence of any involvement of [the d]efendant" in the strip search), appeal dismissed (Apr. 11, 2023). It is, therefore, recommended that plaintiff's Fourth Amendment claim against Sgt. Lagree based upon the strip search be dismissed.

### 2. X-Ray Searches

The Supreme Court has repeatedly held that prison officials "must be permitted to devise reasonable search policies to detect and deter the possession of contraband in their facilities." Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington, 566 U.S. 318, 328 (2012). "The task of determining whether a policy is reasonably related to legitimate security interests is 'peculiarly within the province and professional expertise of corrections officials.' " Id. (quoting Bell, 441 U.S. at 548). Thus, "in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters." Pell v. Procunier, 417 U.S. 817, 827 (1974). Applying this framework, the Southern District of New York has held that a prisoner's rights are not violated by x-ray searches conducted pursuant to a reasonable prison policy. See Larkins v. Bartlett, No. 88-CV-8169 (MBM), 1990 WL 1488, at *2-3 (S.D.N.Y. Jan. 8, 1990); see also Manley v. Ramos, No. 13-CV-2662, 2014 WL 1496094, at *2 (S.D.N.Y. Apr. 16, 2014) (dismissing the inmate plaintiff's Fourth Amendment claim based on x-ray searches because "the mere existence of searches pursuant to a prison policy without an allegation that the searches [were] an exaggerated response to security concerns is insufficient to show that the search violated [the plaintiff's] constitutional rights").

**\*10** Here, plaintiff claims that Sgt. Lagree violated the Fourth Amendment when he forced plaintiff to submit to two x-rays. See Dkt. No. 56 at 8. Specifically, plaintiff argues that he "ha[s] the right to deny x-ray[s] and to only comply with a search of 3 defecations [because t]he normal standard for dryroom entry is the search of 3 defecations." Id. Plaintiff further alleges that "there were [sic] never any suspicion that [he] swallowed anything, ... therefore there should have never been no x-rays demanded." Id. at 4. Defendants argue that " 'because x-ray searches are less invasive than a strip search ... a prisoner's rights are not violated by x-ray searches conducted pursuant to a reasonable prison policy.' " Dkt. No. 58 at 3 (quoting Manley, 2014 WL 1496094, at *2). However, defendants have not further elaborated. Specifically, defendants have not articulated the "reasonable prison policy" that was in place at Great Meadow C.F. that subjected plaintiff to the x-ray searches. Manley, 2014 WL 1496094, at *2; see Larkins, 1990 WL 1488, at *2-3 (holding that an x-ray examination of the inmate plaintiff did not violate

his Fourth Amendment privacy rights because the State had a legitimate interest in preventing the introduction of contraband into the prison. Defendants also have not stated whether there was reasonable suspicion for the x-ray searches, or otherwise provided any facts as to the manner in which the x-ray searches were conducted. Cf. Spencer v. Roche, 659 F.3d 142, 147 (1st Cir. 2011) (dismissing the plaintiff's Fourth Amendment claim because "police may be justified in compelling a suspect to submit to an x-ray search of a part of his body" where "there is no evidence that the x-ray was carried out in a dangerous or otherwise inappropriate manner" and "the imaging was performed by trained professionals in a hospital setting"); United States v. Vega-Barvo, 729 F.2d 1341, 1349 (11th Cir. 1984) ("[W]e recognize that if not performed properly, an x-ray can be dangerous."). Notably, defendants have not referred to the x-ray searches in their Statement of Material Facts. See generally 50-1; see also United States v. Oyekan, 786 F.2d 832, 837-38 (8th Cir. 1986) ("[A] reasonable suspicion that a person is an alimentary canal smuggler may justify an involuntary x-ray examination ... the crucial question is whether the government has shown 'articulable facts which are particularized as to the person and as to the place to be searched.' ") (quoting Vega-Barvo, 729 F.2d at 1349). Thus, although a prison x-ray search may pass Fourth Amendment muster, defendants have not sufficiently established the circumstances of the search. See Hernandez v. Tulare Cnty. Correction Ctr., No. 1:16-CV-00413 (EPG/PC), 2018 WL 4501113, at *5 (E.D. Cal. Sept. 18, 2018) ("[T]he Court concludes that the x-ray search is reasonable under the Fourth Amendment" given that "[t]he x-ray search was minimally intrusive in both manner and scope"; "[p]laintiff was fully clothed"; "[j]ail officials did not instruct him to expose his genitals or buttocks" and they "did not touch him"; and "the purpose of the routine visual inspection is to ensure that prisoners do not bring weapons or other contraband into the jail facility"). In light of special solicitude, given that plaintiff argues "there were [sic] never any suspicion that [he] swallowed anything," there appears to remain a genuine issue of fact as to the purpose and circumstances of the x-ray searches. Dkt. No. 56 at 4. It is, therefore, recommended that defendants' motion for summary judgment on plaintiff's Fourth Amendment claim based on the x-ray searches be denied.

### C. Plaintiff's Fourteenth Amendment Claim

Plaintiff claims that Lt. Murphy violated his Fourteenth Amendment rights. See Compl. at 9-11. Plaintiff argues that (1) he "was not given a fair hearing" because "not allowing crucial ... evidence at [his disciplinary] hearing is a violation of [his] due process [rights]"; (2) Lt. Murphy's decision was not supported by sufficient evidence; and (3) Lt. Murphy "failed to completely record the full tier hearing in its entirety." Dkt. No. 56 at 6, 9; Compl. at 11. Defendants contend that Lt. Murphy "complied with the due process requirements, and his determination was supported by the record." Dkt. No. 50-6 at 6. Defendants specifically argue that plaintiff's Fourteenth Amendment claim fails because (1) plaintiff cannot establish a protected liberty interest, and (2) plaintiff was nevertheless afforded sufficient process. See id. at 8-16.

The Fourteenth Amendment provides that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. CONST. AMEND. XIV, § 1. "A liberty interest may arise from the Constitution itself, ... or it may arise from an expectation or interest created by state laws or polices." Wilkinson v. Austin, 545 U.S. 209, 221 (2005) (citation omitted). "Although prison inmates necessarily have their liberty severely curtailed while incarcerated, they are nevertheless entitled to certain procedural protections when disciplinary actions subject them to further liberty deprivations such as loss of good-time credit or special confinement that imposes an atypical hardship." Sira v. Morton, 380 F.3d 57, 69 (2d Cir. 2004) (citations omitted). To establish a procedural due process claim under § 1983, a plaintiff must show that he (1) possessed an actual liberty interest, and (2) was deprived of that interest without being afforded sufficient process. See Ortiz v. McBride, 380 F.3d 649, 654 (2d Cir. 2004); see also Tellier v. Fields, 280 F.3d 69, 79-80 (2d Cir. 2000); Hynes v. Squillace, 143 F.3d 653, 658 (2d Cir. 1998).

### 1. Liberty Interest

"To state a claim for procedural due process, there must first be a liberty interest which requires protection." Tavares v. Amato, 954 F. Supp. 2d 79, 92 (N.D.N.Y. 2013) (citations omitted). "An inmate retains a protected liberty interest in remaining free from segregated confinement if the prisoner can satisfy the standard set forth in Sandin v. Conner, 515 U.S. 472, 483-84 (1995)."

Lewis v. Murphy, No. 9:12-CV-00268 (NAM), 2014 WL 3729362, at *7 (N.D.N.Y. July 25, 2014). "Therefore, a plaintiff must show that (1) the state actually created a protected liberty interest in being free from segregation, and (2) the segregation would impose an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' " Gibson v. Rosati, No. 9:13-CV-00503 (GLS/TWD), 2017 WL 1534891, at *9 (N.D.N.Y. Mar. 10, 2017) (quoting Sandin, 515 U.S. at 783-84) (additional citations omitted), report and recommendation adopted, 2017 WL 1512371 (N.D.N.Y. Apr. 27, 2017).

**\*11**  As to the first factor, "[t]he prevailing view in this Circuit is that, by its regulatory scheme, the State of New York has created a liberty interest in remaining free from disciplinary confinement, thus satisfying the first Sandin factor." Liao v. Malik, No. 9:13-CV-1497 (GTS/DEP), 2016 WL 1128245, at *4 (N.D.N.Y. Feb. 26, 2016) (collecting cases), report and recommendation adopted, 2016 WL 1122660 (N.D.N.Y. Mar. 22, 2016). As to the second factor, the plaintiff bears the "burden of proving that the conditions of his confinement constituted an atypical, significant hardship in relation to the ordinary incidents of prison life in order to recover damages" under § 1983. Vasquez v. Coughlin, 2 F. Supp. 2d 255, 260 (N.D.N.Y. 1998).

"The Second Circuit has instructed that in determining whether an inmate's SHU confinement has imposed an atypical and significant hardship, a court must consider, among other things, both the duration and conditions of confinement." McKelvey v. Fischer, No. 9:12-CV-0094 (LEK/TWD), 2013 WL 3475448, at *8 (N.D.N.Y. July 10, 2013) (citing J.S. v. T'Kach, 714 F.3d 99, 106 (2d Cir. 2013)); see Davis v. Barrett, 576 F.3d 129, 133-34 (2d Cir. 2009). "Thus, while not dispositive, the duration of a disciplinary confinement is a significant factor in determining atypicality." Gibson, 2017 WL 1534891, at *10 (citing Colon v. Howard, 215 F.3d 227, 231 (2d Cir. 2000)). "The Second Circuit has declined to provide a bright-line rule as to what duration of punitive confinement implicates a prisoner's constitutional rights; however, general guidelines have been defined." Gibson, 2017 WL 1534891, at *10 (citing Palmer v. Richards, 364 F.3d 60, 64 (2d Cir. 2004)). Confinement for 101 days or fewer under typical punitive segregation conditions "generally do[es] not constitute 'atypical' conditions of confinement." Bunting v. Nagy, 452 F. Supp. 2d 447, 456 (S.D.N.Y. 2006) (quoting Sealey v. Giltner, 197 F.3d 578, 589 (2d Cir. 1999)). By contrast, 305 days or more of segregated confinement has been deemed an atypical and significant hardship. See Colon, 215 F.3d at 231-32. "A period of confinement between 101 and 305 days is considered to be an 'intermediate duration' and could implicate a liberty interest should a detailed record of the conditions of confinement indicate that it was an atypical and significant hardship." Bunting, 452 F. Supp. 2d at 456 (citing Sealey, 197 F.3d at 589).

Here, it appears that plaintiff was in the SHU for 270 days. See Compl. at 10; see also Dkt. No. 50-6 at 10. Liberally construing plaintiff's submissions, he claims to have suffered "mental anguish, emotional distress, and degradation," as a result of his confinement. Compl. at 12. However, plaintiff has not further elaborated on the conditions of his SHU confinement during the period in question. See generally id. In fact, the record includes no evidence suggesting that plaintiff's SHU confinement imposed "an atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484. "Several other courts, when similarly faced with the absence of any record evidence showing an atypical and significant hardship resulting from SHU confinement of between 101 and 305 days, have declined to find the existence of a liberty interest." Genier v. Vanarnum, No. 9:13-CV-1460 (GTS/DEP), 2016 WL 4507456, at *6 (N.D.N.Y. June 20, 2016) (collecting cases), report and recommendation adopted, 2016 WL 4508354 (N.D.N.Y. Aug. 26, 2016); see, e.g., Henry v. Dinelle, No. 9:10-CV-0456 (GTS/DEP), 2011 WL 5975027, at *10 (N.D.N.Y. Nov. 29, 2011) (dismissing due process claim where the plaintiff "failed to adduced [sic] admissible record evidence from which a rational factfinder could conclude that the conditions of his confinement during this 150-day period were more severe than normal SHU conditions"; Dawkins v. Gonyea, 646 F. Supp. 2d 594, 606-07 (S.D.N.Y. 2009) ("Because Dawkins failed to make any allegations detailing the conditions of his confinement in SHU, and because the [280-day] duration of his confinement was shorter than confinements that courts in this Circuit have deemed sufficient to impose per se atypical or significant hardship, the Court finds that Dawkins has not pled a cognizable liberty interest."); Black v. Selsky, 15 F. Supp. 2d 311, 314-16 (W.D.N.Y. 1998) (concluding that the plaintiff's "confinement in SHU for 180 days does not present the type of atypical and significant deprivation in which a state may conceivably create a liberty interest" where there was no accompanying record evidence showing restrictions "greater than the restrictions imposed on the inmate in Sandin"). Thus, plaintiff has not raised a triable dispute of fact as to whether the 270 days of SHU confinement was an atypical hardship under Sandin. See Carter v. Carriero, 905 F. Supp. 99, 103-04 (W.D.N.Y. 1995) (concluding that 270 days of SHU confinement did not impose a per se "atypical and significant hardship on the inmate in relation to the ordinary

incidents of prison life" such that the failure to allow the plaintiff to call a witness at a disciplinary hearing giving rise to his confinement did not trigger a liberty interest). Accordingly, plaintiff lacks a protected liberty interest sufficient to raise a Fourteenth Amendment procedural due process claim. See Blackshear v. Woodward, No. 9:13-CV-1165 (FJS/CFH), 2014 WL 2967752, at *6-7 (N.D.N.Y. July 1, 2014). It is, therefore, recommended that plaintiff's Fourteenth Amendment claim against Lt. Murphy be dismissed.

### 2. Procedural Due Process

**\*12** The Fourteenth Amendment due process protections afforded a prison inmate do not equate to "the full panoply of rights due to a defendant in a criminal prosecution." Sira, 380 F.3d at 69 (citation and internal quotation marks omitted). "The constitutionally mandated due process requirements include:"

> (1) written notice of the charges to the inmate; (2) the opportunity to appear at a disciplinary hearing and a reasonable opportunity to present witnesses and evidence in support of his defense, subject to a prison facility's legitimate safety and penological concerns; (3) a written statement by the hearing officer explaining his decision and the reasons for the action being taken; and (4) in some circumstances, the right to assistance in preparing a defense.

Payne v. Coburn, No. 9:15-CV-00392 (GLS/TWD), 2017 WL 4330372, at *11 (N.D.N.Y. Aug. 29, 2017) (citing Wolff v. McDonnell, 418 U.S. 539, 564-70 (1974), and Luna v. Pico, 356 F.3d 481, 487 (2d Cir. 2004)), report and recommendation adopted, 2017 WL 4326079 (N.D.N.Y. Sept. 27, 2017).

"Since Wolff, the Supreme Court has clarified that judicial review of the written findings required by due process is limited to determining whether the disposition is supported by 'some evidence.' " Sira, 380 F.3d at 69 (quoting Superintendent v. Hill, 472 U.S. 445, 455 (1985)). "This standard is extremely tolerant and is satisfied if 'there is any evidence in the record that supports' the disciplinary ruling." Id. (quoting Friedl v. City of New York, 210 F.3d 79, 85 (2d Cir. 2000)). Nevertheless, as the Second Circuit has explained, "the 'some evidence' standard requires some 'reliable evidence.' " Id. (quotation and other citation omitted).

As defendants argue, even if plaintiff established a protected liberty interest, his due process claim still fails. See Dkt. No. 50-6 at 10-16. First, plaintiff argues that he "was not given a fair hearing" because Lt. Murphy failed to introduce "crucial" video evidence that plaintiff requested. Dkt. No. 56 at 6, 9. However, the record shows that Lt. Murphy attempted to obtain such video, but the video was "unattainable." Dkt. No. 50-4 at 30. Specifically, Lt. Murphy declares that he "adjourned th[e] matter to conduct an inquiry and obtain the requested video [but t]he video ... was unavailable" and Lt. Murphy "informed [plaintiff] on the record." Dkt. No. 50-4 at 7, ¶33; see Girard v. Chuttey, 826 F. App'x 41, 45-46 (2d Cir. 2020) (summary order) (finding that the plaintiff "did not establish a genuine dispute of fact as to whether the defendants withheld [video] evidence in violation of his constitutional rights" where "the defendants presented evidence that no ... footage existed, and [the plaintiff] never supported his claim that there was ... footage with an affidavit or other evidence"); see also Benitez v. Locastro, No. 9:04-CV-423 (NAM/RET), 2010 WL 419999, at *15 (N.D.N.Y. Jan. 29, 2010) ("Plaintiff alleges that [the defendant's] failure to produce a videotape of the November 8, 2001 incident at Clinton violated his due process rights. The record shows that [the defendant] attempted to obtain the video, but was informed of its unavailability[; thus, the defendant] did not violate [the p]laintiff's due process rights when he [stated] that the videotape was unavailable.") (citations omitted). Given Lt. Murphy's declaration, and an absence of evidence from plaintiff, "[t]he record here establishes that the additional video evidence [p]laintiff sought was not available and 'where the requested [evidence is] found to be nonexistent, the inmate suffers no constitutional deprivation.' " Girard v. Cuttle, No. 9:15-CV-0187 (TJM/DJS), 2018 WL 4190140, at *10 (N.D.N.Y. Aug. 10, 2018) (quoting Mohamed v. Phelix, No. 9:14-CV-01389 (TJM/TWD), 2017 WL 4326660, at *12 (N.D.N.Y. June 13, 2017), report and recommendation adopted, 2017

WL 4326520 (N.D.N.Y. Sept. 28, 2017)), report and recommendation adopted sub nom. Girard v. Chuttey, 2018 WL 4188431 (N.D.N.Y. Aug. 31, 2018), aff'd, 826 F. App'x 41 (2d Cir. 2020) (summary order); see Molano v. Bezio, 42 F. Supp. 3d 465, 468-69 (W.D.N.Y. 2012) (holding that "[the defendant-hearing officer's] refusal to order the production of [a surveillance tape], if any, does not amount to a denial of due process" where "[t]here is no proof that a surveillance videotape ... existed at the time [the] plaintiff requested it"); see also Allen v. Graham, No. 9:16-CV-47 (GTS/ATB), 2017 WL 9511168, at *15 (N.D.N.Y. Sept. 26, 2017) ("Plaintiff's argument that defendant Vasile should have reviewed security video leading up to the incident does not raise a due process issue. As he explained during the hearing, defendant Vasile concluded that there was no relevant video footage available."), report and recommendation adopted, 2017 WL 5957742 (N.D.N.Y. Dec. 1, 2017).

**\*13** Moreover, Lt. Murphy declares that even if such video existed, it would be irrelevant because "the video would have depicted [a] cursory search of Drug Watch Room 2, not the Drug Watch Room 1, where the contraband was found." Dkt. No. 50-4 at 7, ¶34. Although plaintiff asserts that the video evidence is "crucial," he fails to specifically explain its relevance. Dkt. No. 56 at 9. Specifically, plaintiff generally argues that the video "would have extremely impacted [his] case," but does not otherwise establish any prejudice resulting from the lack of video footage. Id. at 6; see Purcelle v. Thomas, No. 9:18-CV-77 (GLS/TWD), 2020 WL 1516421, at *13 (N.D.N.Y. Mar. 6, 2020) ("Even assuming [the defendant's] failure to secure the requested video constituted a procedural deficiency, [the p]laintiff has not sufficiently established any prejudice resulting from the outcome of the disciplinary hearing") (citation omitted), report and recommendation adopted, 2020 WL 1511079 (N.D.N.Y. Mar. 30, 2020). Thus, contrary to plaintiff's contentions, the fact that this video, if it existed, was not produced at plaintiff's disciplinary hearing is not a violation of his due process rights. See Kalwasinski v. Morse, 201 F.3d 103, 109 (2d Cir. 1999) ("[A] hearing officer does not violate due process by excluding irrelevant or unnecessary testimony.") (citing Kingsley v. Bureau of Prisons, 937 F.2d 26, 30 (2d Cir. 1991)).

Second, plaintiff contends that Lt. Murphy's decision at the conclusion of the disciplinary hearing was not supported by sufficient evidence. See Compl. at 11. However, the record indicates that Lt. Murphy relied upon the following evidence presented at the hearing to render his decision: the written statement of C.O. Londrigan; the verbal testimony of C.O. Londrigan; the written statement of C.O. Miller; the verbal testimony of C.O. Miller; the written statement of Sgt. Woodruff; the verbal testimony of Sgt. Woodruff; the written statement of Lt. Mulligan; the verbal testimony of C.O. Hall; the video evidence showing C.O. Londrigan search Drug Watch Room 1; the video evidence of plaintiff admitting to defecating on the cell floor; the testimony of another inmate in which he states that Drug Watch cells are always thoroughly cleaned out before another inmate is allowed to occupy them; as well as the photographs of the weapon that was found. See Dkt. No. 50-4 at 55; see also Dkt. No. 50-6 at 14. "As the hearing officer, [Lt. Murphy] was authorized to make an independent assessment of all the evidence." Allen, 2017 WL 9511168, at *15. Therefore, contrary to plaintiff's assertions, Lt. Murphy's decision was sufficiently supported by "some evidence." Purcelle, 2020 WL 1516421, at *14 ("As [the defendant-hearing officer] relied on testimony from an officer present for the incident, his determination was supported by 'some evidence' and did not violate [the p]laintiff's due process rights."); see Alexander v. Fischer, No. 9:14-CV-548 (GLS/ATB), 2015 WL 10568892, at *6 (N.D.N.Y. Dec. 21, 2015) ("The constitutional standard for sufficiency of evidence in a prison disciplinary hearing is whether there is 'some' or 'a modicum' of evidence to support the hearing officer's determination.") (quoting Sira, 380 F.3d at 76), report and recommendation adopted, 2016 WL 1261124 (N.D.N.Y. Mar. 30, 2016).

Third, plaintiff also claims that Lt. Murphy "failed to completely record the full tier hearing in its entirety." Dkt. No. 56 at 9; see Dkt. No. 56 at 6. However, a failure "to completely record the full tier hearing in its entirety" would "not deprive [p]laintiff of any minimum requirements of due process." Id. at 9; Scott v. Frederick, No. 9:13-CV-605, 2015 WL 127864, at *15 (N.D.N.Y. Jan. 8, 2015) (citation omitted); see Ramsey v. Goord, 661 F. Supp. 2d 370, 393 (W.D.N.Y. 2009) ("[E]ven if [the d]efendants failed to record a portion of [the p]laintiff's disciplinary hearing, such failure does not rise to a due process violation"). Indeed, "the only process due an inmate is that minimal process guaranteed by the Constitution as outlined in Wolff." Ramsey, 661 F. Supp. 2d at 393 (quoting Shakur v. Selsky, 391 F.3d 106, 119 (2d Cir. 2004)). "Significantly, Wolff did not include electronic recording of a disciplinary hearing among the due process requirements." Id.; see Moore v. Griffin, No. 9:13-CV-616 (FJS/

TWD), 2015 WL 5330366, at *12 (N.D.N.Y. Sept. 11, 2015) ("Due process does not require that proceedings be recorded."); see also Mitchell v. New York, No. 9:14-CV-0934 (TJM/DEP), 2015 WL 13019618, at *5 (N.D.N.Y. Mar. 11, 2015) (same).

 **\*14** Thus, even if plaintiff had established protected liberty interest, he did not demonstrate that he was denied sufficient process. Accordingly, it is recommended that plaintiff's Fourteenth Amendment claim against Lt. Murphy be dismissed.

### D. Qualified Immunity

Defendants argue that, even if plaintiff's claims are substantiated, they are entitled to qualified immunity. See Dkt. No. 50-6 at 19-21. Qualified immunity shields public officials from being sued for conduct undertaken in the course of their duties so long as that conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (internal quotation marks and citation omitted); Eng v. Coughlin, 858 F.2d 889, 895 (2d Cir. 1988). However, even if the constitutional privileges "are so clearly defined that a reasonable public official would know that his actions might violate those rights, qualified ... immunity might still be available ... if it was objectively reasonable for the public official to believe that his acts did not violate those rights." Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991); Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990) (internal citations omitted). A court must first determine whether, if the plaintiff's allegations are accepted as true, there would be a constitutional violation. See Saucier v. Katz, 533 U.S. 194, 201 (2001). Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights were clearly established at the time of the alleged violation. See Aiken v. Nixon, 236 F. Supp. 2d 211, 230 (N.D.N.Y. 2002).

As for plaintiff's claim against Lt. Murphy, plaintiff has not established a constitutional violation to satisfy the first prong of the qualified immunity test. See supra Subsection III.C. As there is no constitutional violation, the undersigned does not reach whether plaintiff's constitutional rights were clearly established at the time of the alleged violation by Lt. Murphy. See Aiken, 236 F. Supp. 2d at 230; see also Smith v. Sullivan, No. 9:20-CV-659 (DNH/CFH), 2023 WL 3727447, at *19 (N.D.N.Y. May 3, 2023) ("Here, the Court need not address qualified immunity as an alternative ground to [the] defendants' summary judgment motion because [the] plaintiff has not established a dispute of material fact as to whether [the] defendants violated his constitutional rights."), report and recommendation adopted, 2023 WL 3722137 (N.D.N.Y. May 30, 2023).

As for plaintiff's claim against Sgt. Lagree, as discussed above, there remains a genuine dispute of fact as to plaintiff's allegations surrounding the x-ray searches. See supra Subsection III.B. The undersigned thus cannot determine as a matter of law on this record whether Sgt. Lagree is entitled to qualified immunity on plaintiff's Fourth Amendment claim. See Zwick v. Town of Cheektowaga, No. 17-CV-00727 (FPG), 2021 WL 4895106, at *6 n.7 (W.D.N.Y. Oct. 20, 2021) ("[G]iven the existence of a genuine issue of material fact, the Court will not address the viability of any qualified-immunity defense.") (citing Tolan v. Cotton, 572 U.S. 650, 656 (2014)); see also Davila v. Messier, No. 3:13-CV-81 (SRU), 2014 WL 4638854, at *10 (D. Conn. Sept. 17, 2014) ("The court has identified a genuine issue of material fact with regard to the Fourth Amendment claim alleging an unreasonable strip search. Until the factual dispute about what [the defendant] actually did is resolved by the trier of fact, the court cannot determine whether [qualified immunity applies.]"); Tatum v. City of New York, No. 06-CV-04290 (BSJ/GWG), 2009 WL 124881, at *11 (S.D.N.Y. Jan. 20, 2009) ("Dismissal on the basis of a qualified immunity defense is inappropriate where there are facts in dispute that are material to a determination of reasonableness.").

### IV. Conclusion

 **\*15 WHEREFORE**, for the reasons set forth above, it is hereby:

**RECOMMENDED**, that defendants' motion for summary judgment (Dkt. No. 50) be **DENIED IN PART** insofar as it seeks dismissal of plaintiff's Fourth Amendment claim against Sgt. Lagree based upon the x-ray searches; and it is further

**RECOMMENDED**, that defendants' motion for summary judgment (Dkt. No. 50) be **GRANTED IN PART** and that plaintiff's remaining claims be **DISMISSED**; and it is

**RECOMMENDED**, that the John Doe defendants be **DISMISSED** from this action without prejudice, due to plaintiff's failure to identify and/or serve these defendants; and it is further

**ORDERED**, that the Clerk amend the case caption to correct the spelling of defendant's last name as Lagree; and it is

**ORDERED**, that the Clerk serve a copy of this Report Recommendation and Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED.**

Pursuant to U.S.C. § 636(b)(1) and Local Rule 72.1(c), that the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED R. CIV P. 6(a), 6(e), 72. [6]

[6]    If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation & Order was mailed to you to serve and file objections. See FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. See id. § 6(a)(1)(C).

**All Citations**

Slip Copy, 2024 WL 3649891

**End of Document**                               © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 3548785
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Adam WEST, Plaintiff,

v.

Christopher LAGREE and George Murphy, Defendants.

9:22-CV-231 (MAD/CFH)
|
Signed July 26, 2024

**Attorneys and Law Firms**

ADAM WEST, 14-A-5495, Cayuga Correctional Facility, P.O. Box 1186, Moravia, New York 13118, Plaintiff, pro se.

NICHOLAS W. DORANDO, AAG, KONSTANDINOS D. LERIS, AAG, OFFICE OF THE NEW YORK, STATE ATTORNEY GENERAL, The Capitol, Albany, New York 12224, Attorneys for Defendants.

## MEMORANDUM-DECISION AND ORDER

Mae A. D'Agostino, United States District Judge:

## I. INTRODUCTION

*1 On March 10, 2022, Plaintiff Adam West commenced this action, *pro se*, pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights under the Fourth and Fourteenth Amendments. *See* Dkt. No. 1. Plaintiff alleges that while incarcerated at Great Meadow Correctional Facility, Defendants Sergeant Christopher Lagree and Lieutenant George Murphy ("Defendants") improperly searched Plaintiff's cell, subjected him to X-rays, issued misbehavior reports, and subjected him to a disciplinary hearing and sanctions. *See id.* On March 10, 2024, Magistrate Judge Christian F. Hummel issued a Report-Recommendation and Order on Defendants' motion for summary judgment. *See* Dkt. Nos. 50, 62. Magistrate Judge Hummel recommended that Defendants' motion be denied as it related to Plaintiff's Fourth Amendment claim against Defendant Lagree concerning the X-ray searches. *See* Dkt. No. 62 at 35. Magistrate Judge Hummel recommended that Defendants' motion for summary judgment otherwise be granted. *See id.*

Presently before the Court are Magistrate Judge Hummel's Report-Recommendation and Order, Plaintiff's objections, Defendant Lagree's objections, and the parties' responses. *See* Dkt. Nos. 62, 63, 64, 65, 66.

## II. BACKGROUND

For a complete recitation of the relevant factual background, the parties are referred to Magistrate Judge Hummel's Report-Recommendation and Order. *See* Dkt. No. 62 at 3-8.

## III. DISCUSSION

### A. Standard of Review

When a party files specific objections to a magistrate judge's report-recommendation, the district court makes a "de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). However, when a party files "[g]eneral or conclusory objections or objections which merely recite the same arguments [that he presented] to the magistrate judge," the court reviews those recommendations for clear error. *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, *1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

Plaintiff's objections state as follows:

> I disagree with the Ruling giving [sic] by (CFH). I was never "unsure" if Sg. Legree [sic] were involved in 8/4/21 search. He in fact gave the order to search me. From the start [I] stood by X-ray scanning my body without my consent [indiscernible] is.
>
> Also Lt. Murphy idea to not fully record the tier 3 hearing arises to failure of due process. For this is the recorders sole purpose. I made it clear during my tier 3 Hearing of which tape [I] were [sic] requesting instead [I']m giving [sic] a video that he chose to produce on his own accord.

Dkt. No. 63 at 1. These objections are general or restate arguments fully considered by Magistrate Judge Hummel. Therefore, they will be reviewed for clear error. *See Tavares v. Amato*, 954 F. Supp. 2d 79, 84 (N.D.N.Y. 2013).

 **\*2** Defendants object solely to the portion of Magistrate Judge Hummel's Report-Recommendation and Order that recommended the denial of summary judgment on Plaintiff's Fourth Amendment against Defendant Lagree. *See* Dkt. No. 64 at 3. Defendant Lagree's objections are specific enough that the Court will conduct a *de novo* review of the issues presented.

**B. Lagree's Presence During a Strip Search**

Magistrate Judge Hummel noted that Plaintiff was "unsure" about whether Defendant Lagree was present for the "strip search." Dkt. No. 62 at 20. Plaintiff objects, stating that he was never "unsure" about whether Defendant Lagree was present for the "8/4/21 search." Dkt. No. 63 at 1. Plaintiff then references an X-ray scan. *See id.* Plaintiff contends that in Defendant Lagree's "role as supervisor," he gave "the order for all searches ordered 8/4/21." Dkt. No. 66 at 3. Plaintiff notes that he emphasized his familiarity with Defendant Lagree in his complaint. *See id.* He asserts that he is "very sure Lagree ordered the cell search, the frisk, as well as the dryroom entry." *Id.* at 7.

As cited by Magistrate Judge Hummel, in paragraph sixteen of Defendants' statement of material facts, they averred that "Defendant Lagree states that he was not present when C.O. Lehoisky strip frisked Plaintiff." Dkt. No. 50-1 at ¶ 16. In Plaintiff's handwritten response to Defendants' statement of material facts, he responded to each of Defendants' statements by paragraph number. *See* Dkt. No. 56 at 1-3. As for paragraph sixteen, Plaintiff wrote, "unsure." *Id.* at ¶ 16.

Magistrate Judge Hummel appropriately recognized what Plaintiff stated in his response to Defendants' motion for summary judgment. *See* Dkt. No. 62 at 20. Magistrate Judge Hummel also correctly concluded that although Plaintiff did identify Defendant Lagree in his complaint, he did not sufficiently rebut Defendant Lagree's contentions on summary judgment. *See id.* at 18-20. Insofar as Plaintiff states in his response to Defendant Lagree's objections that Defendant Lagree was a supervisor, an individual's role as a supervisor is insufficient to establish personal involvement. *See* Dkt. No. 66 at 3; *see also Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (" '[S]upervisor liability in a § 1983 action depends on a showing of some personal responsibility, and cannot rest on respondeat superior' ") (quotation omitted).

Alternatively, Magistrate Judge Hummel concluded that summary judgment was warranted on Plaintiff's strip-search claim because "there is no indication that this search was done in a humiliating manner, or otherwise conducted in an unreasonable manner unrelated to a legitimate penological concern." Dkt. No. 62 at 19. Plaintiff does not challenge this conclusion. *See* Dkt. Nos. 63, 65, 66. The Court agrees that Plaintiff "has not offered evidence from which a reasonable jury could conclude that [ ]he

was strip searched for the purpose of intimidation, harassment, or punishment." *LaFever v. Clarke*, 525 F. Supp. 3d 305, 338 (N.D.N.Y. 2021). Based on the foregoing, the Court finds no clear error in this portion of Magistrate Judge Hummel's Report-Recommendation and Order. Dkt. No. 62 at 20.

### C. Recording of Plaintiff's Disciplinary Hearing

In reviewing Plaintiff's Fourteenth Amendment claim against Defendant Murphy, Magistrate Judge Hummel explained that "a failure 'to completely record the full tier hearing in its entirety' would 'not deprive [p]laintiff of any minimum requirements of due process.'" Dkt. No. 62 at 32 (quotation omitted). He thus concluded that Plaintiff did not demonstrate that he was denied sufficient process. *See id.* at 33.

**\*3** Plaintiff objects that Defendant Murphy's failure to record the entirety of Plaintiff's Tier III hearing violates his right to due process. *See* Dkt. No. 63 at 1. Because this argument was fully considered by Magistrate Judge Hummel, it will be reviewed for clear error.

As Magistrate Judge Hummel explained, *see* Dkt. No. 62 at 32, "due process does not require that disciplinary proceedings be recorded." *Jabot v. Correction Officer Minor*, No. 9:13-CV-01407, 2016 WL 5322113, *13 (N.D.N.Y. July 15, 2016) (citing *Livingston v. Griffin*, 9:04-CV-00607, 2007 WL 1500382, *5 (N.D.N.Y. May 21, 2007); *Holcomb v. Lykens*, 337 F.3d 217, 224 (2d Cir. 2003)); *see also Jay v. Venetozzi*, No. 15-CV-147S, 2020 WL 4382001, *8 (W.D.N.Y. July 30, 2020) (citation and quotation omitted) ("DOCCS regulations require that a hearing be electronically recorded, but they do not require a tape number on a written statement of the disposition of a disciplinary hearing.... [V]iolations of state law procedural requirements do not alone constitute a deprivation of due process since '[f]ederal constitutional standards rather than state law define the requirements of procedural due process' "); *Harrison v. Querns*, No. 06-CV-0296F, 2008 WL 495505, *4 (W.D.N.Y. Feb. 21, 2008) (citing *Dixon v. Goord*, 224 F. Supp.2 d 739, 744 (S.D.N.Y. 2002)).

Plaintiff has not presented any arguments or case law to the contrary. Thus, the Court finds no clear error in Magistrate Judge Hummel's conclusion as to the due process claim against Defendant Murphy.

### D. Defendant Lagree's Objections to Plaintiff's Fourth Amendment X-ray Claim

Defendant Lagree argues that he will be prejudiced if Plaintiff's X-ray claim is permitted to proceed because of the "inability to depose Plaintiff on that search, conduct discovery, or submit detailed declarations in support of their motion for summary judgment addressing those claims. Defendants did not do so because the Court did not permit those claims to proceed" following initial review of Plaintiff's *pro se* complaint. Dkt. No. 64 at 5. Defendant Lagree argues that he does not know what type of search Plaintiff is challenging; whether it is an X-ray policy for incarcerated individuals on drug watch or the specific X-ray search conducted by Defendant Lagree. *See id.* Defendant Lagree argues that different legal frameworks apply depending on the type of search being challenged. *See id.* (citing *Bell v. Wolfish*, 441 U.S. 520 (1979); *Turner v. Safley*, 482 U.S. 78 (1987)). Defendant Lagree asserts that "permitting Plaintiff, without notice, to shift to a different type of search in a different context materially disadvantages Defendants as it will require Defendants to go to trial without knowing the law under which the case will be tried." *Id.* at 6.

In Plaintiff's complaint, he alleged that while on drug watch, Defendant Lagree asked Plaintiff if he would submit to an X-ray and Plaintiff responded, "No." Dkt. No. 1 at 8. Defendant Lagree "beg[a]n to tell [Plaintiff] that in order to leave [Plaintiff] had to take 2 clean defecations & 2 X-rays. [Plaintiff] immediately told [Defendant Lagree] clearing 2 X-rays is not part of procedure." *Id.* Plaintiff twice defecated but was not released. *See id.* Plaintiff then requested an X-ray and was told that the X-ray was not working so he had to wait. *See id.* He submitted to an X-ray the following day. *See id.* During the X-ray, Plaintiff was asked if he had any metal in his teeth which he affirmed. *See id.* Plaintiff "was then taken back to the dry room [and] began to demand to speak to the [Lieutenant] to let him know that the officers were violating [his] rights." *Id.*

**\*4**  Plaintiff was told that the officers saw something in his teeth and would have to take another X-ray. *See id.* Plaintiff was taken again to be X-rayed and he was not "given [a] radiation suit to prevent [him] from radiation." *Id.* at 9. Plaintiff "was placed on [his] back again naked [and] scanned from head to toe." *Id.* He "wrote a grievance complaining about the series of events." *Id.* Plaintiff alleged that Defendant Lagree "failed to give [him] any explanation, failed to write [him] a ticket of any contraband to justify the reason he placed me in the dry room nor give me a reasonable explanation for why [he] had to submit to an X-ray." *Id.*

In Plaintiff's response to Defendants' motion for summary judgment, he stated that "[a]fter reading [Defendant Lagree's] declaration, [he has] not seen any rule of directive that an officer can demand 2 x-rays from an inmate, whether an Inmate swallowed something or not." Dkt. No. 56 at 4. Plaintiff noted that "3 defecations will produce that object which is normal policy & practice. Looking into someone's body is the ultimate intrusion [and] if not illegal should be challenged at the highest court." *Id.* Plaintiff explained that he "was told [he] must submit to 2 x-rays." *Id.* Plaintiff averred that body camera footage would reveal that he never swallowed anything so "there should have never been [any] x-rays." *Id.* Plaintiff stated that "[t]he first x-ray [he] was forced to give was on [A]ugust 12, 2021[,] where they (c.o.'s) say they seen [sic] an object in [his] teeth, for which [he] explained to them [he] had a metal filling in [his] teeth [and] to go speak with dental to confirm." *Id.* at 7. Plaintiff argued that "[f]orcing an inmate to comply with 3 x-rays is a violation of [his] freedom from unlawful search [and] seizure." *Id.* at 8. Plaintiff asserted that he has "the right to [d]eny x-ray [and] t[o] only comply with a search of 3 defecations." *Id.*

In his reply, Defendant Lagree argued that Plaintiff raised the issue of a Fourth Amendment violation related to the X-ray searches for the first time in his response. *See* Dkt. No. 58 at 2. Although Defendant Lagree contended that the claim did not survive the Court's initial review, he addressed the merits of the claim. *See id.* at 3. Defendant Lagree asserted only that "even if the Court were to consider such allegations at this late juncture, 'because x-ray searches are less invasive than a strip search ... a prisoner's rights are not violated by x-ray searches conducted pursuant to a reasonable prison policy.' " *Id.* (quoting *Manley v. Ramos*, No. 13-CV-2662, 2014 WL 1496094, *2 (S.D.N.Y. Apr. 16, 2014)). Defendant Lagree argued that Plaintiff's "allegations are not sufficient to substantiate a claim relative to the Fourth Amendment." *Id.* Defendant Lagree did not otherwise address the merits of the X-ray claim.

Defendant Lagree is correct that this Court's Decision and Order from May 24, 2022, accepted Plaintiff's complaint "with respect to the Fourth Amendment claims asserted against defendants 'C.O. John Doe 1, 2, 3,' and Lagree." Dkt. No. 12 at 17. In analyzing the possible Fourth Amendment claims, the Court stated that "[l]iberally construed, the complaint asserts a Fourth Amendment claim based on allegations that plaintiff's cell was unlawfully searched and he was subjected to an unjustified strip-search on August 4, 2021." *Id.* at 6. The Court did not discuss the X-rays in relation to a purported Fourth Amendment claim. *See id.* at 6-8. The Court did discuss the X-rays in its recitation of the factual background underlying Plaintiff's complaint. *See id.* at 13-16.

In his Report-Recommendation and Order, Magistrate Judge Hummel thoroughly analyzed this issue. *See* Dkt. No. 64 at 13-16. Magistrate Judge Hummel concluded that "[D]efendants would not be prejudiced by the inclusion of [P]laintiff's Fourth Amendment claim based upon the x-ray searches because such claim arises from a similar nucleus of operative facts and asserts similar legal theories as the Fourth Amendment claim already alleged." *Id.* at 15.

**\*5**  Defendant Lagree does not disagree that the X-ray claim is derived from the same set of facts as the strip search claim. *See* Dkt. No. 64 at 4-6. Rather, Defendant Lagree argues only that he is prejudiced because he was not able to depose Plaintiff about the X-rays or seek discovery about them. *See id.* Plaintiff responds in opposition to Defendant Lagree's objections, noting that Defendants' counsel chose to focus Plaintiff's deposition on the strip search despite Plaintiff raising issues with the X-rays from the beginning of the case. *See* Dkt. No. 65 at 1.

"It is well-established that a party 'generally may not assert a cause of action for the first time in response to a summary judgment motion.' " *Design Partners, Inc. v. Five Star Elec. Corp.*, No. 12-CV-2949, 2017 WL 818364, *17 (E.D.N.Y. Mar. 1, 2017) (quoting *Henry v. Metro. Transp. Auth.*, No. 07-CV-3561, 2014 WL 4783014, *10 (S.D.N.Y. Sept. 25, 2014)); *see also Superior Site Work, Inc. v. NASDI, LLC*, No. 2:14-CV-01061, 2018 WL 3716891, *22 (E.D.N.Y. Aug. 3, 2018) (collecting

cases to support the contention that a response to a summary judgment motion cannot be used to amend a complaint). "Claims that are entirely new—that is, claims based [on] new facts and new legal theories with no relation to the previously pled claims —are commonly rejected at the summary judgment stage due to the prejudice to the defendant." *Henry*, 2014 WL 4783014, *10. Such prejudice can occur where a defendant "may not have had fair notice of the claim and consequently may not have had an adequate opportunity for discovery." *Id.* "In contrast, 'claims that are related to or are mere variations of previously pleaded claims—that is, claims based on the same nucleus of operative facts and similar legal theories as the original claims— may be raised on a motion for summary judgment." *Id.* They may be raised "where the defendant was clearly on notice from the complaint and was not unfairly prejudiced.' " *Id.* (quoting *Coudert v. Janney Montgomery Scott, LLC*, No. 3:03-CV-324, 2005 WL 1563325, *2 (D. Conn. July 1, 2005)); *cf.* FED. R. CIV. P. 15(b)(1) ("If, at trial, a party objects that evidence is not within the issues raised in the pleadings, the court may permit the pleadings to be amended. The court should freely permit an amendment when doing so will aid in presenting the merits and the objecting party fails to satisfy the court that the evidence would prejudice that party's action or defense on the merits").

As Plaintiff states in his response to Defendant Lagree's objections, he addressed the X-rays in his complaint. *See* Dkt. Nos. 1, 65. Plaintiff's X-ray claim stems from the same facts as the strip search allegations, and it relies on the same law as applicable to the strip search—the Fourth Amendment. *See Hanlin v. Mitchelson*, 794 F.2d 834, 841 (2d Cir. 1986) ("[T]he new claims are merely variations on the original theme of malpractice, arising from the same set of operative facts as the original complaint. Moreover, both the contract and negligence theories set forth in the proposed amended complaint were forecast by the original malpractice allegations"). Defendant Lagree was also afforded the opportunity to submit a reply and took advantage of that opportunity in which he addressed the merits of the X-ray claim. *See* Dkt. No. 58 at 3. Notably absent from Defendant Lagree's objections is any contention that Plaintiff's claims regarding the X-rays is "new." *See* Dkt. No. 64.

Defendant Lagree contends that he is prejudiced by the failure to depose Plaintiff on the claims related to the X-rays. *See* Dkt. No. 64 at 5. During Plaintiff's deposition, he testified that he was taken "to medical" and told that he "ha[d] to take an X-ray." Dkt. No. 50-5 at 60. Plaintiff stated that he "didn't want to subject myself to no radiation for no reason. And they decided they want to put me in the dry room and they force me to take two x-rays and given two – before I could leave." *Id.* at 60-61. Counsel did not ask Plaintiff about the X-rays. Plaintiff is not required to raise additional information during his deposition on issues about which counsel did not inquire. *See Boulder Falcon, LLC v. Brown*, 345 F.R.D. 511, 517 (D. Utah 2023) ("Depositions are opportunities to ask a witness questions and not to debate the witnesses answers"); *Hayes v. N.Y.S. Dep't of Corrs.*, 84 F.3d 614, 620 (2d Cir. 1996) (disagreeing with the district court's decision to discredit portion of the plaintiff's second deposition because "[i]n short, defense counsel did not ask questions at the first deposition sufficient to elicit the specific content of the conversation ...."); *United States v. Mangano*, No. 16-CR-540, 2022 WL 65775, *64 (E.D.N.Y. Jan. 6, 2022) ("Yet, despite receiving vague, equivocal, and non-responsive answers from Singh during the deposition, opposing counsel at the deposition never asked Singh what should have been obvious questions .... This is another reason why the vague and ambiguous deposition testimony ... does not establish that Singh perjured himself ...").

**\*6** As Defendant Lagree states, his declaration did not discuss the X-rays, only the strip search. *See* Dkt. No. 64 at 5; *see also* Dkt. No. 50-3 at 1-5. It is also true that the Court did not expressly construe a Fourth Amendment claim related to the X-rays. Dkt. No. 12 at 6, 17. The Court did, however, discuss the X-ray allegations in its factual background section, the Court did not expressly dismiss claims related to the X-ray searches, and the Court permitted "Fourth Amendment claims," without limitation, to proceed. *Id.* at 4-5, 17; *see also Read v. Calabrese*, No. 9:11-CV-459, 2013 WL 5506344, *4 (N.D.N.Y. Aug. 29, 2013) ("In their objections to the R & R, defendants argue that the law of the case doctrine should preclude the court from finding a retaliation or due process claim in Read's amended complaint when the court was unable to discern such claims in Read's original complaint.... Here, given Read's *pro se* status, and the additional allegations made in Read's amended complaint implicating a retaliation claim, the court is not persuaded by defendants' law of the case argument").

"[A]s many courts have recognized, the PLRA 'does not obligate the court to screen for every possible defect in a complaint, nor is the screening process infallible.' " *Heard v. Parker*, No. 3:17-CV-01248, 2018 WL 6435863, *4 (M.D. Tenn. Dec. 6, 2018) (quoting *Steinmetz v. Annucci*, No. 17-CV-01000, 2018 WL 4765128, *2 (W.D.N.Y. June 28, 2018); citing, *inter alia*,

*Burfitt v. Bear*, No. 1:15-CV-730, 2016 WL 4992017, *2, n.2 (S.D. Ohio Aug. 15, 2016) ("Due to time constraints, the limited review authorized by the PLRA, and the fact that the Court is not an advocate, the Court's *sua sponte* review of a complaint on initial screening is a relatively cursory one")); *Rogers v. City of Stuart Police Dep't.*, No. 20-CV-14044, 2020 WL 5947425, *1 (S.D. Fla. Sept. 4, 2020) ("A complaint's survival of § 1915(e) screening, 'which was undertaken before [d]efendants were served and appeared, does not preclude a subsequent deeper analysis of whether the Complaint states a claim with the assistance of fully-briefed motions under Rule 12(b)(6).' ...") (quotations omitted).

The Court broadly construed Plaintiff's complaint and put Defendants on notice of Plaintiff's assertion that his Fourth Amendment rights were violated based on the facts set forth in his complaint. *See Espinoza v. N.Y.C. Dep't of Transportation*, 304 F. Supp. 3d 374, 384 (S.D.N.Y. 2018) ("Although a complaint need not correctly plead every legal theory supporting the claim, at the very least, plaintiff must set forth facts that will allow each party to tailor its discovery to prepare an appropriate defense") (quoting *Beckman v. U.S. Postal Serv.*, 79 F.Supp.2d 394, 407 (S.D.N.Y. 2000)); *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (concluding that language in the *pro se* plaintiff's "submissions is 'broad enough to cover' the negligent guard theory.... This language must be liberally construed"); *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) ("[C]ourts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest").

Because Plaintiff raised allegations concerning the X-rays in his complaint, the Court reiterated them in its Decision and Order, the allegations stem from the same set of facts as the strip-search claim, the legal theory is the same (an unconstitutional search under the Fourth Amendment), and Defendant Lagree was afforded an opportunity to reply, the Court concludes that Plaintiff's X-ray claim is not new and was appropriately considered by Magistrate Judge Hummel on summary judgment. *See White v. Doe*, No. 3:16-CV-01874, 2021 WL 4034164, *3 (D. Conn. Sept. 3, 2021) (allowing a claim to proceed on summary judgment where the plaintiff "expressly alleged a Fourth Amendment claim," "[t]he Court conclude[d] that it was error for the initial review order not to acknowledge or address the Fourth Amendment claim," and the parties were allowed to submit supplemental briefing) (quotation omitted).

 **\*7** Defendant Lagree argues that he would be prejudiced by the Court allowing the X-ray claim to proceed because he does not know whether Plaintiff is challenging a specific X-ray search or a policy related to X-ray searches. *See* Dkt. No. 65 at 5-6. Defendant Lagree correctly sets forth the requisite Fourth Amendment inquiry that a Court must conduct where a claim concerns an incarcerated individual's right to bodily privacy as set forth by the Second Circuit in *Harris v. Miller*, 818 F.3d 49, 57 (2d Cir. 2016). *See id.* In *Harris*, the Second Circuit explained that the assessment of Fourth Amendment bodily privacy claims can differ depending on whether the incarcerated individual challenges a prison regulation or an isolated search. *See Harris*, 818 F.3d at 57 (citing *Turner v. Safley*, 482 U.S. 78 (1987); *Bell v. Wolfish*, 441 U.S. 520 (1979)).

Defendant Lagree has never identified a policy related to X-ray searches nor provided one to Plaintiff or the Court. *See* Dkt. No. 62 at 21-23. Plaintiff likewise does not identify any such policy. *See* Dkt. Nos. 1, 56, 65. As explained, the Court broadly construed Plaintiff's complaint as alleging a Fourth Amendment claim which it permitted to proceed. Defendants had the opportunity to ask Plaintiff any questions they wanted during Plaintiff's deposition. The Court agrees with Magistrate Judge Hummel that Plaintiff's Fourth Amendment X-ray claim should proceed to trial where Plaintiff will bear the burden of proving that he was improperly subject to X-ray searches under the Fourth Amendment.

The Court reviewed the remaining aspects of Magistrate Judge Hummel's Report-Recommendation for clear error and finds none. [1]

---

[1]    Plaintiff asks whether "the original due process charge against Lagree still stand[s]." Dkt. No. 66 at 5. Plaintiff asserts that he was "punished for not committing to an X-ray by keeping him confined in the dry room without a warrant, hearing [or] due process." *Id.* When initially reviewing Plaintiff's complaint, the Court construed "a procedural due process claim against defendant L[a]gree with respect to plaintiff's confinement in the dryroom." Dkt. No. 12 at 11.

The Court concluded that Plaintiff failed to state such a claim. *See id.* at 13. Plaintiff did not challenge that conclusion; therefore, there is no pending due process claim against Defendant Lagree.

### IV. CONCLUSION

After carefully reviewing the parties' submissions, Magistrate Judge Hummel's Report-Recommendation and Order, the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Magistrate Judge Hummel's Report-Recommendation and Order (Dkt. No. 62) is **ADOPTED**; and the Court further

**ORDERS** that Defendants' motion for summary judgment (Dkt. No. 50) is **DENIED** as to Plaintiff's Fourth Amendment X-ray claim against Defendant Lagree; and the Court further

**ORDERS** that Defendants' motion for summary judgment (Dkt. No. 50) is otherwise **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court serve a copy of this Memorandum Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2024 WL 3548785

---

**End of Document**                              © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 2324988
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Michael T. HUDSON, Plaintiff,

v.

Correction Officer C. KIRKEY, et al., Defendants.

9:20-CV-00581 (LEK/DJS)
|
Signed March 2, 2023

**Attorneys and Law Firms**

Michael T. Hudson, Easton, PA, Pro Se.

Matthew Gallagher, State of New York - Attorney General, Albany Office, Albany, NY, for Defendant Correction Officer C. Kirkey.

**MEMORANDUM-DECISION AND ORDER**

LAWRENCE E. KAHN, United States District Judge

## I. INTRODUCTION

 **\*1** Plaintiff Michael Hudson commenced this action pro se on May 28, 2020, alleging violations of Eighth Amendment rights at Mohawk Correctional Facility against Defendants Correction Officer ("C.O.") C. Kirkey, Sergeant John Doe, C.O. John Does 1–7, Nurse Jane Doe, and Doctor Jane Doe (collectively, "Defendants"). Dkt. No. 1 ("Complaint"). On October 13, 2020, Defendants filed their first motion for summary judgment. Dkt. No. 17. Thereafter on January 26, 2021, the Honorable Daniel J. Stewart, United States Magistrate Judge, issued a Report-Recommendation recommending that this Court grant Defendants' first motion for summary judgment. Dkt. No. 25 ("January 2021 Report-Recommendation"). This Court rejected Judge Stewart's January 2021 Report-Recommendation on May 17, 2021, and denied Defendants' first motion for summary judgment. Dkt. No. 27 ("May 2021 Order").

On July 29, 2022, Defendants filed another motion for summary judgment. Dkt. No. 49 ("Motion"). Judge Stewart issued another Report-Recommendation—the underlying Report-Recommendation at issue here—recommending that Defendants' Motion be granted in part and denied in part. Dkt. No. 55 ("Report-Recommendation"). Defendants filed objections to the portion of Judge Stewart's Report-Recommendation recommending that Defendants' Motion be denied. Dkt. No. 57 ("Objections"). Plaintiff has not filed a response. See Docket. For the reasons that follow, the Court approves and adopts Judge Stewart's Report-Recommendation, with the modification that Judge Stewart hold an exhaustion hearing pursuant to Messa v. Goord, 652 F.3d 305 (2d Cir. 2011), to determine whether Plaintiff properly exhausted his administrative remedies concerning his excessive force claim against Kirkey.

## II. BACKGROUND

### A. Factual History

Plaintiff's factual allegations are detailed in the Report-Recommendation, familiarity with which is assumed. See R. & R. at 2–3.

Hudson v. Kirkey, Not Reported in Fed. Supp. (2023)

2023 WL 2324988

### B. Report-Recommendation

In the Report-Recommendation, Judge Stewart recommended that Defendants' Motion be denied in part and granted in part. Judge Stewart recommended denying Defendants' Motion predicated on the defense of exhaustion under the Prison Litigation Reform Act ("PLRA") with respect to Plaintiff's excessive force claim against Kirkey. R. & R. at 5–7. In particular, Judge Stewart found that the record could be read to show that Plaintiff submitted a grievance that was never filed. Id. at 6. Judge Stewart also stated that Defendants failed to provide affirmative evidence to establish that no grievance was filed. Id. However, Judge Stewart recommended granting summary judgment on the rest of Plaintiff's allegations because (1) Plaintiff failed to identify the Doe Defendants; (2) Plaintiff conceded that a certain physical force incident did not occur; and (3) Plaintiff's medical indifference claim remained unexhausted. Id. at 7–8.

## III. STANDARD OF REVIEW

Within fourteen days after being served with a copy [of the Magistrate Judge's report and recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of the court." 28 U.S.C. § 636(b)(1)(C); see also L.R. 72.1. If objections are timely filed, a court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). De novo review "does not require the Court to conduct a new hearing; rather, it mandates that the Court give fresh consideration to those issues to which specific objections have been made." A.V. by Versace, Inc. v. Gianni Versace, S.p.A., 191 F. Supp. 2d 404, 406 (S.D.N.Y. 2002).

**\*2** However, if no objections are made, or if an objection is general, conclusory, perfunctory, or a mere reiteration of an argument made to the magistrate judge, a district court need only review that aspect of a report-recommendation for clear error. See DiPilato v. 7-Eleven, Inc., 662 F. Supp. 2d 333, 339 (S.D.N.Y. 2009) ("The district court may adopt those portions of a report and recommendation to which no timely objections have been made, provided no clear error is apparent from the face of the record."); New York City Dist. Couns. of Carpenters Pension Fund v. Forde, 341 F. Supp. 3d 334, 336 (S.D.N.Y. 2018) ("When a party makes only conclusory or general objections, or simply reiterates the original arguments, the Court will review the [report and recommendation] strictly for clear error." (quoting Molefe v. KLM Royal Dutch Airlines, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009))). Clear error "is present when upon review of the entire record, the court is left with the definite and firm conviction that a mistake has been committed." Rivera v. Federal Bureau of Prisons, 368 F. Supp. 3d 741, 744 (S.D.N.Y. 2019). Additionally, a district court will ordinarily refuse to consider an argument that could have been, but was not, presented to the magistrate judge in the first instance. See Hubbard v. Kelley, 752 F. Supp. 2d 311, 312–13 (W.D.N.Y. 2009) ("In this circuit, it is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not.").

Rule 56 of the Federal Rules of Civil Procedure instructs courts to grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute is " 'genuine' ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving part." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Thus, while "[f]actual disputes that are irrelevant or unnecessary" will not preclude summary judgment, "summary judgment will not lie if ... the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.; see also Taggart v. Time, Inc., 924 F.2d 43, 46 (2d Cir. 1991) ("Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted.").

The party seeking summary judgment bears the burden of informing a court of the basis for the motion and identifying those portions of the record that the moving party claims will demonstrate the absence of a genuine dispute of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In attempting to defeat a motion for summary judgment after the moving party has met its initial burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co.

Case 9:22-cv-01263-GTS-TWD     Document 67     Filed 02/03/25     Page 39 of 104

Hudson v. Kirkey, Not Reported in Fed. Supp. (2023)

2023 WL 2324988

v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The nonmoving party may not rely on mere conclusory allegations, speculation or conjecture, see Fischer v. Forrest, 968 F.3d 216, 221 (2d Cir. 2020), and must present more than a mere "scintilla of evidence" supporting its claims, Anderson, 477 U.S. at 252, 106 S.Ct. 2505. At the same time, a court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party, see Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), and must "eschew credibility assessments[,]" Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 122 (2d Cir. 2004) (quoting Weyant v. Okst, 101 F.3d 845, 854 (2d Cir. 1996)). Thus, a court's duty in reviewing a motion for summary judgment is "carefully limited" to finding genuine disputes of fact, "not to deciding them." Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).

## IV. DISCUSSION

Objections were timely filed with respect to the Report-Recommendation. See Docket. Defendants contend that Judge Stewart erred because he overlooked evidence showing that Plaintiff failed to exhaust his administrative remedies by not undertaking reasonable efforts to appeal his grievance to the superintendent level. Obj. at 2. Before addressing these arguments, the Court will discuss the relevant provisions of the PLRA and the grievance process in New York State prisons.

 **\*3** The PLRA provides: "No action shall be brought with respect to prison conditions under section 1983 ... or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Johnson v. Killian, 680 F.3d 234, 238 (2d Cir. 2012) (quoting Porter v. Nussle, 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)). "[T]he PLRA exhaustion requirement requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). In other words, "prisoners must complete the administrative review process in accordance with the applicable procedural rules—rules that are defined not by the PLRA, but by the prison grievance process itself." Killian, 680 F.3d at 238 (quoting Jones v. Bock, 549 U.S. 199, 218, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007)).

Nevertheless, the PLRA "contains its own textual exception to mandatory exhaustion. Under § 1997e(a), the exhaustion requirement hinges on the availab[ility] of administrative remedies." Ross v. Blake, 578 U.S. 632, 642, 136 S.Ct. 1850, 195 L.Ed.2d 117 (2016) (quotations omitted). The Supreme Court has identified three scenarios in which an administrative procedure may be deemed unavailable for purposes of PLRA exhaustion. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. at 643, 136 S.Ct. 1850 (citations omitted). Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." Id. at 643–644, 136 S.Ct. 1850. Finally, "the same is true when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 644, 136 S.Ct. 1850.

In New York State:

DOCCS has a well-established three-step Inmate Grievance Program ("IGP"). N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5 (2013). Generally, the DOCCS IGP involves the following procedure for the filing of grievances. First, an inmate must file a complaint with the facility's IGP clerk within twenty-one calendar days of the alleged occurrence. Id. § 701.5(a). A representative of the facility's Inmate Grievance Resolution Committee ("IGRC") has sixteen calendar days from receipt of the grievance to informally resolve the issue. Id. § 701.5(b)(1). If there is no such informal resolution, the full IGRC conducts a hearing within sixteen calendar days of receipt of the grievance and issues a written decision within two working days of the conclusion of the hearing. Id. §§ 701.5(b)(2), (3).

Second, a grievant may appeal the IGRC decision to the facility's superintendent within seven calendar days of receipt of the IGRC's written decision. Id. § 701.5(c)(1). If the grievance involves an institutional issue (as opposed to a DOCCS-wide policy issue), the superintendent must issue a written decision within twenty calendar days of receipt of the grievant's appeal.

Case 9:22-cv-01263-GTS-TWD    Document 67    Filed 02/03/25    Page 40 of 104
Hudson v. Kirkey, Not Reported in Fed. Supp. (2023)

2023 WL 2324988

Id. § 701.5(c)(3)(ii). Grievances regarding DOCCS-wide policy issues are forwarded directly to the central office review committee ("CORC") for a decision under the process applicable to the third step. Id. § 701.5(c)(3)(i).

Third, a grievant may appeal to CORC within seven working days of receipt of the superintendent's written decision. Id. § 701.5(d)(1)(i). CORC is to render a written decision within thirty calendar days of receipt of the appeal. Id. § 701.5(d)(3)(ii).

Bryant v. Whitmore, No. 14-CV-1042, 2016 WL 7188127, at *4 (N.D.N.Y. Nov. 4, 2016), report and recommendation adopted, Bryant v. Thomas, 2016 WL 7187349 (N.D.N.Y. Dec. 9, 2016).

**\*4**  Moreover, the Second Circuit has held that factual disputes concerning exhaustion under the PLRA must be determined by courts rather than juries. See Messa, 652 F.3d at 308–09 ("[Plaintiff] argues that, unlike other aspects of exhaustion, which he concedes are properly resolved by the court, determining whether an inmate asserts a valid excuse for non-exhaustion is a task for the jury. We are not persuaded."). Likewise, exhaustion is an affirmative defense, and the burden of proof at all times, remains on the defendant. See Ferguson v. Mason, No. 19-CV-927, 2021 WL 862070, at *3 (N.D.N.Y. Jan. 7, 2021), report and recommendation adopted, 2021 WL 531968 (N.D.N.Y. Feb. 12, 2021).

Here, Defendants object to Judge Stewart's conclusion that: "Defendant has not come forward with affirmative evidence on this Motion to establish that no grievance was filed. It is unclear why, if such evidence existed, it was not presented by Defendant." R. & R. at 6–7. Defendants argue that Judge Stewart erred because they contend that they have provided evidence showing that Plaintiff never filed grievances; they reference the evidence filed in their first motion for summary judgment to support this assertion. Obj. at 2–3. Defendants rely on Local Rule 7.1(b) which provides: "Documents that are on file with the Court in the same action should not be attached as exhibits to the motion papers, but rather should reference to the appropriate docket number." Obj. at 3 (citing L.R. 7.1(b)).

The Court agrees with Defendants that they have provided evidence for purposes of this motion. They need not re-file the same evidence pursuant to Local Rule 7.1(b). See Dkt. Nos 17-4; 17-8; 17-10. Nevertheless, the Court agrees with Judge Stewart's conclusion. As this Court has stated in a previous order, "this dispute essentially boils down to a clash of sworn statements." Hudson v. Kirkey, No. 20-CV-0581, 2021 WL 1966721, at *4 (N.D.N.Y. May 17, 2021) (Kahn, J.). Similar to the facts of the May 2021 Order, Plaintiff testified that he submitted multiple grievances that were never filed, Dkt. No. 49-1 ("Plaintiff's Deposition") at 110–12, while "Kirkey submitted sworn statements from inmate grievance program supervisors indicating that a review of their records revealed that no grievance was filed." Hudson, 2021 WL 1966721, at *4. However, the Court cannot resolve the action in favor of Defendants because the Court is not convinced that Defendants have satisfied their burden of proof. As this Court noted: "To the extent that these statements are in contradiction, the Court cannot resolve this contradiction at the summary judgment stage, because this Court is prohibited from making credibility determinations." Id. As another court in this District explained:

> [T]he defendant bears the burden of proving that the administrative remedies available to the plaintiff were not exhausted prior to the initiation of a civil action. However, once a defendant has produced reliable evidence that such remedies were generally available, and the plaintiff nevertheless filed to exhaust those remedies, the plaintiff must then counter the defendant's proof by showing that, as to him, or her, the remedy was unavailable. As a result, practically speaking, while the burden on this affirmative defense remains all times on the defendant, the plaintiff may sometimes have to adduce evidence in order to defeat it.

Coleman v. Nolan, No. 15-CV-40, 2018 WL 4732778, at *4 (N.D.N.Y. Oct. 2, 2018) (internal citations and quotations omitted).

Case 9:22-cv-01263-GTS-TWD    Document 67    Filed 02/03/25    Page 41 of 104

Hudson v. Kirkey, Not Reported in Fed. Supp. (2023)

2023 WL 2324988

 **\*5**  Moreover, the framework described above "does not require a greater evidentiary showing from Plaintiff than would otherwise be required during summary judgment." Hudson, 2021 WL 1966721, at *4 (citations omitted). "A presumption's only effect is to require the party contesting it to produce enough evidence substantiating the presumed fact's absence to withstand a motion for summary judgment." Id. Thus, as this Court explained, "once Kirkey introduced evidence that there was a functional grievance system [via Dkt. No. 17], Plaintiff could not have survived summary judgment by simply pointing to Kirkey's failure to introduce evidence that this process was specifically available to Plaintiff. Rather in order to make the presumption of availability 'vanish,' Plaintiff had to produce competent evidence supporting unavailability." Id. (citing McLean v. LaClair, No. 19-CV-1227, 2021 WL 671650, at *8 (N.D.N.Y. Feb. 22, 2021)).

Like the Court found in the May 2021 Order, Plaintiff *has* submitted evidence supporting unavailability of administrative remedies. Plaintiff testified that he attempted to submit grievances twice, Pl.'s Dep. at 110–12, and then testified that after he inquired with prison officials about his grievances he was told, "you waited too many days to file again." Id. at 112. As a result, drawing all inferences in favor of Plaintiff, the record shows that he attempted to file his grievance twice and when he followed up, he was told he could not re-file because he "waited too many days to file again...." Id. And because "a sworn statement [or deposition] based upon personal knowledge is sufficient when opposed only by a movant's conflicting sworn statement ... Plaintiff's evidence is sufficient" to defeat summary judgment at this stage in the litigation. Hudson, 2021 WL 1966721, at *4 (citations omitted).

Likewise, "the ... statements from each side are not necessarily inconsistent. Since the Court is required to draw reasonable inferences in Plaintiff's favor, the Court must infer that the grievance was never filed because prison authorities did not file it, not because Plaintiff did not submit it." Id. (citations omitted). See also Zulu v. Barnhart, No. 16-CV-1408, 2019 WL 2997226, at *13, (N.D.N.Y. Apr. 22, 2019) report and recommendation adopted, No. 16-CV-1408, 2019 WL 2150628, (N.D.N.Y. May 17, 2019) ("Defendants' evidence is largely consistent with plaintiff's claim that ... the timely grievances that he attempted to submit while confined to the SHU at Marcy were not filed. The absence of any official records of plaintiff's initial attempts to grieve the incident comports with plaintiff's assertions that once he handed a grievance through the feed-up hatch in the SHU, it was out of his possession and it was not filed.").

Accordingly, Kirkey has failed to carry his burden of proof that no disputes of material fact exist regarding whether the grievance process was available to Plaintiff due to potential "machinations or misrepresentations of prison officials who inhibited the filing of Plaintiff's submissions." McLean, 2021 WL 671650, at *9. Thus, "[i]n order to determine whether Plaintiff properly exhausted administrative remedies, the Court must hold a hearing, at which a fact-finder can assess the credibility of witnesses and the relative weight of the evidence and parties presented." Hudson, 2021 WL 1966721, at 4. [1]  See also McLean v. LaClair, No. 10-CV-1227, 2021 WL 671650, at *9 (N.D.N.Y. Feb. 22, 2021) (Kahn, J.) (ordering an exhaustion hearing on a similar PLRA affirmative defense to assess the credibility of witnesses and evidence). As a result, holding an exhaustion hearing pursuant to Messa v. Goord before Judge Stewart is the most appropriate action.

[1]    Kirkey also argues that Plaintiff never filed an appeal, and thus failed to exhaust his remedies. See Mot. at 7. However, Kirkey already made this argument to Judge Stewart. Mot. at 9. Thus, the Court will not relitigate this argument de novo. See Forde, 341 F. Supp. 3d at 346 ("When a party makes only conclusory or general objections, or *simply reiterates the original arguments*, the Court will review the [report and recommendation] strictly for clear error.") (emphasis added). Even assuming *arguendo* that the Court reviewed this portion de novo, the Court has already found that Kirkey failed to demonstrate an absence of material fact regarding whether administrative remedies were available. Gill v. Frawley, No. 02-CV-1380, 2006 WL 1742738, 2006 U.S. Dist. LEXIS 101694 at *44 (N.D.N.Y. May 9, 2006) (noting that "[s]ome courts have suggested that an inmate has exercised a reasonable effort to exhaust his administrative remedies when he has tried to properly file a grievance and that grievance has been lost or destroyed by a prison official," and collecting cases). As a result, an exhaustion hearing is required. See Woodward v. Lytle, No. 16-CV-1174, 2019 WL 2527342, at * 1 (N.D.N.Y. May 24, 2019), report and recommendation adopted, 2019 WL 2524756 (N.D.N Y June 19, 2019) (opting to issue a decision on exhaustion subsequent to a hearing).

**\*6**  Neither party filed objections to the remaining portions of the Report-Recommendation when they were due pursuant to Fed. R. Civ. P. 6(d) and 6(a)(1)(C). See generally Docket. Consequently, the Court reviews the rest of the Report-Recommendation for clear error and finds none. Therefore, the Court adopts the Report-Recommendation with the modification regarding exhaustion.

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the Report-Recommendation (Dkt. No. 55) is **APPROVED and ADOPTED** with the modification that Magistrate Judge Stewart resolve the exhaustion issues concerning Plaintiff's excessive force claim against Kirkey through a hearing; and it is further

**ORDERED**, that Defendants' motion for summary judgment (Dkt. No. 49) is **GRANTED in part** and **DENIED in part**; and it is further

**ORDERED**, that Defendants' motion for summary judgment (Dkt. No. 49) is **GRANTED** with respect to all claims against the unidentified John Doe and Jane Doe defendants; and it is further

**ORDERED**, that the Clerk terminate the John Doe and Jane Doe Defendants from this action; and it is further

**ORDERED**, that Defendant's motion for summary judgment (Dkt. No. 49) is **DENIED** with respect to Plaintiff's Eighth Amendment excessive force claim against Kirkey; and it is further

**ORDERED**, that this matter is **REFERRED BACK** to Magistrate Judge Stewart to facilitate resolution of the genuine disputes of material fact surrounding Plaintiff's exhaustion of his administrative remedies, including holding an exhaustion hearing concerning his excessive force claim against Kirkey; and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2023 WL 2324988

Haywood v. Fuller, Not Reported in Fed. Supp. (2019)

2019 WL 2442142

2019 WL 2442142
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Barry HAYWOOD, Jr., Plaintiff,

v.

Jeff FULLER, Corrections Officer, Mid-State Correctional Facility; Jessica Denny, Offender Rehabilitation
Coordinator, Mid-State Correctional Facility; Robert Hart, Sergeant, Mid-State Correctional Facility, Defendants.

9:18-CV-01097 (MAD/DEP)
|
Signed 06/12/2019

**Attorneys and Law Firms**

BARRY HAYWOOD, JR., 18-R-1006, Mid-State Correctional Facility, P.O. Box 2500, Marcy, New York 13403, Plaintiff pro
se.

OF COUNSEL: NICHOLAS LUKE ZAPP, AAG, OFFICE OF THE NEW YORK, STATE ATTORNEY GENERAL, The
Capitol, Albany, New York 12224, Attorney for Defendants.

## MEMORANDUM-DECISION AND ORDER

Mae A. D'Agostino, U.S. District Judge:

## I. INTRODUCTION

 **\*1** Plaintiff brought this action pursuant to 42 U.S.C. § 1983, alleging violations of his civil rights while he was an inmate
in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). *See generally* Dkt.
No. 1. The complaint alleges claims based on free speech, due process, excessive force, failure to protect, and denial of medical
treatment. *See* Dkt. No. 1 at 5. Only Plaintiff's Eighth Amendment claims of excessive force and failure to protect survived
initial review. *See* Dkt. No. 8 at 19-20. These claims were filed against Defendants Fuller, Hart, and Denny, employees of
DOCCS. *See id.*; Dkt. No. 1 at 1.

On March 15, 2019, Defendants moved for summary judgment as to the remaining Eighth Amendment claims on the ground
that Plaintiff failed to exhaust administrative remedies pursuant to 42 U.S.C. § 1997e(a) of the Prison Litigation Reform Act
("PLRA"). *See* Dkt. No. 17-1 at 3. In an April 16, 2019 Order, Report, and Recommendation, Magistrate Judge David E.
Peebles recommended that Defendants' motion for summary judgment be granted and that Plaintiff's complaint be dismissed
in its entirety on grounds of (1) failure to exhaust administrative remedies and (2) failure to comply with the procedural rules
of the court. *See* Dkt. No. 22 at 2.

## II. BACKGROUND

Plaintiff was an inmate at Mid-State Correctional Facility ("Mid-State") at the time he filed his complaint on September 13,
2018. *See* Dkt. No. 1 at 1, 2, 5. Plaintiff alleges that, on August 21, 2018 at approximately 1:30 p.m., Defendant Fuller and
Defendant Hart assaulted him and Defendant Denny failed to prevent the assault. *See* Dkt. No. 1 at 5. According to the complaint,
Defendants Fuller and Hart "threw" Plaintiff onto a wall. *See id.* Defendant Fuller kicked Plaintiff's legs out from under him,

Haywood v. Fuller, Not Reported in Fed. Supp. (2019)

Case 9:22-cv-01263-GTS-TWD    Document 67    Filed 02/03/25    Page 44 of 104

2019 WL 2442142

causing Plaintiff to strike his head against a wall and lose consciousness. *See id.* When Plaintiff regained consciousness, Defendant Fuller was kicking him in the groin area. *See id.* After the assault, Plaintiff claims that he was taken to receive medical treatment. *See id.*

On August 23, 2018, Plaintiff filed a grievance regarding the alleged assault at Mid-State through the DOCCS Inmate Grievance Program ("IGP"). *See* Dkt. No. 17-3 at ¶ 10 and exh. B. Due to the nature of Plaintiff's grievance, it was forwarded directly to the Mid-State Superintendent for review and response. *See id.* at ¶ 11. The Superintendent denied Plaintiff's grievance in a written decision dated November 29, 2018. *See id.* at ¶ 11 and exh. C. Plaintiff did not appeal the Superintendent's decision. *See id.* at ¶ 13; Dkt. No. 17-4 at ¶ 13 and exh. A. Plaintiff had knowledge of the proper procedure of the IGP, as he attended the Mid-State orientation program, detailing the IGP procedures, and also received a letter from the Assistant Director of the IGP, reminding Plaintiff of those procedures after the filing of his grievance. *See* Dkt. No. 17-3 at ¶ 4; Dkt. No. 17-4 at ¶ 14 and exh. B. In addition, DOCCS Directive No. 4040 and N.Y.C.R.R. Title 7 provide information about the grievance process and are available in Mid-State's law library. *See* Dkt. No. 17-3 at ¶ 4.

**\*2** In its initial decision dated November 27, 2018, the Court instructed Plaintiff "to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any changes in his address; their failure to do so will result in the dismissal of his action." Dkt. No. 8 at 20 (emphasis omitted). Plaintiff appears to have been released from confinement at Mid-State on February 28, 2019. *See* Dkt. No. 17-1 at 3 n.1. Since such time, the Court has attempted to notify Plaintiff via mail at his Mid-State address with respect to Defendants' motion for summary judgment, a separate text order of the Court, and the Order, Report, and Recommendation made by Magistrate Judge Peebles. *See* Dkt. Nos. 20, 21, 23. Each notice has been returned as undeliverable. *See id.*

Currently before the Court is Magistrate Judge Peebles' April 16, 2019 Order, Report, and Recommendation. No objections have been filed.

## III. DISCUSSION

### A. Standard of Review

When a party files specific objections to a magistrate judge's report-recommendation, the district court makes a "*de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). However, when a party files "[g]eneral or conclusory objections, or objections which merely recite the same arguments [that he presented] to the magistrate judge," the court reviews those recommendations for clear error. *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, *1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Id.* at 36-37 (quotation and other citation omitted). Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleadings. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513-14, 91 L. Ed. 2d 202 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather, the court must be satisfied that the citations to evidence in the

Case 9:22-cv-01263-GTS-TWD    Document 67    Filed 02/03/25    Page 45 of 104

Haywood v. Fuller, Not Reported in Fed. Supp. (2019)
2019 WL 2442142

record support the movant's assertions. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

In reviewing a *pro se* case, the court "must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.' " *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972)) (other citations omitted). The Second Circuit has opined that the court is obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely because they lack a legal education. *Id.* (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). However, this does not mean that a *pro se* litigant is excused for following the procedural requirements of summary judgment. *See id.* (citing *Showers v. Eastmond*, 00 CIV. 3725, 2001 WL 527484, at *2 (S.D.N.Y. May 16, 2001)). Specifically, "a *pro se* party's 'bald assertion,' completely unsupported by evidence" is not sufficient to overcome a motion for summary judgment. *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (citing *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

## B. Plaintiff Failed To Exhaust Administrative Remedies in Violation of the PLRA

**\*3** The PLRA states that "[no] action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement applies to all suits brought by inmates regarding aspects of prison life. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002). Inmates must exhaust all available administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *See Giano v. Goord*, 380 F.3d 670, 675 (2d Cir. 2004), *abrogated on other grounds by Ross v. Blake*, 136 S. Ct. 1850 (2016). The failure to exhaust is an affirmative defense that must be raised by the defendants and, as such, it is the defendants' burden to establish that the plaintiff failed to meet the exhaustion requirements. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (citations omitted).

The Supreme Court has held that in order to properly exhaust an inmate's administrative remedies, the inmate must complete the administrative review process in accordance with the applicable state rules. *See Jones*, 549 U.S. at 218-19 (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)). In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court. *See Woodford*, 548 U.S. at 90-103.

New York State has a three-step administrative review process. First, a grievance is submitted to the IGRC which reviews and investigates the formal complaint before issuing a written determination. *See* 7 N.Y.C.R.R. § 701.5(b). Second, an adverse decision by the IGRC may be appealed to the Superintendent of the Facility. *See id.* at § 701.5(c). Third, an adverse decision by the Superintendent may be appealed to the CORC, which makes the final determination within the administrative review process. *See id.* at § 701.5(d).

If an inmate's grievance contains issues of employee harassment, then the grievance bypasses the first step of IGRC review and is forwarded directly to the Superintendent. *See id.* at § 701.8(b)(c). The Superintendent must render a written decision within twenty-five days of receipt of the grievance. *See id.* at § 701.8(g). An inmate may appeal such a decision to the CORC within seven days of its receipt. *See id.* at § 701.8(h).

If all three levels of review are exhausted, then the prisoner may seek relief in federal court pursuant to section 1983. *See Bridgeforth v. DSP Bartlett*, 686 F. Supp. 2d 238, 239 (W.D.N.Y. 2010) (citing *Porter*, 534 U.S. at 524); *Singh v. Goord*, 520 F. Supp. 2d 487, 495-96 (S.D.N.Y. 2007) (quoting *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004)).

To the extent a civil rights claim must be exhausted by the grievance process, completion of the three-tiered process, through and including a final decision by the CORC, must be completed before an action asserting that claim may be filed in court. *See,*

Case 9:22-cv-01263-GTS-TWD    Document 67    Filed 02/03/25    Page 46 of 104
Haywood v. Fuller, Not Reported in Fed. Supp. (2019)
2019 WL 2442142

*e.g., Casey v. Brockley*, No. 9:13-CV-1271, 2015 WL 8008728, *5 (N.D.N.Y. Nov. 9, 2015) ("Receiving a decision from CORC *after* commencing litigation does not satisfy PLRA's requirement that administrative remedies be exhausted *before* filing suit, and any claim not exhausted prior to commencement of the suit must be dismissed without prejudice") (citing *Neal v. Goord*, 267 F.3d 116, 122-23 (2d Cir. 2001), *overruled on other grounds, Porter v. Nussle*, 534 U.S. 516 (2002)); *Rodriguez v. Rosner*, No. 12-CV-958, 2012 WL 7160117, *8 (N.D.N.Y. Dec. 5, 2012). "[A] post-exhaustion amendment of the complaint cannot cure an exhaustion defect existing at the time the action was commenced." *Guillory v. Haywood*, No. 9:13-CV-1564, 2015 WL 268933, *11 (N.D.N.Y. Jan. 21, 2015) (citing *Neal*, 267 F.3d at 122) (other citation omitted).

 **\*4**  Although administrative remedies generally must be exhausted, a prisoner need not exhaust remedies if they are not "available." *Ross*, 136 S. Ct. at 1855. "First, an administrative remedy may be unavailable when 'it operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates.' " *Williams*, 829 F.3d at 123 (quoting *Ross*, 136 S. Ct. at 1859). "Second, 'an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use.' " *Id.* (quoting *Ross*, 136 S. Ct. at 1859). "In other words, 'some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it.' " *Id.* at 123-24 (quoting *Ross*, 136 S. Ct. at 1859). "Third, an administrative remedy may be unavailable 'when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.' " *Id.* at 124 (quoting *Ross*, 136 S. Ct. at 1860).

In the present matter, Magistrate Judge Peebles correctly found that Plaintiff failed to exhaust available administrative remedies through the proper channels of the IGP. *See* Dkt. No. 22 at 17. Plaintiff filed a grievance on August 23, 2018 concerning the alleged assault by Defendants. *See* Dkt. No. 17-3 at ¶ 10 and exh. B. Since Plaintiff's grievance contained allegations of employee harassment, it was forwarded directly to Mid-State's Superintendent for review. *See* 7 N.Y.C.R.R. § 701.8(b)(c); Dkt. No. 17-3 at ¶ 11. The Superintendent denied Plaintiff's grievance in a written decision dated November 29, 2018. *See* Dkt. No. 17-3 at ¶ 11 and exh. C. Plaintiff did not appeal the Superintendent's decision to the CORC. *See id.* at ¶ 13; Dkt. No. 17-4 at ¶ 13 and exh. C. Not only did Plaintiff fail to appeal to the CORC, Plaintiff filed this action *prior* to the twenty-five day time frame granted to the Mid-State Superintendent for response. *See* 7 N.Y.C.R.R. § 701.8(g); Dkt. No. 17-3 at exh. B; *see generally* Dkt. No. 1. Plaintiff did not complete the requisite three steps of the IGP and accordingly, failed to exhaust administrative remedies in violation of the PLRA. *See* 42 U.S.C. § 1997e(a); Dkt. No. 17-3 at ¶ 13; Dkt. No. 17-4 at ¶ 13 and exh. A; *see, e.g., Casey*, 2015 WL 8008728, at *5 (citing *Neal*, 267 F.3d at 122-23); *Rodriguez*, 2012 WL 7160117, at *8 (N.D.N.Y. Dec. 5, 2012). Based on the foregoing, the Court finds that no reasonable jury could find that Plaintiff exhausted administrative remedies and, therefore, Magistrate Judge Peebles correctly recommended that the Court grant Defendants' motion for summary judgment.

**C. Plaintiff Failed to Update His Address in Violation of the Local Rules of the Court**
Rule 41(b) of the Federal Rules of Civil Procedure provides that a court may, in its discretion, dismiss an action based upon the failure of a plaintiff to prosecute the action, or to comply with the procedural rules or orders of the court. *See* Fed. R. Civ. P. 41(b);[1]  *see also Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962) (upholding the district court's inherent authority to dismiss an action *sua sponte* for failure to prosecute, notwithstanding the language of Rule 41(b) which appears to permit such action only on motion of the defendant). This power to dismiss may be exercised when necessary to achieve orderly and expeditious disposition of cases. *See Freeman v. Lundrigan*, No. 6:95-CV-1190, 1996 WL 481534, *1 (N.D.N.Y. Aug. 22, 1996).

[1]      It is well-settled that the term "these rules" in Fed. R. Civ. P. 41(b) refers not only to the Federal Rules of Civil Procedure but also to the local rules of practice for a district court. *See Tylicki v. Ryan*, 244 F.R.D. 146, 147 (N.D.N.Y. 2006).

In deciding whether to grant dismissal pursuant to Rule 41(b) for failure to comply with an order or the court's procedural rules, the court must consider five factors: (1) the duration of the plaintiff's failure to comply; (2) whether the plaintiff was on notice that failure to comply would result in dismissal; (3) whether the defendant is likely to be prejudiced by further delay in the proceedings; (4) a balancing of the court's interest in managing its docket with the plaintiff's interest in receiving a fair chance to be heard; and (5) whether the judge has adequately considered a sanction less drastic than dismissal. *See Lucas v. Miles*, 84 F.3d 532, 535 (2d Cir. 1996). In general, "no factor is dispositive in determining whether dismissal is warranted." *See Spencer v. Doe*, 139 F.3d 107, 113 (2d Cir. 1998). Dismissal pursuant to Rule 41(b) for lack of prosecution or for failure to comply with

2019 WL 2442142

an order of the court is a matter committed to the discretion of the district court. *See Link*, 370 U.S. at 633. The court should exercise this discretion with caution and restraint because dismissal is a harsh remedy, especially when invoked against a *pro se* plaintiff. *See Baptiste v. Sommers*, 768 F.3d 212, 216-17 (2d Cir. 2014).

 **\*5**  In the present matter, Magistrate Judge Peebles correctly found that Plaintiff's action is subject to dismissal due to his failure to update his address in violation of the Local Rules of the Court. *See* Fed. R. Civ. P. 41(b). The Local Rules of the Court require that "[a]ll ... *pro se* litigants must immediately notify the Court of any change of address." N.D.N.Y. L.R. 10.1(c)(2) (emphasis omitted). The Court expressly informed Plaintiff of this requirement in its initial decision and order dated November 27, 2018. *See* Dkt. No. 8 at 20 ("Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any changes in his address; their failure to do so will result in the dismissal of his action" (emphasis omitted)). Plaintiff appears to have been released from Mid-State on February 28, 2019. *See* Dkt. No. 17-1 at 3 n.1. Plaintiff failed to update his address with the Court following his release and all subsequent notices have been returned as undeliverable. *See* Dkt. Nos. 20, 21, 23.

In his Order, Report, and Recommendation, Magistrate Judge Peebles correctly weighed the aforementioned factors in consideration of a dismissal under Rule 41(b) when he found, "the need to alleviate congestion on the court's docket and defendants' interest in defending against the claims asserted by plaintiff outweigh his right to receive a further opportunity to be heard in this matter. As required, I have considered less-drastic sanctions, but reject them as ineffective." Dkt. No. 22 at 20-21; *see Lucas*, 84 F.3d at 535 (2d Cir. 1996). Therefore, dismissal pursuant to Rule 41(b) is proper. *See Link*, 370 U.S. at 633.

## IV. CONCLUSION

After carefully considering Magistrate Judge Peebles' Order, Report, and Recommendation, the entire record in this matter, the parties' submissions, and the applicable law, and for the reasons stated herein, the Court hereby,

**ORDERS** that Magistrate Judge Peebles' Order, Report, and Recommendation (Dkt. No. 22) is **APPROVED** and **ADOPTED in its entirety**; and the Court further

**ORDERS** that Defendants' Motion for Summary Judgment (Dkt. No. 17) is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's complaint is **DISMISSED with prejudice**; and the Court further

**ORDERS** that the Clerk shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2019 WL 2442142

---

**End of Document**                                            © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Burrell v. Nelson, Not Reported in Fed. Supp. (2023)

2023 WL 4373288

2023 WL 4373288
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Ako K. BURRELL, Plaintiff,

v.

T. NELSON, et al., Defendants.

9:22-CV-702 (DNH/ATB)
|
Signed June 13, 2023

**Attorneys and Law Firms**

AKO K. BURRELL, Plaintiff pro se.

OLIVIA R. COX, Asst. Attorney General, for Defendants.

**REPORT-RECOMMENDATION**

ANDREW T. BAXTER, United States Magistrate Judge

**\*1** In the relevant portions of this civil rights complaint, plaintiff alleges various constitutional violations committed by defendants while he was incarcerated at Upstate Correctional Facility ("Upstate C.F."). (Complaint ("Compl.")) (Dkt. No. 1). Presently before the court is the moving defendants' [1] motion for summary judgment pursuant to Fed. R. Civ. P. 56 for failure to exhaust administrative remedies. (Dkt. No. 22). Plaintiff has filed a response in opposition to the motion, and the moving defendants have filed a reply. (Dkt. Nos. 26, 27). For the following reasons, this court agrees with the moving defendants and will recommend summary judgment dismissing the complaint as against them, based on plaintiff's failure to exhaust his administrative remedies.

[1]   Defense counsel represents that the instant motion does not seek summary judgment on those claims arising out of the May 19, 2022 sexual assault allegations against defendants Hastings, Mainville, and Spinner. (Defendants' Memorandum of Law ("Def.'s MOL") at 2 n. 1). Accordingly, at this juncture the court will only consider whether summary judgment for failure to exhaust administrative remedies is appropriate as against defendants Fontain, Johnson, Nelson, Bullock, Niles, Sawyer, Rowe, and Ozborne, whom the court will hereafter refer to as the "moving defendants."

**I. Complaint**

Plaintiff's complaint is 104 pages in length, with 343 pages of exhibits. (*See generally* Compl.). At this juncture, it is not necessary for the court to provide an in-depth recitation of plaintiff's lengthy factual allegations. For purposes of this recommendation, it is sufficient to note that, pursuant to the Honorable David N. Hurd's February 9, 2023 decision and order, the following claims survived initial review pursuant to 28 U.S.C. § 1915:

    1. Eighth Amendment excessive force/failure to intervene claims against defendants Hastings, Spinner, and Mainville; and

    2. First Amendment retaliation claims against defendants Fontain, Johnson, Nelson, Bullock, Niles, Sawyer, Rowe, Ozborne, Hastings, Mainville, and Spinner.

(Dkt. No. 9 at 29-32). The events giving rise to the above claims allegedly occurred in April and May of 2022. (*See generally* Compl.). To the extent that additional facts pertaining to plaintiff's exhaustion of his legal remedies are relevant to the pending motion, I will discuss them during my analysis.

## II. Summary Judgment

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006). "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

 **\*2**  The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord*, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). However, in determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Salahuddin*, 467 F.3d at 272.

## III. Exhaustion of Administrative Remedies

### A. Legal Standards

The Prison Litigation Reform Act, ("PLRA"), 42 U.S.C. § 1997e(a), requires an inmate to exhaust all available administrative remedies prior to bringing a federal civil rights action. The exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and regardless of the subject matter of the claim. *See Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004), (citing *Porter v. Nussle*, 534 U.S. 516, 532 (2002)), abrogated on other grounds by *Ross v. Blake*, 578 U.S. 632 (2016). Inmates must exhaust their administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *Id.* at 675.

In order to properly exhaust an inmate's administrative remedies, the inmate must complete the administrative review process in accordance with the applicable state rules. *Jones v. Bock*, 549 U.S. 199, 218-19 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)). In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court. *Woodford,* 548 U.S. at 90-103.

The grievance procedure in New York is a three-tiered process. The inmate must first file a grievance with the Incarcerated [2] Grievance Resolution Committee ("IGRC"). N.Y. Comp. Codes R. & Regs., tit. 7 §§ 701.5(a)(1) and (b). An adverse decision of the IGRC may be appealed to the Superintendent of the Facility. *Id.* § 701.5(c). Adverse decisions at the Superintendent's level may be appealed to the Central Office Review Committee ("CORC"). *Id.* § 701.5(d). The court also notes that the regulations governing the Incarcerated [3] Grievance Program ("IGP") encourage the inmate to "resolve his/her complaints through the guidance and counseling unit, the program area directly affected, or other existing channels (informal or formal) prior to submitting a grievance." *Id.* § 701.3(a) (Inmate's Responsibility). There is also a special section for complaints of harassment. *Id.* § 701.8. Complaints of harassment are handled by an expedited procedure which provides that such grievances are forwarded directly to the Superintendent of the facility, after which the inmate must appeal any negative determination to the CORC. *Id.* §§ 701.8(h) & (I), 701.5.

Burrell v. Nelson, Not Reported in Fed. Supp. (2023)

2023 WL 4373288

<sup>2</sup>     This committee was formerly known as the "Inmate Grievance Resolution Committee," but has recently been renamed.

<sup>3</sup>     The program was formerly known as the "Inmate Grievance Program," but has recently been renamed.

Prior to *Ross v. Blake, supra*, the Second Circuit utilized a three-part inquiry to determine whether an inmate had properly exhausted his administrative remedies. *See Brownell v. Krom*, 446 F.3d 305, 311-12 (2d Cir. 2006) (citing *Hemphill v. State of New York*, 380 F.3d 680, 686 (2d Cir. 2004)). The *Hemphill* inquiry asked (1) whether the administrative remedies were available to the inmate; (2) whether defendants' own actions inhibiting exhaustion estops them from raising the defense; and (3) whether "special circumstances" justify the inmate's failure to comply with the exhaustion requirement. *Id.*

**\*3**  In *Ross*, the Supreme Court made it clear that courts may not excuse a prisoner's failure to exhaust because of "special circumstances." *Ross v. Blake*, 578 U.S. 632, 640 (2016). "[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion." *Riles v. Buchanan*, 656 F. App'x 577, 580 (2d Cir. 2016) (quoting *Ross*, 578 U.S. at 639). Although *Ross* has eliminated the "special circumstances" exception, the other two factors in *Hemphill* – availability and estoppel – are still valid. The court in *Ross* referred to "availability" as a "textual exception" to mandatory exhaustion, and "estoppel" has become one of the three factors in determining availability. *Ross*, 578 U.S. at 642. Courts evaluating whether an inmate has exhausted his or her administrative remedies must also consider whether those remedies were "available" to the inmate. *Id.*; *see also Riles*, 2016 WL 4572321 at \*2.

## B. Analysis

The moving defendants argue that summary judgment is warranted as against them, because no genuine issue of material fact exists concerning plaintiff's failure to exhaust his administrative remedies.<sup>4</sup> As previously set forth, plaintiff's surviving claims arise from events which took place at Upstate C.F. in April and May of 2022. Plaintiff commenced this § 1983 action by the filing of his complaint on July 1, 2022. (*See generally* Compl.).

<sup>4</sup>     Although the court usually requires some limited discovery be conducted before granting summary judgment in the PLRA context, discovery is not necessary when, as here, "the facts regarding plaintiff's efforts at exhaustion are not disputed, and it does not appear that any amount of discovery would change the outcome." *Cossette v. Edwards*, No. 20-CV-6427, 2022 WL 2342478, at \*8 (S.D.N.Y. June 29, 2022) (quoting *Gottesfeld v. Anderson*, 18 Civ. 10836, 2020 WL 1082590, at \*7 (S.D.N.Y. Mar. 6, 2020)).

In support of their argument that plaintiff failed to exhaust his administrative remedies, the moving defendants rely on the declaration of Rachael Seguin, Director of the IGP with the New York State Department of Corrections and Community Supervision ("DOCCS"); the declaration of Cassie Bayne, IGP Supervisor at Upstate C.F.; and the various DOCCS records attached as exhibits to each declaration. (Declaration of Rachael Seguin ("Seguin Decl."), Dkt. No. 22-3; Declaration of Cassie Bayne ("Bayne Decl"), Dkt. No. 22-5). According to Director Seguin and Supervisor Bayne, and as confirmed by DOCCS's records, plaintiff filed "voluminous" facility level grievances while confined to Upstate C.F. in 2022. Specifically, plaintiff filed 20 grievances in the 35-day period between April 18th and May 23rd. (Bayne Decl. Ex. B). Per the moving defendants, the following grievances have been deemed to relate to plaintiff's surviving claims in this action:

1.  UST-0587-22 ("Grievance No. 587"), titled "ORC's/C.L. 137," which was filed on April 18, 2022. In this grievance, plaintiff alleges that defendants Fountain, Johnson, and Nelson coerced him into signing an Individual Rehabilitation Plan ("IRP") that did not conform with plaintiff's treatment needs. Grievance No. 587 was received by CORC on June 27, 2022.

2.  UST-0747-22 ("Grievance No. 747"), titled "Sgt Order Property Destroy/Racial Slur," was filed on May 18, 2022. In this grievance, plaintiff alleges defendants Bullock, Niles, Sawyer, and Rowe admitted him to a suicide watch and destroyed plaintiff's property. Grievance No. 747 was received by CORC on July 15, 2022.

3. UST-0754-22 ("Grievance No. 754"), titled "Harassment/Racial Slur," was filed on May 19, 2022. In this grievance, plaintiff alleges defendants Osborne and Nelson refused to allow plaintiff to attend programming, including a loss of tablet use and corresponding good time. Grievance No. 754 was received by CORC on July 8, 2022.

**\*4**  (Bayne Decl. ¶ 17, Ex. B, Seguin Decl. ¶ 13, Ex. A).

Defendants have met their burden in establishing that no genuine issue of material fact exists concerning plaintiff's failure to exhaust his administrative remedies with respect to the claims arising out of the events described in Grievance Nos. 587, 747, and 754. As reflected in the defendants' motion papers, plaintiff filed his July 1, 2022 complaint days, if not weeks, prior to CORC's receipt of Grievance 747 and Grievance 754. (Seguin Decl. Ex. A). With respect to Grievance No. 587, CORC had only received plaintiff's appeal four days prior to plaintiff filing his complaint. (*Id.*). The Second Circuit has recently clarified that "an inmate exhausts administrative remedies when he follows the procedure in its entirety but the CORC fails to respond within the 30 days it is allocated under the regulations." *Hayes v. Dahlke*, 976 F.3d 259, 270 (2d Cir. 2020). In this case, however, plaintiff filed his federal complaint well before the expiration of CORC's 30-day deadline to respond to the respective grievances. Although the *Hayes* court made clear that a plaintiff "need not wait indefinitely after the agency fails to follow its own deadline at the final stage of appeal, he must actually wait for that deadline to expire before filing suit." *Id.* at 271. Because plaintiff failed to wait thirty days from the date on which CORC received his appeal before filing his complaint, as required under the PLRA, plaintiff failed to exhaust his administrative remedies.

In response to the moving defendants' application for summary judgment, plaintiff argues that his failure to exhaust should be excused because, among other things, Upstate C.F. "did not provide plaintiff with access to the [IGP]" (Dkt. No. 26 at CM/ ECF p. 5), various corrections officers "repeatedly opened plaintiff['s] grievances" and/or "did not provide grievance forms or envelopes" (*id.*), and that the "Deputy Superintendent of Upstate [C.F.] ... placed a protective hatch on plaintiff['s] cell, for filing grievances" (*id.* at CM/ECF p. 6). Plaintiff also maintains that he was "intimidated by Upstate [C.F.] staff for invoking the administrative process." (*Id.* at CM/ECF p. 9). Finally, plaintiff argues that his failure to exhaust his administrative remedies should be excused because the Superintendent did not render a decision on his grievances within 25 calendar days, pursuant to 7 NYCRR § 701.8. (*Id.* at 26).

Plaintiff's contentions are insufficient to defeat the moving defendants' motion for summary judgment. Many of the grievances discussed by plaintiff in his opposition are unrelated to the claims relevant to the instant motion for summary judgment. Moreover, the majority of plaintiff's allegations concerning retaliatory acts by corrections officers, and a lack of adequate supplies, do not reach the crux of the moving defendants' argument – that plaintiff filed his complaint before CORC's statutorily authorized time to respond had lapsed.

Even assuming, as plaintiff argues, that plaintiff had established the Superintendent did not render a decision on his grievances within the appropriate deadline established by the regulations, this would not excuse plaintiff's deficient exhaustion of his administrative remedies. As a general rule, it is well settled that "[w]here the IGRC and/or superintendent do not timely respond, an inmate must appeal to 'the next step,' " assuming there is a "next step" in the IGP. *Eleby v. Smith*, No. 9:15-CV-0281(TJM/ DEP), 2017 WL 986123, at \*4 (N.D.N.Y. Jan. 9, 2017) (quoting 7 N.Y.C.R.R. § 701.6(g)(2)); *see also Smith v. Kelly*, 985 F. Supp. 2d 275, 281 (N.D.N.Y. 2013) ("[A]ny failure by the IGRC or the superintendent to timely respond to a grievance ... can—and must—be appealed to the next level ... to complete the grievance process."); *Cicio v. Wenderlich*, 714 F. App'x 96, 97-98 (2d Cir. 2018) ("When a prisoner has filed a grievance, but receives no response, the regulations provide a right of appeal."). Nonetheless, it is important to note the Second Circuit's distinction that, "where an inmate does not know that an unprocessed grievance (i.e., a grievance that has not been assigned a grievance number) may technically be appealed to the next step (i.e., pursuant to § 701.6[g][2] and/or 701.8[g][2]), he need not appeal that unprocessed grievance because the regulatory scheme advising him of that right is too 'opaque.' " *Poulos v. Grimaldi*, No. 9:18-CV-1279(GTS/ML), 2022 WL 178581, at \*4 (N.D.N.Y. Jan. 19, 2022) (citing *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 126 (2d Cir. 2016)) (finding that, "even if Williams technically could have appealed his [unprocessed and thus unnumbered] grievance, we conclude that the regulatory

Burrell v. Nelson, Not Reported in Fed. Supp. (2023)

2023 WL 4373288

scheme providing for that appeal is 'so opaque' and 'so confusing that ... no reasonable prisoner can use [it pursuant to *Ross v. Blake*, 136 S. Ct. 1850 (2016)]'").

**\*5** In this case, the record reflects that, with respect to the grievances relevant to the underlying claims at issue in this motion for summary judgment, plaintiff successfully appealed to CORC, notwithstanding any purported delay in response by the Superintendent. Thus, the facts are clearly distinguishable from those in *Williams*, where that plaintiff did not even attempt to appeal an unanswered grievance. 829 F.3d 118 at 121. Accordingly, plaintiff has failed to establish that his administrative remedies were unavailable in order to defeat summary judgment, and the claims asserted against the moving defendants must be dismissed. *See Cicio v. Alvarez,* No. 19-CV-9883, 2022 WL 1003796, at \*4 (S.D.N.Y. Apr. 4, 2022) (summary judgment warranted on exhaustion grounds where plaintiff filed his federal complaint twenty-two days after CORC received the appeal and nine days before the expiration of CORC's thirty-day deadline to respond, notwithstanding CORC's eventual determination of the grievance).

Dismissal is appropriate even if, as is the case here, the plaintiff's claims have since been exhausted. *See Mateo v. Alexander*, No. 08–CV-8797, 2010 WL 431718, at \*3 (S.D.N.Y. Feb. 9, 2010); *Mendez v. Artuz*, No. 01-CV-4157, 2002 WL 313796, at \*2 (S.D.N.Y. Feb. 27, 2002); *Bowie v. Woodruff*, No. 9:18-CV-0266 (BKS/ML), 2019 WL 7606078, at \*5 (N.D.N.Y. Sept. 20, 2019), *report and recommendation adopted*, 2019 WL 5445519 (N.D.N.Y. Oct. 23, 2019) ("The fact that Bowie subsequently exhausted his administrative remedies [in the sense that CORC issued a decision on his grievance] is irrelevant as he was required to properly exhaust before he sued"); *Scott v. Uhler*, No. 16-CV-403 (TJM/CFH), 2019 WL 5197139, at \*5 (N.D.N.Y. July 31, 2019) ("Receiving a decision from CORC after filing a federal lawsuit does not satisfy the PLRA's requirement that administrative remedies be exhausted before filing suit, and any such action must be dismissed without prejudice"). Furthermore, a post-exhaustion amendment of the complaint cannot cure an exhaustion defect existing at the time the action was commenced. *Livingston v. Hoffnagle*, No. 9:17-CV-1158 (MAD/DEP), 2019 WL 409366, at \*4 (N.D.N.Y. Feb. 1, 2019) (citation omitted). "Were the rule otherwise, prisoners would have little reason to wait for the administrative process to play itself out before filing suit, which would defeat the purpose of the exhaustion requirement 'to reduce the quantity and improve the quality of prisoner suits [and to afford] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.' " *Animashaun v. Afify*, 470 F. Supp. 3d 294, 297 (W.D.N.Y. 2020) (quoting *Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (alterations in original) (other citations omitted)).

In such a case as this, dismissal is without prejudice, and the claims may be refiled. *See Brown v. Napoli*, 687 F. Supp. 2d 295, 298 (W.D.N.Y. 2009); *Chisholm v. New York City Dep't of Correction*, No. 08 Civ. 8795, 2009 WL 2033085, at \*3 (S.D.N.Y. July 13, 2009); *Doe v. Goord*, No. 04 CV 0570, 2004 WL 2829876, at \*8 (S.D.N.Y. Dec. 10, 2004) ("Dismissal of an action for failure to exhaust administrative remedies ordinarily is without prejudice."). Such a remedy is appropriate because "[f]ailure to exhaust administrative remedies is often a temporary, curable procedural flaw." *Acosta v. Corrections Officer Dawkins*, No. 04 Civ. 6678, 2005 WL 1668627, at \*4 n.6 (S.D.N.Y. July 14, 2005) (quoting *Berry v. Kerik*, 366 F.3d 85, 87 (2d Cir. 2003)).

**WHEREFORE**, based on the above, it is

**RECOMMENDED**, that the moving defendants' motion for summary judgment (Dkt. No. 22) be **GRANTED**, and that the complaint be **DISMISSED WITHOUT PREJUDICE** as against defendants **FONTAIN, JOHNSON, NELSON, BULLOCK, NILES, SAWYER, ROWE, and OZBORNE**, based on plaintiff's failure to exhaust his administrative remedies.

**\*6** Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

2023 WL 4373288

**All Citations**

Not Reported in Fed. Supp., 2023 WL 4373288

---

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

---

Burrell v. Nelson, Not Reported in Fed. Supp. (2023)

2023 WL 4365298

2023 WL 4365298
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Ako K. BURRELL, Plaintiff,

v.

T. NELSON, Johnson, Fontain, Sergeant Bullock, Rowe, Niles,
Sawyer, Lt. Spinner, Hastings, Ozborne, and Mainville, Defendants.

9:22-CV-702
|
Signed July 6, 2023

**Attorneys and Law Firms**

AKO K. BURRELL, Plaintiff, Pro Se, 17-B-2994, Mid-State Correctional Facility, P.O. Box 2500, Marcy, NY 13403.

HON. LETITIA JAMES, New York State Attorney General, OLIVIA R. COX, ESQ., Ass't Attorney General, Attorneys for Defendants, The Capitol, Albany, NY 12224.

<u>**ORDER ON REPORT & RECOMMENDATION**</u>

DAVID N. HURD, United States District Judge

 **\*1**  On July 1, 2022, *pro se* plaintiff Ako K. Burrell ("plaintiff"), an inmate in the custody of the New York State Department of Corrections and Community Supervision, filed this 42 U.S.C. § 1983 action alleging that defendants violated his civil rights while he was confined at Upstate Correctional Facility in Malone, New York. Dkt. No. 1. Along with his complaint, plaintiff also sought leave to proceed *in forma pauperis* ("IFP Application"). Dkt. Nos. 3, 4.

On February 9, 2023, this Court granted plaintiff's IFP Application, dismissed certain claims and certain defendants, and sent the parties to discovery on plaintiff's (1) Eighth Amendment excessive force and failure-to-intervene claims against Hastings, Spinner, and Mainville; and (2) First Amendment retaliation claims against Fontain, Johnson, Nelson, Bullock, Niles, Sawyer, Rowe, Ozborne, Hastings, Spinner, and Mainville. Dkt. No. 15.

On April 25, 2023, a subset of these defendants [1]—in particular, Fontain, Johnson, Nelson, Bullock, Niles, Sawyer, Rowe, and Ozborne—moved for summary judgment under Federal Rule of Civil Procedure ("Rule") 56 based on plaintiff's alleged failure to exhaust his administrative remedies. Dkt. No. 22. The motion was fully briefed. Dkt. Nos. 26, 27.

[1]    Defendants did not seek summary judgment on plaintiff's claims against defendants Hastings, Spinner, and Mainville.

On June 13, 2023, U.S. Magistrate Judge Andrew T. Baxter advised by Report & Recommendation ("R&R") that the moving defendants' motion for summary judgment be granted and plaintiff's complaint be dismissed without prejudice against defendants Fontain, Johnson, Nelson, Bullock, Niles, Sawyer, Rowe, and Ozborne. Dkt. No.

Plaintiff has not filed objections, and the time period in which to do so has expired. *See* Dkt. No. 28. Upon review for clear error, the R&R is accepted and will be adopted in all respects. *See* FED. R. CIV. P. 72(b).

Therefore, it is

Burrell v. Nelson, Not Reported in Fed. Supp. (2023)
2023 WL 4365298

ORDERED that

1. The Report & Recommendation is ACCEPTED;

2. Defendants' motion for summary judgment is GRANTED;

3. Plaintiff's complaint is DISMISSED without prejudice against defendants Fontain, Johnson, Nelson, Bullock, Niles, Sawyer, Rowe, and Ozborne based on a failure to exhaust administrative remedies.

IT IS SO ORDERED.


**All Citations**

Not Reported in Fed. Supp., 2023 WL 4365298

---

**End of Document**                                        © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Bowie v. Woodruff, Not Reported in Fed. Supp. (2019)

2019 WL 7606078

2019 WL 7606078
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Edmund BOWIE, Plaintiff,

v.

Sergeant Gary WOODRUFF and Correctional Officer Kyle Brooks, Defendants.

9:18-CV-0266 (BKS/ML)
|
Signed 09/20/2019

**Attorneys and Law Firms**

EDMUND BOWIE, 14-B-0838, Plaintiff, pro se, Auburn Correctional Facility, P.O. Box 618, Auburn, NY 13021.

HON. LETITIA JAMES, Attorney General for the State of New York, MATTHEW P. REED, ESQ., Assistant Attorney General, Attorney for Defendants, The Capitol, Albany, New York 12224-0341.

## REPORT-RECOMMENDATION AND ORDER [1]

[1]    This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

MIROSLAV LOVRIC, United States Magistrate Judge

 **\*1**  Plaintiff *pro se* Edmund Bowie ("Bowie" or "Plaintiff"), an inmate who was, at all relevant times, in the custody of the New York Department of Corrections and Community Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983 against Defendants Sergeant Gary Woodruff ("Sgt. Woodruff") and Correctional Officer Kyle Brooks ("C.O. Brooks") for violations of his rights under the Eighth Amendment. Dkt. No. 1 ("Compl."). Presently before the Court is Defendants' motion for summary judgment and dismissal of Bowie's complaint pursuant to Rule 56(a) of the Federal Rules of Civil Procedure. Dkt. No. 29. Bowie did not oppose the motion. For the following reasons, it is recommended that Defendants' motion for summary judgment be granted.

## I. BACKGROUND

### A. Plaintiff's Failure to Respond

Before discussing the background of this case, the Court addresses Bowie's failure to respond or oppose the motion. The Second Circuit requires that a pro se litigant defending against a summary judgment motion be notified as to the nature and consequences of summary judgment. *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 620–21 (2d Cir. 1999); *see also* Local Rule 56.2 (Notice to Pro Se Litigants of the Consequences of Failing to Respond to a Summary Judgment Motion). Here, Bowie was notified of the consequences of failing to respond to a summary judgment motion by Defendants and the Court. Dkt. No. 29 at 3; Dkt. No. 30. Given this notice, Bowie was adequately apprised of the pendency of Defendants' motion and the consequences of failing to respond. On May 21, 2019, Bowie filed a Notice of Change of Address and requested an extension of time to file his response to

Case 9:22-cv-01263-GTS-TWD    Document 67    Filed 02/03/25    Page 57 of 104

Bowie v. Woodruff, Not Reported in Fed. Supp. (2019)

2019 WL 7606078

the motion. Dkt. Nos. 31 and 32. The Court granted the extension and directed Bowie to provide a response on or before June 21, 2019. Dkt. No. 33. Despite the extension, Bowie has not submitted opposition to Defendants' motion for summary judgment.

"The fact that there has been no response to a summary judgment motion does not ... mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). The Court has broad discretion to decide whether to overlook the parties' failures and perform an independent review of the record. *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001); *see also Jackson v. Fed. Exp.*, 766 F.3d 189, 194 (2d Cir. 2014) (noting that "the court may rely on other evidence in the record even if uncited" in determining the undisputed material facts). If the district court chooses to conduct such an independent review of the record, any verified complaint filed by the plaintiff should be treated as an affidavit in opposing a motion for summary judgment. *Patterson v. County of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004).

Here, because the Complaint is verified, [2] the Court will accept the pleading as an affidavit to the extent that the statements are based on Bowie's personal knowledge or are supported by the record. *See Berry v. Marchinkowski*, 137 F.Supp.3d 495, 530 (S.D.N.Y. 2005) (collecting cases to support the proposition that a court may consider unsworn assertions on a motion for summary judgment where they are based on the plaintiff's personal knowledge and in light of special solicitude).

[2]    The Complaint was properly verified by declaration under 28 U.S.C. § 1746. Compl. at 5; *LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham*, 185 F.3d 61, 65-66 (2d Cir. 1999) (holding that use of the language "under penalty of perjury" substantially complies with 28 U.S.C. § 1746).

*2    Due to Bowie's pro se status, the Court has opted to review the entire summary judgment record to ascertain the undisputed material facts. Consequently, the facts set forth in Defendants' Rule 7.1 Statement of Material Facts [3] are accepted as true as to those facts that are not disputed by the facts set forth in the Complaint. N.D.N.Y. L.R. 7.1(a)(3) ("The Court shall deem admitted any properly supported facts set forth in the Statement of Facts that the opposing party does not specifically controvert.") (emphasis omitted).

[3]    Local Rule 7.1(a)(3) states:

Summary Judgment Motions

Any motion for summary judgment shall contain a Statement of Material Facts. The Statement of Material Facts shall set forth, in numbered paragraphs, each material fact about which the moving party contends there exists no genuine issue. Each fact listed shall set forth a specific citation to the record where the fact is established. The record for purposes of the Statement of Material Facts includes the pleadings, depositions, answers to interrogatories, admissions and affidavits. It does not, however, include attorneys' affidavits.

The opposing party shall file a response to the Statement of Material Facts. The non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises. The Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert. The non-movant's response may also set forth any additional material facts that the non-movant contends are in dispute. Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party.

Local Rule 7.1(a)(3).

## B. Facts [4]

[4]    Defendants annexed exhibits to the motion. Dkt. No. 29-3. Plaintiff does not object or challenge the authenticity of the documents. Therefore, the Court will consider the exhibits in the context of the within motion. *See U.S. v. Painting known as Hannibal*, No. 07-CV-1511, 2010 WL 2102484, at *1, n.2 (S.D.N.Y. May 18, 2010) (citing *Daniel v. Unum Provident Corp.*, 261 F. App'x 316, 319 (2d Cir. 2008) ("[A] party is not required to authenticate documents on a

2019 WL 7606078

summary judgment motion where, as here, authenticity is not challenged by the other party")). In light of the procedural posture of the case, the following recitation is derived from the record now before the Court, with all inferences drawn and ambiguities resolved in non-moving party's favor. *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003).

At the time of the incidents described in the Complaint, Bowie was an inmate in the custody of DOCCS and confined at Great Meadow Correctional Facility ("Great Meadow C.F."). *See generally*, Dkt. No. 1.

Bowie claims that he was involved in a physical altercation with Sgt. Woodruff and C.O. Brooks on June 10, 2017. Dkt. No. 1 at 2-3. Bowie alleges that Sgt. Woodruff and C.O. Brooks used excessive force and failed to intervene to protect him from the use of force, in violation of his Eighth Amendment rights. *Id.* at 4.

On June 23, 2017, Bowie filed an Inmate Grievance Complaint (Grievance No. 62268-17) related to the June 10, 2017 incident. Dkt. No. 29-3 at 3, 6. Bowie alleged:

> I was involved in a altercation in the big yard on (6-10-17) at which time I was handcuffed and taken to the facility infirmary. While in the infirmary check up room, Sergeant John Doe asked me questions which I answered. He said I was not trueful [sic] and proceed[ed] to slap me in the back of the head. He asked me some more questions[,] again I answered. He once again told me I was a liar [and] told Officer John Doe to hold me against the wall while another officer punched me in the ribs 4 or 5 times breaking 2 of my ribs which resulted in me going to Albany Med.

**\*3** Dkt. No. 29-3 at 6.

On July 10, 2017, the Grievance Clerk received the grievance. Dkt. No. 29-3 at 3. Due to the nature of the grievance, the Inmate Grievance Resolution Committee ("IGRC") forwarded the grievance directly to the facility Superintendent for review. *Id.*

On August 9, 2017, the Superintendent issued a decision stating that the grievance was investigated and denied. Dkt. No. 29-3 at 7. On August 21, 2017, Bowie signed the Appeal Statement indicating that he wished to appeal the Superintendent's decision to the Central Office Review Committee ("CORC"). *Id.* On August 23, 2017, the Grievance Clerk received and signed the Appeal Statement. *Id.* On August 29, 2017, CORC received the appeal. *Id.* at 8.

On February 26, 2018, Bowie signed his civil rights Complaint and commenced the within action. Dkt. No. 1 at 5.

On October 17, 2018, CORC issued a decision affirming the Superintendent's determination. Dkt. No. 29-3 at 9.

### C. Procedural History

On March 3, 2018, the Court received the Complaint in the within action. Dkt. No. 1. Upon review of the Complaint, the Court directed Defendants to respond to the Eighth Amendment excessive force and failure-to-intervene claims. Dkt. No. 7. On June 25, 2018, Defendants filed an Answer to the Complaint. [5] Dkt. No. 13. On April 26, 2019, Defendants filed the within motion pursuant to Fed. R. Civ. P. 56 seeking judgment as a matter of law with respect to Bowie's claims. Dkt. No. 29.

[5] In the Answer, Defendants pleaded, *inter alia*, the affirmative defense that Bowie failed to exhaust his administrative remedies. Dkt. No. 13 at ¶ 15.

2019 WL 7606078

## II. LEGAL STANDARD

A motion for summary judgment may be granted if there is no genuine issue as to any material fact, it was supported by affidavits or other suitable evidence, and the moving party is entitled to judgment as a matter of law. The moving party bears the burden of demonstrating the absence of disputed material facts by providing the court with portions of pleadings, depositions, and affidavits which support the motion. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Facts are material if they may affect the outcome of the case as determined by substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 317, 248 (1986).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. Fed. R. Civ. P. 56; *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard ... they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

**\*4** All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party. *Skubel v. Fuoroli*, 113 F.3d 330, 334 (2d Cir. 1997). Furthermore, where, as here, a party seeks judgment against a *pro se* litigant, a court must afford the non-movant special solicitude. *See Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006). As the Second Circuit has stated,

[t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," ... that a pro se litigant's submissions must be construed "liberally," ... and that such submissions must be read to raise the strongest arguments that they "suggest," .... At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, ... or arguments that the submissions themselves do not "suggest," ... that we should not "excuse frivolous or vexatious filings by pro se litigants," ... and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law."

*Id.* (citations and footnote omitted); *see also Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191–92 (2d Cir. 2008). Nonetheless, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III. DISCUSSION [6]

[6]    All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to Plaintiff.

Defendants move for summary judgment arguing that Bowie failed to exhaust his administrative remedies through available grievance procedures prior to the commencement of this action. *See generally*, Dkt. No. 29.

### A. Exhaustion

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust any administrative remedies available to him or her before bringing an action for claims arising out of his or her incarceration. *Porter v. Nussle*, 534 U.S. 516, 524 (2002); *see also*

Case 9:22-cv-01263-GTS-TWD    Document 67    Filed 02/03/25    Page 60 of 104

Bowie v. Woodruff, Not Reported in Fed. Supp. (2019)

2019 WL 7606078

*Woodford v. Ngo*, 548 U.S. 81, 82 (2006). The exhaustion requirement applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532. Further, the exhaustion requirement applies even where the prisoner seeks relief not available in the administrative grievance process, such as monetary damages. *Id.* at 524. To exhaust administrative remedies, the inmate must complete the full administrative review process set forth in the rules applicable to the correctional facility in which he or she is incarcerated. *Jones v. Bock*, 549 U.S. 199, 218 (2007) (internal citation omitted).

Here, there is no dispute that at all relevant times, DOCCS had in place a three-step inmate grievance program ("IGP"). N.Y. Comp. Codes R. & Regs. title 7, § 701.5 (2015). First, the inmate must file a complaint with IGP clerk within twenty-one days of the alleged action. *Id.* at § 701.5(a)(1). An IGP representative has sixteen calendar days to informally resolve the issue. *Id.* at § 701.5(b)(1). If no informal resolution occurs, the full IGP committee must hold a hearing within sixteen days of receipt of the grievance and must issue a written decision within two working days after the conclusion of the hearing. *Id.* §§ 701.5(b)(2)(i)-(ii). If the determination is unfavorable to the inmate, the inmate may appeal the IGRC's determination to the facility superintendent within seven calendar days of receipt of the determination. *Id.* § 701.5(c)(1). If the superintendent's determination is unfavorable to the inmate, the inmate may appeal to CORC within seven days after receipt of the superintendent's determination. *Id.* §§ 701.5(d)(1)(i)-(ii). If a grievant does not receive a copy of the written notice of receipt within 45 days of filing an appeal, the grievant should contact the IGP supervisor in writing to confirm that the appeal was filed and transmitted to CORC. *Id.* at § 701.5(d)(3)(i). CORC must "review each appeal, render a decision on the grievance, and transmit its decision to the facility, with reasons stated, for the [inmate], the grievance clerk, the superintendent, and any direct parties within thirty (30) calendar days from the time the appeal was received." *Id.* § 701.5(d)(3)(ii). Only upon exhaustion of all three levels of review may a prisoner seek relief in federal court. *Bridgeforth v. Bartlett*, 686 F.Supp.2d 238, 239 (W.D.N.Y. 2010) (citing, *inter alia, Porter*, 534 U.S. at 524); *see also Neal v. Goord*, 267 F.3d 116, 121 (2d Cir. 2001), *overruled on other grounds by Porter,* 534 U.S. 516.

 *5  Where the grievance involves allegations of employee excessive force, as alleged by Bowie, there is an expedited administrative process. *See* N.Y.C.R.R. title 7, § 701.8; *see Torres v. Carry*, 691 F.Supp.2d 366, 369–70 (S.D.N.Y. 2009). Complaints and grievances of this nature are forwarded directly to the superintendent of the facility. *Bell v. Napoli*, No. 9:17-CV-850 (ATB), 2018 WL 6506072, at *2 (N.D.N.Y. Dec. 11, 2018). In such cases the superintendent is required to order an investigation and render a decision within twenty-five (25) days. *See* N.Y.C.R.R., title 7, § 701(a)-(f). If the superintendent fails to respond within the required twenty-five (25) day time limit the inmate may appeal his grievance to the CORC. Disagreement with the superintendent's decision in the expedited review process also requires an appeal to the CORC. *Id.* § 701.8-(g)-(h); *see also Espinal v. Goord,* 588 F.3d 119,125 (2d Cir. 2009) (explaining IGP and the expedited procedure for harassment claims and its appeal mechanism through the CORC). The Second Circuit has long recognized this procedure as an "available remedy" for purposes of the PLRA. *See Hall v. County of Saratoga*, No. 10–CV–1120 (NAM/CFH), 2013 WL 838284, at *1–2 (N.D.N.Y. Mar. 6, 2013).

Defendants bear the burden of establishing that a prisoner failed to satisfy the exhaustion requirement. *See Jones*, 549 U.S. at 216.

### 1. Did Plaintiff Exhaust his Administrative Remedies?

The record is clear that Bowie filed this action on February 26, 2018, and, at that time, CORC had yet to issue a decision on his grievance. *See* Dkt. No. 1; Dkt. No. 29-3 at 9. DOCCS IGP Assistant Director Rachael Seguin ("Seguin") declared that she is the custodian of records maintained by CORC. Dkt. No. 29-3 at 1. Based upon Seguin's review of DOCCS' records, Bowie filed a grievance on June 23, 2017 claiming he was assaulted at Great Meadow on June 10, 2017. *Id.* at 3. Bowie's grievance was received by the IGRC Clerk on July 17, 2017 and denied by the Superintendent on August 9, 2017. *Id.* at 3-4. Seguin also reviewed CORC records for appeals received from Plaintiff relating to his allegations in this action. *Id.* at 3. Based upon Sequin's review, CORC received Bowie's appeal of the Superintendent's determination on August 29, 2017 and decided the appeal on October 17, 2018 – approximately eight months <u>after</u> Bowie commenced this action. Dkt. No. 29-3 at 4. A copy of

2019 WL 7606078

Bowie's grievance, the Superintendent's response, documentation of CORC's receipt of Bowie's appeal, and CORC's response are attached to Seguin's Declaration as Exhibit A. *Id.* at 6-9.

Thus, Bowie did not fully exhaust his administrative remedies prior to filing this lawsuit as CORC's decision was outstanding. *White v. Drake*, No. 10-CV-1034 (GTS/DRH), 2011 WL 4478988, at *3 (N.D.N.Y. Aug. 11, 2011) ("Included within the IGP's exhaustion requirement is the prerequisite that the inmate file an appeal with CORC and receive a response from CORC prior to filing a federal lawsuit.") (citation omitted). The fact that Bowie subsequently exhausted his administrative remedies is irrelevant as he was required to properly exhaust before he sued. *See Burgos v. Craig*, 307 Fed. App'x 469, 471 (2d Cir. 2008).

### 2. Availability of Administrative Remedies

Having determined that Bowie failed to exhaust his administrative remedies, the Court examines whether he should be excused from the exhaustion requirement because administrative remedies were unavailable.

A prisoner's failure to exhaust administrative remedies may be excused if remedies were unavailable to the inmate. *Ross*, 136 S.Ct. at 1858 ("An inmate [...] must exhaust available remedies, but need not exhaust unavailable ones."). There are three potential circumstances where administrative remedies may be unavailable: (1) where the administrative procedure technically exists but operates as a "dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use"; and (3) where prison administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Williams v. Priatno*, 829 F.3d 118, 123-24 (2d Cir. 2016) (quoting *Ross*, 136 S.Ct. at 1858-1861).

**\*6** Courts within this Circuit are split as to whether a delay by CORC constitutes unavailability that would excuse a plaintiff's failure to exhaust his administrative remedies. *See Hayes v. Dahkle*, No. 9:16-CV-1368 (TJM/CFH), 2018 WL 7356343, at *9 (N.D.N.Y. Dec. 11, 2018) (collecting cases); *but cf. Henderson v. Annucci*, No. 14-CV-445A, 2016 WL 3039687, at *9 (W.D.N.Y. March 14, 2016) (excusing the prisoner's failure to exhaust because, after two years, CORC's decision was still outstanding); *see also High v. Switz*, No. 9:17-CV-1067 (LEK/DJS), 2018 WL 3736794, at *5 (N.D.N.Y. July 9, 2018), *report and recommendation adopted sub nom.*, 2018 WL 3730175 (N.D.N.Y. Aug. 6, 2018) (noting that the Second Circuit has not decided the precise issue set forth herein) (citing *Gizewski v. New York State Dep't of Corr. & Cmty. Supervision*, 692 Fed. App'x 668 (2d Cir. 2017)). In some instances, Courts in this District have found that a delay by CORC does not excuse a prisoner's failure to exhaust. *See Feliz v. Johnson*, No. 9:17-CV-1294 (DNH/ATB), 2019 WL 3491232, at *1 (N.D.N.Y. Aug. 1, 2019) (citing, *inter alia, Casey v. Brockley*, No. 9:13-CV-01271, 2015 WL 8008728, at *6 (N.D.N.Y. Nov. 9, 2015), *report-recommendation and order adopted by*, 2015 WL 7864161 (N.D.N.Y. Dec. 3, 2015) (finding five month delay by CORC in rendering decision on appeal did not excuse the plaintiff from exhaustion requirement)); *see also Staples v. Patane*, No. 9:17-CV-0703 (TJM/TWD), 2018 WL 7361009, at *9 (N.D.N.Y. Dec. 7, 2018) (concluding that more than ten month delay was insufficient for finding unavailability).

In this case, CORC's records reveal that Bowie's appeal was received on August 29, 2017. Dkt. No. 29-3 at 8. "[P]ursuant to N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5(d)(3)(i), '[i]f a grievant does not receive a copy of the written notice of receipt within 45 days of filing an appeal [to CORC], the grievant should contact the IGP supervisor in writing to confirm that the appeal was filed and transmitted to CORC.' " *Fox v. Lee*, No. 9:15-CV-0390 (TJM/CFH), 2018 WL 8576600, at *7 (N.D.N.Y. Dec. 18, 2018) (citing N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5(d)(3)(i)). The record herein lacks evidence that Bowie received confirmation or notice of the receipt of his appeal.

In *High*, the plaintiff filed an appeal with CORC on February 6, 2017. *High*, 2018 WL 3736794, at *3. "[A]fter not hearing from CORC, [the] p]laintiff sent CORC a letter asserting that CORC had exceeded the timeline and that he had therefore exhausted his administrative remedies, and would be filing a claim in Court." *Id.* On September 12, 2017, the plaintiff filed his federal complaint. *Id.* In February 2018, CORC issued a decision, one year after the plaintiff filed his appeal to CORC. *High*, 2018 WL

2019 WL 7606078

3736794, at *3. The Court noted that "[t]here is no instruction [in the IGP] on what a grievant is to do if he or she has appealed to CORC, the final step, and has not received a response." *High*, 2018 WL 3736794, at *5. In that case, the Court noted that, "under the hopefully unique facts of this case," the failure to exhaust was excused. *Id.* at *5.

Here, CORC should have responded by September 29, 2017. *See* 7 NYCRR §§ 701.5(d)(3)(ii), 701.8(i). A decision however, was not issued until October 17, 2018, more than one year beyond the thirty days required by the IGP. While the Court is troubled by the excessive delay and lack of explanation for said delay by counsel or Seguin, the facts herein are distinguishable from *High* because Bowie has not offered any evidence suggesting that he received written notice that the appeal was filed or that he attempted to contact CORC or the IGRC at Great Meadow C.F. regarding the status of his appeal before commencing this action. Indeed, the Complaint is devoid of any reference to the grievance, the IGP, or Bowie's attempts to exhaust. *See generally*, Dkt. No. 1. Because the facts of this case are similar to those presented in *Staples* and *Fox*, on the record before the Court, the undersigned concludes that CORC's delay in rendering a decision did not excuse Bowie from the exhaustion requirement. *Staples*, 2018 WL 7361009 at *9; *see also Hayes*, 2018 WL 7356343, at *10 ("[...] there is no indication in the record that plaintiff wrote to CORC regarding the status of his appeal and CORC further neglected to respond."); *Fox*, 2018 WL 8576600, at *7 (granting summary judgment because the plaintiff did not proffer evidence that he wrote to the IGRC or CORC inquiring as to the status of his appeals and "never contacted Eastern's [IGP supervisor] in writing ... to confirm that any of his appeals were filed and transmitted to CORC.")*; see also Ulmer v. Bedore*, No. 9:15-CV-00497 (DNH/TWD), 2018 WL 7291499, at *7 (N.D.N.Y. Nov. 13, 2018) (finding no excuse for failure to fully exhaust without evidence in the record that Plaintiff contacted the IGRC or CORC inquiring as to the status of his appeal before filing his lawsuit); *see also Berkley v. Ware*, No. 9:16-CV-1326 (LEK/CFH), 2018 WL 3736791, at *6 (N.D.N.Y. July 6, 2018) ("Plaintiff has not proffered evidence that he wrote to the Franklin IGRC or CORC inquiring as to the status of his appeal.").

 **\*7** Accordingly, it is recommended that Defendants' motion for summary judgment be granted based on Bowie's failure to exhaust his claims. Because "[f]ailure to exhaust administrative remedies is often a temporary, curable procedural flaw," and "[i]f the time permitted for pursuing administrative remedies has not expired, a prisoner ... can cure the defect by exhausting [the available remedies] and reinstating his suit." *Berry v. Kerik*, 366 F.3d 85, 87 (2d Cir. 2003) (amended 2004) (quoting *Snider v. Melindez*, 199 F.3d 108, 111–12 (2d Cir. 1999)). In this case, the alleged incidents in the underlying action occurred in 2017 and thus, are still within the applicable statute of limitations.


## IV. CONCLUSION

**WHEREFORE**, based on the findings set forth above, it is hereby:

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 29) be **GRANTED without prejudice**; and it is further

**RECOMMENDED** that the Complaint be **DISMISSED without prejudice**; and it is further

**ORDERED** that copies of this Report-Recommendation and Order be served on the parties in accordance with the Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) [7] days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.

7    If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(c).

**All Citations**

Not Reported in Fed. Supp., 2019 WL 7606078

---

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Bowie v. Woodruff, Not Reported in Fed. Supp. (2019)

Case 9:22-cv-01263-GTS-TWD    Document 67    Filed 02/03/25    Page 64 of 104

2019 WL 5445519

2019 WL 5445519
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Edmund BOWIE, Plaintiff,

v.

Sergeant Gary WOODRUFF and Correctional Officer Kyle Brooks, Defendants.

9:18-cv-00266 (BKS/ML)
|
Signed 10/23/2019

**Attorneys and Law Firms**

Plaintiff pro se: Edmund Bowie, 14-B-0838, Auburn Correctional Facility, P.O. Box 618, Auburn, New York 13021.

For Defendants: Letitia James, Attorney General for the State of New York, Richard C. White, The Capitol, Albany, New York 12224.

## MEMORANDUM-DECISION AND ORDER

Hon. Brenda K. Sannes, United States District Judge:

### I. INTRODUCTION

**\*1** Plaintiff Edmund Bowie, a New York State inmate proceeding pro se, brought this action under 42 U.S.C. § 1983, alleging that Defendants subjected him to excessive force in violation of the Eighth Amendment. (Dkt. No. 1, at 2–3). On April 26, 2019, Defendants moved for summary judgment on the ground that Plaintiff failed to exhaust his administrative remedies. (Dkt. No. 29). Plaintiff did not respond to the motion, although he requested and was granted an extension of time to do so. (Dkt. No. 33). This matter was assigned to United States Magistrate Judge Miroslav Lovric who, on September 20, 2019, issued a Report-Recommendation and Order recommending that Defendants' motion for summary judgment be granted and that Plaintiff's complaint be dismissed without prejudice. (Dkt. No. 35). Magistrate Judge Lovric advised the parties that under 28 U.S.C. § 636(b)(1), they had fourteen days within which to file written objections to the report, and that the failure to object to the report within fourteen days would preclude appellate review. (Dkt. No. 35, at 15–16). No objections were filed.

For the following reasons, Magistrate Judge Lovric's Report-Recommendation is adopted.

### II. STANDARD OF REVIEW

As no objections to the Report-Recommendation have been filed and the time for filing objections has expired, the Court reviews the Report-Recommendation for clear error. *See Petersen v. Astrue*, 2 F. Supp. 3d 223, 228–29 (N.D.N.Y. 2012); Fed. R. Civ. P. 72(b) advisory committee's note to 1983 amendment.

### III. DISCUSSION

Magistrate Judge Lovric recommended granting Defendants' motion for summary judgment because Plaintiff commenced this action before receiving a decision from the Central Office Review Committee ("CORC") on his appeal. Plaintiff sent his appeal to the CORC on August 21, 2017. (Dkt. No. 29-3, at 7). The CORC received the appeal on August 29, 2017. (*Id.* at 8). The CORC did not, however, decide the appeal within the applicable thirty-day time period. *See* 7 N.Y.C.R.R. § 701.5(d)(3)(ii). Plaintiff commenced this action on March 1, 2018, almost six months after the CORC had received his appeal. (Dkt. No. 1).

Case 9:22-cv-01263-GTS-TWD    Document 67    Filed 02/03/25    Page 65 of 104

Bowie v. Woodruff, Not Reported in Fed. Supp. (2019)

2019 WL 5445519

The CORC denied Plaintiff's appeal on October 17, 2018, almost 14 months after the CORC had received it. (Dkt. No. 29-3, at 9). Magistrate Judge Lovric determined that the CORC's delay in rendering a decision did not excuse Plaintiff from the exhaustion requirement. (Dkt. No. 35, at 14) (citing *Staples v. Patane*, No. 17-cv-0703, 2018 WL 7361009, 2018 U.S. Dist. LEXIS 207971 (N.D.N.Y. Dec. 7, 2018), *report and recommendation adopted*, No. 17-cv-0703, 2019 WL 757937, 2019 U.S. Dist. LEXIS 26563 (N.D.N.Y. Feb. 20, 2019); *Fox v. Lee*, No. 15-cv-0390, 2018 WL 8576600, 2018 U.S. Dist. LEXIS 213705 (N.D.N.Y. Dec. 18, 2018), *report and recommendation adopted*, No. 15-cv-0390, 2019 WL 1323845, 2019 U.S. Dist. LEXIS 48967 (N.D.N.Y. Mar. 25, 2019)).

There is a split of authority in this Circuit as to whether, under the Supreme Court's decision in *Ross v. Blake*, ––– U.S. ––––, 136 S. Ct. 1850, 195 L.Ed.2d 117 (2016) and the Second Circuit's decision *Williams v. Priatano*, 829 F.3d 118 (2d Cir. 2016), this kind of delay by the CORC in issuing a timely decision to a prisoner's grievance renders exhaustion unavailable. *Compare, e.g., Sherwood v. Senecal*, No. 17-cv-00899, 2019 WL 4564881, at *2–4, 2019 U.S. Dist. LEXIS 160295, at *4–8 (N.D.N.Y. Sept. 20, 2019); *Mayandeunas v. Bigelow*, No. 18-cv-1161, 2019 WL 3955484, at *4, 2019 U.S. Dist. LEXIS 142452, at *10 (N.D.N.Y. Aug. 22, 2019) (Suddaby, C.J.); *Lovell v. McAuliffe*, No. 18-cv-0685, 2019 WL 4143361, 2019 U.S. Dist. LEXIS 74402 (N.D.N.Y. May 1, 2019), *report and recommendation adopted*, No. 18-cv-0685, 2019 WL 4142593, 2019 U.S. Dist. LEXIS 147890 (N.D.N.Y. Aug. 30, 2019); *Bell v. Napoli*, No. 17-cv-850, 2018 WL 6506072, 2018 U.S. Dist. LEXIS 208503 (N.D.N.Y. Dec. 11, 2018); *Yates v. Smith*, No. 17-cv-1227, 2018 WL 4635715, 2018 U.S. Dist. LEXIS 116276 (N.D.N.Y. July 11, 2018), *report and recommendation adopted*, No. 17-cv-1227, 2018 WL 3727357, 2018 U.S. Dist. LEXIS 131450 (N.D.N.Y. Aug. 6, 2018); *High v. Switz*, No. 17-cv-1067, 2018 WL 3736794, 2018 U.S. Dist. LEXIS 114403 (N.D.N.Y. July 9, 2018), *report and recommendation adopted sub nom. High v. PA Switz*, No. 17-cv-1067, 2018 WL 3730175, 2018 U.S. Dist. LEXIS 131446 (N.D.N.Y. Aug. 6, 2018) *with Staples*, 2018 WL 7361009, 2018 U.S. Dist. LEXIS 207971; *Berkley v. Ware*, No. 16-cv-1326, 2018 WL 3736791, 2018 U.S. Dist. LEXIS 113521 (N.D.N.Y. July 6, 2018), *report and recommendation adopted*, No. 16-cv-1326, 2018 WL 3730173, 2018 U.S. Dist. LEXIS 131445 (N.D.N.Y. Aug. 6, 2018). Although this Court has concluded that this kind of delay by the CORC in responding to a prisoner's appeal renders administrative remedies unavailable under *Ross*, considering the intra-Circuit split on this issue, the Court cannot say that the magistrate judge's determination here rises to the level of clear error. *See Warr v. Liberatore*, No. 13-cv-6508, 2018 WL 3237733, at *5, 2018 U.S. Dist. LEXIS 111126, *13–14 (W.D.N.Y. July 3, 2018) (explaining, in the context of a motion for reconsideration, that "considering the split in authority ... defendants have not demonstrated that [district court's decision was] clearly erroneous").

**\*2** Finally, the Court notes that, because the CORC has now rendered a decision on Plaintiff's grievance, (Dkt No. 29-3, at 9), his administrative remedies are now exhausted. Plaintiff is therefore free to reinstitute his lawsuit, which is dismissed without prejudice. (Dkt. No. 35, at 15). *See Berry v. Kerik*, 366 F.3d 85, 87 (2d Cir. 2004) (noting that where a plaintiff fails to exhaust administrative remedies, and the defect can be cured, dismissal without prejudice is proper) [1]

---

[1]    The Court notes that Plaintiff has ample time to do so because the statute of limitations on Plaintiff's claim tolled for the duration of the mandatory administrative exhaustion process—that is, his limitations period tolled from the time Plaintiff initiated his grievance process on June 23, 2017 until the CORC issued its final decision on October 17, 2018. (Dkt. No 29-3, at 3, 9). *Gonzalez v. Hasty*, 651 F.3d 318, 323–24 (2d Cir. 2011) ("[W]e join our sister circuits and hold 'that the applicable statute of limitations must be tolled while a prisoner completes the mandatory exhaustion process.' " (quoting *Brown v. Valoff*, 422 F.3d 926, 943 (9th Cir. 2005))).

IV. CONCLUSION

For these reasons, it is

ORDERED that the Report-Recommendation (Dkt. No. 35) is **ADOPTED**; and it is further

ORDERED that Defendants' motion for summary judgment (Dkt. No. 29) is **GRANTED**; and it is further

ORDERED that the complaint is **DISMISSED WITHOUT PREJUDICE**; and it is further

ORDERED that the Clerk is directed to close this case; and it is further

ORDERED that the Clerk serve a copy of this Order upon the parties in accordance with the Local Rules.

IT IS SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2019 WL 5445519

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:22-cv-01263-GTS-TWD     Document 67     Filed 02/03/25     Page 67 of 104

Gambino v. Carey, Not Reported in Fed. Supp. (2021)

2021 WL 1406742

2021 WL 1406742
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Anthony GAMBINO, Plaintiff,

v.

Correction Officer CAREY and New York State Department of Corrections and Community Supervision, Defendants.

9:20-CV-162 (DNH/DJS)
|
Signed 03/26/2021

**Attorneys and Law Firms**

ANTHONY GAMBINO, Plaintiff, Pro Se, 19-A-3031, Franklin Correctional Facility, P.O. Box 10, Malone, New York 12953.

HON. LETITIA JAMES, Attorney General of the State of New York, OF COUNSEL: LAUREN R. EVERSLEY, ESQ., Assistant Attorney General, Attorney for Defendants, The Capitol, Albany, New York 12224.

## REPORT-RECOMMENDATION and ORDER

DANIEL J. STEWART, United States Magistrate Judge

**\*1** Plaintiff, an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), brings this *pro se* action pursuant to 42 U.S.C. § 1983, alleging the violation of his constitutional rights. Dkt. No. 1, Compl. Presently pending is Defendants' Motion for Summary Judgment in lieu of an answer, seeking dismissal of Plaintiff's claims based on his failure to exhaust available administrative remedies. Dkt. No. 21. To date, Plaintiff has not filed a response to the Motion. For the reasons which follow, the Court recommends that the Motion for Summary Judgment be granted.

## I. BACKGROUND

The Complaint alleges that Plaintiff's rights were violated on November 22, 2019, when he was injured while attempting to climb to the top bunk at the direction of Defendant Correction Officer Carey. Compl. at pp. 3-4. Plaintiff alleges that on that date, he was moved to a new cell and ordered by Defendant Carey to climb to the top bunk, despite having been previously given a bottom-bunk pass due to a prior knee surgery. *Id.* Plaintiff alleges that after he was unable to locate his pass, Defendant Carey threw Plaintiff on the wall and "continued to yell" at him. *Id.* Plaintiff then attempted to comply with Defendant Carey's orders by climbing to the top bunk, when he fell and injured his knee. *Id.* at p. 4.

After initial review of the Complaint under 28 U.S.C. §§ 1915(e) & 1915(A), District Court Judge David N. Hurd permitted the following claims to proceed: (1) Eighth Amendment excessive force and conditions of confinement claims asserted against Defendant Carey; and (2) Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act claims asserted against Defendant DOCCS. Dkt. No. 13 at pp. 8-10.

In support of the Motion for Summary Judgment, Defendants offer affidavits from DOCCS employees indicating that Plaintiff did not complete the administrative grievance process prior to commencing his suit. *See* Dkt. No. 21-3, Tavernier Decl.; Dkt. No. 21-4, Seguin Decl. Plaintiff was housed at Franklin Correctional Facility between October 7, 2019 and January 28, 2020. Tavernier Decl. at ¶ 11. During that time, the Franklin Correctional Facility had a fully-functioning grievance process. Seguin

Case 9:22-cv-01263-GTS-TWD    Document 67    Filed 02/03/25    Page 68 of 104

Gambino v. Carey, Not Reported in Fed. Supp. (2021)

2021 WL 1406742

Decl. at ¶ 17. Plaintiff filed a grievance on November 29, 2019, concerning the excessive force and inadequate conditions of confinement claims relating to the events on November 22, 2019. *Id.* at ¶ 12; Compl. at pp. 24-26. On December 27, 2019, Plaintiff wrote to the Inmate Grievance Committee requesting an appeal of his grievance to CORC. Tavernier Decl. at ¶ 18; Compl. at p. 27. Four days later, on December 31, 2019, Plaintiff mailed his Complaint and commenced the instant lawsuit. Tavernier Decl. at ¶¶ 18, 21; Compl. at p. 12. At the time Plaintiff mailed his Complaint, records indicate that CORC had yet to receive his appeal. Seguin Decl. at ¶ 14. CORC received the appeal on January 3, 2020. *See* Seguin Decl. at ¶ 14 & Ex. "A".

## II. LEGAL STANDARD FOR SUMMARY JUDGMENT

**\*2** Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard ... they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin,* 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994); *see also Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Plaintiff has failed to respond to Defendants' summary judgment motion. "Plaintiff's failure to oppose Defendants' summary judgment motion does not mean the motion is to be granted automatically." *Carleton v. Annucci*, 2018 WL 7917921 at \*4 (N.D.N.Y. Nov. 21, 2018) (citing *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996)). "An unopposed motion for summary judgment may be granted 'only if the facts as to which there is no genuine dispute show that the moving party is entitled to judgment as a matter of law.' " *Id.* Local Rule 56.1(b)[1] requires a response to the movant's statement of material facts. The moving party is required to notify *pro se* litigants about the potential consequences of their failure to respond to a summary judgment motion. L.R. 56.1(a). Defendants included this warning as required in their Notice of Motion to Plaintiff. Dkt. No. 21 at p. 3. Moreover, the Court *sua sponte* extended Plaintiff's time to respond and provided an admonishment of the potential consequences of his failure to do so. Dkt. No. 24. Despite these efforts, there has been no response from Plaintiff. L.R. 56.1(b) provides that the Court "may deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert."

Gambino v. Carey, Not Reported in Fed. Supp. (2021)

Case 9:22-cv-01263-GTS-TWD    Document 67    Filed 02/03/25    Page 69 of 104

2021 WL 1406742

1    Formerly L.R.7.1(a)(3), this rule was amended as of January 1, 2021.

### III. DISCUSSION

#### A. The Grievance Process

**\*3**  The Prison Litigation Reform Act ("PLRA") provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citation omitted). Exhaustion in prisoner cases covered by § 1997e(a) is mandatory. *Id.* at 524; *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016) (stating that the mandatory language of § 1997e(a) forecloses judicial discretion to craft exceptions to the requirement). Furthermore, § 1997e(a) requires "proper exhaustion," which means using all steps of the administrative process and complying with "deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). The defendant bears the burden of proving that the administrative remedies available to the plaintiff were not exhausted prior to the initiation of a civil action. *Howard v. Goord*, 1999 WL 1288679, at \*3 (E.D.N.Y. Dec. 28, 1999).

In New York, the administrative remedies consist of a three-step Inmate Grievance Program ("IGP"). First, a grievance is submitted to the Inmate Grievance Resolution Committee ("IGRC"), a committee comprised of both inmates and facility employees. N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(b). An inmate must submit a grievance "within 21 calendar days of the alleged occurrence." *Id.* at § 701.5(a). An inmate may request an extension of the time limit within forty-five days of the date of the alleged occurrence. *Id.* at § 701.6(g). The IGRC reviews and investigates the formal complaint and then issues a written determination. *Id.* at § 701.5(b). Second, upon appeal of the IGRC decision, the superintendent of the facility reviews the IGRC's determination and issues a decision. *Id.* at § 701.5(c). Finally, upon appeal of the superintendent's decision, the Central Office Review Committee ("CORC") makes the final administrative determination. *Id.* at § 701.5(d). Only upon exhaustion of all three levels of review may a prisoner seek relief in federal court. *Bridgeforth v. Bartlett*, 686 F. Supp. 2d 238, 239 (W.D.N.Y. 2010) (citing, *inter alia, Porter v. Nussle*, 534 U.S. at 524); *see also Neal v. Goord*, 267 F.3d 116, 121 (2d Cir. 2001), *overruled on other grounds by Porter v. Nussle*, 534 U.S. 516.

An expedited procedure exists for grievances regarding alleged harassment; this procedure also requires that the grievant receive a response from CORC in order to exhaust. 7 N.Y.C.R.R. § 701.8. Pursuant to this expedited procedure, the inmate may first report the incident to the employee's immediate supervisor. *Id.* at § 701.8(a). The inmate's allegations are then given a grievance number and the superintendent (or his designee) must promptly decide whether the grievance, if true, would represent a bona fide case of harassment. *Id.* at §§ 701.8(b) & (c). If the superintendent determines the grievance to be a case of harassment, he must render a decision within 25 days; the grievant may then appeal that determination to CORC. *Id.* at §§ 701.8 (d)-(h).

#### B. Plaintiff's Attempts to Exhaust His Administrative Remedies

The evidence presented by Defendants in support of the Motion establishes that Plaintiff has failed to fully exhaust his administrative remedies. The parties appear to agree that Plaintiff filed one grievance related to some of the allegations in the Complaint. Dkt. No. 21-1, Defs.' Mem. of Law at pp. 5-8; Compl. at p. 12. Defendants contend that Plaintiff's grievance did not include any allegations against DOCCS concerning Plaintiff's claims under the ADA and the Rehabilitation Act, and therefore those claims have not been exhausted. Defs. Mem. of Law at p. 10. With respect to Plaintiff's Eighth Amendment claims against Defendant Carey, Defendants maintain that Plaintiff commenced this action prior to completing the grievance process and as a result, those claims are also unexhausted. *Id.* at pp. 10-12.

Case 9:22-cv-01263-GTS-TWD    Document 67    Filed 02/03/25    Page 70 of 104

Gambino v. Carey, Not Reported in Fed. Supp. (2021)

2021 WL 1406742

**\*4** Plaintiff filed a grievance with the IGRC on November 29, 2019. Tavernier Decl. at ¶ 16; Compl. at pp. 24-26. Plaintiff indicates that the grievance was subsequently forwarded to the Superintendent for review due to the allegations of staff harassment contained therein. Compl. at p. 12. After the Superintendent failed to respond within the 25-day time frame, Plaintiff filed an appeal of the grievance to CORC on December 30, 2019. [2] Compl. at p. 27; Tavernier Decl. at ¶ 18. The appeal was received by CORC on January 3, 2020, and a final determination was issued on February 19, 2020. Tavernier Decl. at ¶¶ 20-21; Seguin Decl. at ¶ 15. Plaintiff commenced this lawsuit on December 31, 2019, one day after his appeal to CORC was filed and three days before the appeal was received by CORC. *See* Compl.; Seguin Decl. at ¶ 16.

[2]    Plaintiff's appeal to CORC is dated December 27, 2019 (Compl. at p. 27), however, a review of records by CORC indicated that the appeal was actually filed on December 30, 2019. Seguin Decl. at ¶ 13.

First, it is noted that Plaintiff's ADA and Rehabilitation Act claims against DOCCS are subject to the exhaustion requirements of the PLRA. *Carleton v. Annucci*, 2018 WL 7917921 at \*8 (N.D.N.Y. Nov. 21, 2018). Plaintiff's Eighth Amendment excessive force and conditions of confinement claims against Defendant Carey are also subject to the requirements of the PLRA. *Porter v. Nussle*, 534 U.S. at 532.

Next, evidence submitted by both parties demonstrates that Plaintiff filed suit prior to fully exhausting the grievance process. In order "[t]o properly exhaust administrative remedies, an inmate must file an appeal with CORC." *Torres v. Carry*, 672 F. Supp. 2d, 338, 343 (S.D.N.Y. 2009). Plaintiff indicates in his Complaint that he initiated an appeal with CORC after the Superintendent failed to respond to his grievance within the 25-day period. Compl. at p. 12. Plaintiff provided a copy of this letter, dated December 27, 2019, with his Complaint. Compl. at p. 27. 7 N.Y.C.R.R. § 701.5(d)(3)(ii) allows CORC a period of 30 calendar days in which to render a written decision on an appeal. Plaintiff's appeal was received by CORC on January 3, 2020. *See* Seguin Decl. ¶ 14, Ex. A. CORC therefore had 30 calendar days running from January 3, 2020, in which to render a decision. 7 N.Y.C.R.R. § 701.5(d)(3)(ii). However, Plaintiff had already mailed his Complaint and initiated the instant lawsuit before the appeal was received by CORC. *See* Compl. at p. 12; Tavernier Decl. at ¶ 21; Seguin Decl. at ¶ 16.

In order to properly exhaust administrative remedies, an inmate must not only file an appeal with CORC, but also receive a decision on that appeal. *See Pierrot v. Piserchia*, 2015 WL 6504540 at \*5 (N.D.N.Y. Oct. 27, 2015). "[W]here a plaintiff's grievance has not been appealed to and decided by the highest body in the administrative process, the plaintiff cannot be said to have exhausted his administrative remedies and his claims are thus properly dismissed by a court." *Jones v. Allen*, 2010 WL 3260081, at \*2 (S.D.N.Y. Aug. 9, 2010). Furthermore, the subsequent determination of Plaintiff's claim by CORC does not remedy this failure to exhaust prior to filing suit. *Sherwood v. Senecal*, 2019 WL 5197606, at \*5 (N.D.N.Y. May 20, 2019). Plaintiff commenced this action on December 31, 2019, four days after his letter requesting an appeal to CORC was signed, and prior to receiving a final determination from CORC. Compl. at pp. 12 & 27; Seguin Decl. at ¶¶ 16-18. Merely initiating an appeal to CORC, without receiving a final determination, is insufficient for purposes of exhaustion. "To the extent a civil rights claim must be exhausted by the grievance process, completion of the three-tiered process, through and including a final decision by the CORC, must be completed *before an action asserting that claim may be filed in court.*" *Haywood v. Fuller*, 2019 WL 2442142, at \*3 (N.D.N.Y. June 12, 2019) (citing cases) (emphasis added).

**\*5** The facts and evidence set forth by both Plaintiff and Defendants regarding Plaintiff's use of the grievance process establish that there is no question of material fact remaining as to the extent to which Plaintiff attempted to complete the grievance process. For these reasons, the Court finds that Defendants have carried their burden of establishing that Plaintiff failed to exhaust his administrative remedies.

### C. Whether Plaintiff's Failure to Exhaust Administrative Remedies May be Excused

A prisoner's failure to exhaust administrative remedies may nonetheless be excused if remedies were unavailable to the inmate. *Ross v. Blake*, 136 S. Ct. at 1858. As the Supreme Court stated in *Ross*, "[a]n inmate ... must exhaust available remedies, but

Gambino v. Carey, Not Reported in Fed. Supp. (2021)

2021 WL 1406742

need not exhaust unavailable ones." *Id.* The Court provided three potential circumstances in which administrative remedies may be unavailable: (1) where the administrative procedure technically exists but operates as a "dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use"; and (3) where prison administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859-60. Plaintiff bears the burden of establishing that the grievance procedures were unavailable within the meaning of *Ross*. *Martin v. Wyckoff*, 2018 WL 7356771, at *5 (N.D.N.Y. Oct. 16, 2018), *report and recommendation adopted*, 2019 WL 689081 (N.D.N.Y. Feb. 19, 2019).

Plaintiff has failed to respond to Defendants' Motion for Summary Judgment and as a result, has not set forth any additional evidence to establish that the grievance process was unavailable to him. Plaintiff does claim in his initial grievance that he "fear[ed] for [his] safety from C.O. Carey" and was later threatened by a sergeant not to report the incident. Compl. at p. 25. However, a general fear of retaliation is insufficient to excuse a failure to exhaust. *Rodriguez v. Landry*, 2020 WL 6747806, at *6 (N.D.N.Y. Oct. 26, 2020); *Harrison v. Stallone*, 2007 WL 2789473 at *5 (N.D.N.Y. Sept. 24, 2007). Such speculative allegations do not rise to the level of rendering the grievance process unavailable. *See Harrison v. Stallone*, 2007 WL 2789473 at *6. Moreover, Plaintiff's actual use of all steps of the grievance procedure here, although incomplete, tends to demonstrate that the grievance process was in fact available to him.

Plaintiff bears the burden of establishing an excuse under *Ross*, but his conclusory allegation here does not meet that burden. *Richard v. LeClaire*, 2019 WL 5197041, at *8 (N.D.N.Y. May 6, 2019), *report and recommendation adopted*, 2019 WL 4233184 (N.D.N.Y. Sept. 6, 2019) ("Plaintiff's conclusory assertions ... in no way satisf[y] his burden of showing, or even raising a material issue of fact as to, the availability of the IGP under *Ross*."); *Davidson v. Desai*, 817 F. Supp. 2d 166, 195 (W.D.N.Y. 2011) ("Plaintiff is required to point to some evidence in the record, other than self-serving, conclusory statements.").

For these reasons, the Court recommends that the Motion for Summary Judgment based on the failure to exhaust be granted and the Complaint dismissed in its entirety.

## IV. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion for Summary Judgment (Dkt. No. 21) be **GRANTED**; and it is further

 **\*6  RECOMMENDED**, that Plaintiff's claims against Correction Officer Carey and DOCCS be **DISMISSED**; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days [3] within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

[3]     If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).

Case 9:22-cv-01263-GTS-TWD    Document 67    Filed 02/03/25    Page 72 of 104

Gambino v. Carey, Not Reported in Fed. Supp. (2021)
2021 WL 1406742

**All Citations**

Not Reported in Fed. Supp., 2021 WL 1406742

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:22-cv-01263-GTS-TWD    Document 67    Filed 02/03/25    Page 73 of 104

Gambino v. Carey, Not Reported in Fed. Supp. (2021)

2021 WL 1404556

2021 WL 1404556
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Anthony GAMBINO,

v.

Correction Officer CAREY, Franklin Correctional Facility, and New York
State Department of Corrections and Community Supervision, Defendants.

9:20-CV-162
|
Signed 04/13/2021
|
Filed 04/14/2021

**Attorneys and Law Firms**

ANTHONY GAMBINO, Plaintiff, Pro Se, 19-A-3031, Franklin Correctional Facility, P.O. Box 10, Malone, NY 12954.

HON. LETITIA JAMES, New York State Attorney General, OF COUNSEL: LAUREN ROSE EVERSLEY, ESQ., Ass't Attorney General, Attorneys for Defendants, The Capitol, Albany, NY 12224.

## ORDER ON REPORT & RECOMMENDATION

DAVID N. HURD, United States District Judge

 **\*1** *Pro se* plaintiff Anthony Gambino ("plaintiff"), an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), filed this 42 U.S.C. § 1983 action alleging that, *inter alia*, (1) defendant Correction Officer Carey violated his Eighth Amendment rights and (2) defendant DOCCS violated his rights under the ADA and Section 504 of the Rehabilitation Act. Dkt. No. 13.

On September 1, 2020, defendants moved under Federal Rule of Civil Procedure ("Rule") 56 seeking summary judgment on all of plaintiff's claims based on his alleged failure to exhaust available administrative remedies. Dkt. No. 21. Plaintiff did not respond to or oppose the motion.

On March 26, 2021, U.S. Magistrate Judge Daniel J. Stewart advised by Report & Recommendation ("R&R") that defendants' motion be granted and that plaintiff's claims be dismissed. Dkt. No. 25. Neither party has filed objections.

Upon review for clear error, the Report & Recommendation is accepted and adopted in all respects. *See* FED. R. CIV. P. 72(b).

Therefore, it is

ORDERED that

1. The Report & Recommendation is ADOPTED;

2. Defendants' motion for summary judgment is GRANTED;

Case 9:22-cv-01263-GTS-TWD    Document 67    Filed 02/03/25    Page 74 of 104
Gambino v. Carey, Not Reported in Fed. Supp. (2021)
2021 WL 1404556

3. Plaintiff's claims against Correction Officer Carey and DOCCS are DISMISSED; and

4. The Clerk of the Court shall serve a copy of this Order on plaintiff in accordance with the Local Rules.

IT IS SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2021 WL 1404556

---

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Scott v. Uhler, Not Reported in Fed. Supp. (2019)
2019 WL 5197139

Case 9:22-cv-01263-GTS-TWD    Document 67    Filed 02/03/25    Page 75 of 104

2019 WL 5197139
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

James N. SCOTT, Plaintiff,

v.

D. UHLER; et al., Defendants.

No. 9:16-CV-403 (TJM/CFH)
|
Signed 07/31/2019

**Attorneys and Law Firms**

JAMES N. SCOTT, 96-A-5363, Plaintiff Pro Se, Great Meadow Correctional Facility, Box 51, Comstock, New York 12821.

HON. LETITIA JAMES, Attorney General for the State of New York, OF COUNSEL: RYAN W. HICKEY, ESQ., Assistant Attorney General, The Capitol, Albany, New York 12224-0341, Attorney for Defendants.

## REPORT-RECOMMENDATION AND ORDER [1]

[1]   This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c)

CHRISTIAN F. HUMMEL, U.S. MAGISTRATE JUDGE

**\*1**  Plaintiff James N. Scott ("Scott"), an inmate who was at all relevant times in the custody of the New York State Department of Correction and Community Supervisions ("DOCCS"), brings this action pursuant to the Civil Rights Act, 42 U.S.C. § 1983. Dkt. No. 1 ("Compl."); Dkt. No. 55 ("Am. Compl."). Scott contends that defendants deprived him of his constitutional rights under the Fourteenth Amendment. See Am. Compl. Defendants move, pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 56, to dismiss the amended complaint. Dkt. No. 72. Scott opposes defendants' motion. Dkt. No. 74. For the following reasons, it is recommended that defendants' motion be granted, and plaintiff's amended complaint be dismissed it its entirety without prejudice.

### I. BACKGROUND

#### A. Procedural History

On April 8, 2016, Scott and eight other inmates, commenced this action with the filing of a pro se civil rights complaint. See generally Compl. In a Decision and Order filed on April 15, 2016, the Court reviewed the complaint in accordance with 28 U.S.C § 1915(e)(2)(B) and 28 U.S.C. § 1915A, and directed defendants to respond to the First and Fourteenth Amendment claims. Dkt. No. 20. On July 25, 2016, in lieu of an answer, defendants moved, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss the complaint. Dkt. No. 35. Scott opposed the motion. Dkt. No. 38, 40.

In a Report-Recommendation and Order filed on February 8, 2017, the undersigned recommended granting defendants' Motion to Dismiss and affording plaintiffs the opportunity to amend the complaint within thirty days. Dkt. No. 47. On March 17, 2017,

Scott v. Uhler, Not Reported in Fed. Supp. (2019)

Case 9:22-cv-01263-GTS-TWD    Document 67    Filed 02/03/25    Page 76 of 104

2019 WL 5197139

Judge McAvoy adopted the Report-Recommendation and Order in its entirety. Dkt. No. 52. On April 12, 2017, Scott filed an amended complaint. Am. Compl. On September 26, 2017, the Court issued an Order dismissing the claims asserted by the remaining plaintiffs with prejudice, and terminating from the action all plaintiffs other than Scott.[2] Dkt. No. 56. In lieu of an answer to the amended complaint, defendants filed a Motion to Dismiss. Dkt. No. 60. Scott opposed. Dkt. No. 62.

[2]     Although plaintiff Scott's Amended Complaint repeatedly references "plaintiffs," plaintiff Scott is the only remaining plaintiff in this action. The September 26, 2017, Order dismissed all other plaintiffs from this action with prejudice "because none of the plaintiffs other than James N. Scott filed an amended complaint or sought an extension of time to do so[.]" Dkt. No. 56.

In a Report-Recommendation and Order filed on May 24, 2018, the undersigned recommended (1) granting defendants' Motion to Dismiss insofar as dismissing Scott's First Amendment and Fourteenth Amendment Due Process claims, and (2) denying defendants' Motion to Dismiss insofar as dismissing Scott's Fourteenth Amendment Equal Protection claims. Dkt. No. 63. On June 25, 2018, Judge McAvoy adopted the Report-Recommendation and Order in its entirety. Dkt. No. 65. On March 11, 2019, defendants filed a Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56(a), seeking dismissal of Scott's remaining Fourteenth Amendment Equal Protection claims Dkt. No. 72. Scott opposed the motion. Dkt. No. 74.

### B. Facts [3]

[3]     In support of this motion, defendant filed a Statement of Material Facts. Local Rule 7.1 (a)(3) states:

Summary Judgment Motions

Any motion for summary judgment shall contain a Statement of Material Facts. The Statement of Material Facts shall set forth, in numbered paragraphs, each material fact about which the moving party contends there exists no genuine issue. Each fact listed shall set forth a specific citation to the record where the fact is established. The record for purposes of the Statement of Material Facts includes the pleadings, depositions, answers to interrogatories, admissions and affidavits.

The opposing party shall file a response to the Statement of Material Facts. The non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises. The non-movant's response may also set forth any additional material facts that the non-movant contends are in dispute. Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party.

N.D.N.Y. L.R. 7.1 (a)(3).

**\*2**  The facts are related herein in the light most favorable to Scott as the non-moving party. See subsection II(A) infra. At the relevant time, Scott was confined at Upstate Correctional Facility ("Upstate C.F."). See generally Am. Compl. On December 25, 2015, Scott and other Muslim inmates were not permitted to attend a regularly-scheduled Jumm'ah service at Upstate C.F. Id. at 4. [4]  A request from Scott, the designated "inmate facilitator of the Islamic Religion" at Upstate C.F., to speak with the sergeant in command of the block went unanswered by correction staff. Id. at 5. Scott and other Muslim inmates were told that staff needed to "check and inquire as to how the procedures were going to take place on such a specific day[,]" but no officer "returned to the plaintiffs to inform them if they would be permitted to attend these services." Id. at 4. Defendant J. Fitchette ("Fitchette") was the Deputy Superintendent for Programs and responsible for "running the programs on Christmas day." Id. at 5, 7. Fitchette made the decision to cancel "all programs" after morning recreation, including Jumm'ah services. Id. at 8. When Imam Qubaisy arrived at Upstate C.F. on December 25, 2015, to perform the Jumm'ah service, defendant Lieutenant W. Trombly ("Trombly"), the watch commander, refused him entry into the facility. Id. at 8. Trombly informed Imam Qubaisy that Fitchette cancelled services with approval from defendant Superintendent D. Uhler ("Uhler"). Id.

4       Throughout this Report-Recommendation and Order, references to page numbers in items that appear on the docket refer to the pagination of the header numbers generated by CM/ECF, not to the page numbers used by the parties in the individual documents.

On December 26, 2015, Scott submitted inmate grievance UST 57414-16. Dkt. No. 68 at 5. Scott complained that Muslim inmates were prohibited from holding their weekly Jumm'ah service on December 25, 2015. Id. On January 5, 2016, Upstate's Inmate Grievance Resolution Committee ("IGRC") issued its response, finding that Scott and the other consolidated grievants "were correct in saying that they should [have been] allowed to attend Jumm'ah services on 12/25/15 regardless [if] [it] was a holiday or not." Id. at 7. The response also stated, "corrective action [was] taken and the 12 building sergeant has been notified to make sure this doesn't happen again in the future." Id. Scott received IGRC's response on January 5, 2016, and appealed the decision that day. Id. On January 21, 2016, Superintendent Uhler upheld IGRC's decision. Id. at 9. On January 22, 2016, Scott appealed Superintendent Uhler's decision to the Central Office Review Committee ("CORC"). [5] Id. The CORC received Scott's appeal on February 11, 2016. Id. at 13.

5       Both Scott and the three defendants assert that Scott appealed the Superintendent's decision to CORC on January 22, 2016. Dkt. No. 74-1 at 6, Dkt. No. 72-2 at ¶ 7. Two separate versions of Scott's appeal were submitted to the Court. One version has Scott's signature and is dated January 22, 2016, (Dkt. No. 72-4 at 17), and the other has Scott's signature and is dated January 25, 2016. Dkt. No. 68 at 9. The CORC file states that Scott brought his appeal on January 25, 2016. Dkt. No. 72-4 at 3. Scott says he brought his appeal on January 25, 2016, in a letter he wrote to the IGRC on April 14, 2016. Dkt. No. 68 at 11. The three-day difference in dates is not dispositive in this analysis but is noted.

On April 1, 2016, Scott commenced this action. Compl. at 7. On April 14, 2016, Scott wrote to the IGRC, checking on his appeal. Dkt. No. 68 at 11. On April 18, 2016, Scott again wrote to CORC, checking on his appeal. Id. at 12. On April 25, 2016, CORC responded, confirming it received Scott's appeal on February 11, 2016. Id. at 13. On May 18, 2016, CORC issued its decision upholding the Superintendent's determination. Dkt. No. 72-4 at 2; Dkt. No. 74-1 at 6.

## II. LEGAL STANDARDS [6]

6       All unpublished opinions cited to by the Court in this Report-Recommendation & Order, unless otherwise noted, have been provided to plaintiff.

### A. Summary Judgment

"A court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party has the burden of showing the basis for its motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party satisfies this burden by "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' " that show an absence of a genuine issue of material fact. Id. There is a genuine issue of material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "In determining whether summary judgment is appropriate, [the Court will] resolve all ambiguities and draw all reasonable inferences against the moving party." Skuble v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

**\*3** A non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (internal quotation marks omitted). Instead, a non-moving party must support his or her assertions with evidence showing a genuine issue of material fact. See id. at 586, 106 S.Ct. 1348. Even where a complaint or affidavit contains specific assertions, the allegations

Scott v. Uhler, Not Reported in Fed. Supp. (2019)

2019 WL 5197139

"may still be deemed conclusory if [they are] (1) 'largely unsubstantiated by any other direct evidence' and (2) 'so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in the complaint.' " Smith v. Woods, 9:03-CV-480 (DNH), 2006 WL 1133247, at *3 & n.11 (N.D.N.Y. Apr. 24, 2006) (quoting Jeffreys v. City of New York, 426 F.3d 549, 554-55 (2d Cir. 2005)) (additional citations omitted). "When no rational jury could find in favor of the non-moving party because the evidence to support is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." Gallo v. Prudential Services, Ltd. P'ship, 22 F.3d 1219, 1224 (2d. Cir. 1994).

In determining a summary judgment motion, "[f]actual disputes that are irrelevant or unnecessary will not be counted." Liberty Lobby, 477 U.S. at 247, 106 S.Ct. 2505. The nonmovant "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." Id. at 257, 106 S.Ct. 2505. "Mere conclusory statements or reliance on the pleadings, ... will not suffice, ...." Celotex, 477 U.S. at 324, 106 S.Ct. 2548. The court must look to the substantive law to identify which facts are material. Liberty Lobby, 477 U.S. at 248, 106 S.Ct. 2505.

When, as here, a party seeks judgment against a pro se litigant, a court must afford a non-movant special solicitude. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). The Second Circuit has stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," ... that a pro se litigant's submissions must be construed "liberally," ... and that such submissions must be read to raise the strongest arguments that they "suggest," .... At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, ... or arguments that the submissions themselves do not "suggest," ... that we should not "excuse frivolous or vexatious filings by pro se litigants," ... and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law ...

Triestman, 470 F.3d at 477 (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191-92 (2d Cir. 2008).

### B. Exhaustion

The Prison Litigation Reform Act of 1995 ("PLRA"), which governs federal civil rights litigation by inmates, states, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). The exhaustion requirement also applies where the prisoner seeks relief not available in the administrative grievance process, such as monetary damages. Id. at 524, 122 S.Ct. 983. To satisfy the exhaustion requirement the inmate must "complete the administrative review process in accordance with the applicable procedural rules." Woodford v. Ngo, 548 U.S. 81, 88, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006); see also Jones v. Bock, 549 U.S. 199, 218, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007).

Although the Supreme Court of the United States has deemed exhaustion mandatory, courts must consider the PLRA's "textual exception to mandatory exhaustion." Ross v. Blake, —— U.S. ——, 136 S.Ct. 1850, 1858, 195 L.Ed.2d 117 (2016). With this exception, courts must consider if administrative remedies were "available" to a prisoner. Id. The Supreme Court identified three circumstances where administrative remedies may be unavailable to a prisoner. Id. at 1859. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end — with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. (citing Booth v. Churner, 532 U.S. 731, 736, 738, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001)). Second, "[a]n administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." Id. Third, administrative remedies are unavailable where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1860.

### III. DISCUSSION

**\*4** Scott alleges that defendants violated his Fourteenth Amendment right to equal protection of the laws. See generally Am. Compl. Defendants move for summary judgment arguing that: (1) Scott "did not exhaust available administrative remedies prior to commencing this action, in violation of the requirements of the Prison Litigation Reform Act ('PLRA')"; and (2) "the record is devoid of any evidence that Scott was treated differently from any similarly situated individual because of intentional and purposeful discrimination." Dkt. No. 72-1 at 3.

### A. Did Scott Exhaust Administrative Remedies? [7]

[7]     To exhaust administrative remedies, a DOCCS inmate must first file a complaint with an inmate grievance program ("IGP") clerk within twenty-one days of the alleged incident. N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5(a)(1). An IGP representative has sixteen calendar days to informally resolve the issue. Id. § 701.5(b)(1). If no informal resolution occurs, the IGRC must hold a hearing within sixteen days of receipt of the grievance and must issue a written decision within two working days after the conclusion of the hearing. Id. §§ 701.5(b)(2)(i)-(ii). If the determination is unfavorable to the inmate, the inmate may appeal the IGRC's determination to the facility superintendent within seven calendar days of receipt of the determination. Id. § 701.5(c)(1). If the superintendent's determination is unfavorable, the inmate may appeal to CORC within seven days after receipt of the superintendent's determination. Id. §§ 701.5(d)(i)-(ii). CORC must "review each appeal, render a decision on the grievance, and transmit its decision to the facility, with reasons stated, for the [inmate], the grievance clerk, the superintendent, and any direct parties within thirty (30) calendar days from the time the appeal was received." Id. § 701.5(d)(3)(ii). Parties do not dispute that at all relevant times, DOCCS had a three-step inmate grievance program in place. N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5.

The PLRA requires inmates to exhaust administrative remedies before they can sue in federal court in prison condition cases. People v. Beldock, 212 F. Supp. 2d 141, 142 (W.D.N.Y. 2002); see McMillian v. Walters, No. 9:16-CV-0277 (MAD/DJS), 2017 WL 8894737, at *2 (N.D.N.Y. Dec. 18, 2017) ("The defendant bears the burden of proving that the administrative remedies available to the plaintiff were not exhausted prior to the initiation of a civil action.") (citation omitted).

Scott commenced this action on April 1, 2016, with the filing of his complaint. [8] Compl. at 7. CORC had not issued its decision on Scott's appeal at that time. Id. at 5. In response to a question on the form complaint asking for the final determination of his grievance Scott wrote, "Central Office at Albany refused to respond." Id. It is unclear what Scott means by "refused." Id. There is no indication that Scott reached out to CORC before he commenced this action, and there is no correspondence from CORC denying or dismissing his appeal before April 1, 2016. See generally Am. Compl. Scott wrote to CORC on April 18, 2016, and received confirmation that CORC received his appeal on February 11, 2016. Dkt. No. 68 at 12-13. Scott first wrote to CORC seventeen days after commencing this lawsuit. Id.; Compl. CORC denied Scott's appeal on May 18, 2016. Dkt. No. 72-4 at 2; Dkt. No. 74-1 at 6.

[8]     Plaintiff's complaint is considered filed as of the date it was given to the prison official for forwarding. See Johnson v. Coombe, 156 F. Supp. 2d 273, 277 (S.D.N.Y. 2001); Noble v. Kelly, 246 F.3d 93, 97-98 (2d Cir. 2001).

**\*5** If a prisoner has failed to properly follow each of the applicable steps before commencing litigation, he has failed to exhaust his administrative remedies. Ford v. Smith, No. 9:12-CV-1109 (TJM/TWD), 2014 WL 652933, at *3, (N.D.N.Y. Jan. 16, 2014) (citing Woodford v. Ngo, 548 U.S. 81, 93, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006)). Receiving a decision from CORC after filing a federal lawsuit does not satisfy the PLRA's requirement that administrative remedies be exhausted before filing suit, and any such action must be dismissed without prejudice. Neal v. Goord, 267 F.3d 116, 122-23 (2d Cir. 2001) overruled on other grounds by Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). Although Scott's April 12, 2017,

Scott v. Uhler, Not Reported in Fed. Supp. (2019)

Case 9:22-cv-01263-GTS-TWD    Document 67    Filed 02/03/25    Page 80 of 104

2019 WL 5197139

amended complaint states that the final result of his grievance was that "Central Office in Albany affirmed the determinations," the fact that CORC rendered a decision thirty-eight days after he commenced his federal lawsuit does not excuse him from fully exhausting his administrative remedies before commencing a federal action. See Dkt. No. 72-4 at 2, Am. Compl. Scott did not fully exhaust his administrative remedies before commencing this lawsuit on April 1, 2016, as CORC's decision was outstanding at that time. Dkt. No. 72-4 at 2; Dkt. No. 74-1 at 6.

### B. Availability of Administrative Remedies

Scott argues that the grievance process was unavailable to him because of CORC's delay in rendering its final determination. See Dkt. No. 74-1 at 11; Compl. at 5. Courts within this Circuit differ in their analyses of whether CORC's delay constitutes "unavailability" excusing a plaintiff's failure to exhaust his administrative remedies before commencing suit. Compare Fox v. Lee, No. 9:15-CV-0390 (TJM/CFH), 2018 WL 8576600, at *7 (N.D.N.Y. Dec. 18, 2018) (concluding that CORC's approximate four-month delay in responding to the plaintiff's appeal did not render the grievance process unavailable) and Berkley v. Ware, No. 9:16-CV-1326 (LEK/CFH), 2018 WL 3736791, at *6 (N.D.N.Y. July 6, 2018) (concluding "that CORC's approximately five month delay in rendering a decision did not excuse plaintiff from the exhaustion requirement.") with Rodriguez v. Reppert, No. 14-CV-671 (RJA/MJR), 2016 WL 11483439, *1 (W.D.N.Y. Sept. 28, 2016) (concluding that because CORC failed to respond within the 30-day time limit set by regulation, administrative remedies were unavailable to the plaintiff and dismissal for failure to exhaust was not appropriate) and High v. Switz, No. 9:17-CV-1067 (LEK/DJS), 2018 WL 3736794, at *5 (N.D.N.Y. July 9, 2018), report-recommendation adopted by 2018 WL 3730175 (N.D.N.Y. Aug. 6, 2018) (concluding that administrative remedies were unavailable to the plaintiff after CORC's nearly yearlong delay because "there is no direction on any action a grievant may take if he does not receive a response from CORC"; thus dismissal for failure to exhaust was not appropriate).

The Second Circuit has not addressed the exact issue of "unavailability" where a plaintiff has followed the grievance process and CORC has neglected to respond within the thirty-day time limit. High, 2018 WL 3736794, at *5 (citing Gizewski v. New York State Dep't of Corr. & Cmty. Supervision, 692 F. App'x 668, 670 (2d Cir. 2017) (summary order)); see also Fox, 2018 WL 8576600, at *7. However, courts within this Circuit have relied on the circumstances of each case when making this determination. See supra at 11-12. In High, this Court excused the plaintiff's failure to exhaust his administrative remedies,

> where the plaintiff had taken all steps he could to fulfill the last step of the appeal process; where CORC had neglected to respond, not just during the thirty day time limit, but for a period of numerous months thereafter; where CORC had further neglected to respond when Plaintiff wrote to CORC regarding the status of his appeal; and where CORC had only ultimately decided the appeal a year later, after the present [motion] had been filed.

2018 WL 3736794, at *5. However, in Berkley, this Court determined that, where the plaintiff commenced his federal action before receiving a response from CORC, "CORC's approximately five-month delay in rendering a decision did not excuse plaintiff from the exhaustion requirement." 2018 WL 3736791, at *6. The Berkley decision noted that the plaintiff had not mentioned the unavailability of the grievance process in his appeal to CORC and did not write to either the IGRC or CORC to check on his appeal before filing a federal lawsuit. Id. The length of delay and the plaintiff's attempts to reach out to CORC have been considerations this and other Courts in this Circuit have considered in determining whether administrative remedies were "available" to a plaintiff. See High, 2018 WL 3736794, at *5; see also Gizewski, 692 F. App'x at 668; Berkley, 2018 WL 3736791, at *6; Hayes v. Dahkle, No. 9:16-CV-1368 (TJM/CFH), 2018 WL 7356343, at *9 (N.D.N.Y. Dec. 11, 2018); Henderson v. Annucci, No. 14-CV-445A, 2016 WL 3039687, at *10 (W.D.N.Y. Mar. 14, 2016).

 **\*6** Here, there is no dispute that Scott filed a grievance with Upstate C.F.'s IGRC on December 26, 2015; received the IGRC's determination on January 5, 2016; appealed the decision that day; received Superintendent Uhler's decision on January 21,

Scott v. Uhler, Not Reported in Fed. Supp. (2019)

Case 9:22-cv-01263-GTS-TWD   Document 67   Filed 02/03/25   Page 81 of 104

2019 WL 5197139

2016; and appealed the decision to CORC on or about January 22, 2016. See Dkt. No. 68 at 5-9. CORC received Scott's appeal on February 11, 2016, and issued its final determination on May 18, 2016. Dkt. No. 68 at 11; Dkt. No. 72-4 at 2. Scott has not proffered evidence that he wrote Upstate C.F. IGRC or CORC inquiring as to the status of his appeal before filing this lawsuit. See Compl, Am. Compl., Dkt. No. 68; Berkley, 2018 WL 3736791, Hayes, 2018 WL 7356343. Additionally, when Scott checked with CORC he did not demonstrate that the exhaustion process was confusing to him. Id.; see e.g., Giano v. Goord, 380 F.3d 670, 676, 679 (2d Cir. 2004).

Scott also does not mention or provide evidence of CORC sending him a receipt after he filed his appeal. See generally Compl.; Am. Compl. The PLRA states that, "[i]f a grievant does not receive a copy of the written notice of receipt [by CORC] within 45 days of filing an appeal, the grievant should contact the IGP supervisor in writing to confirm that the appeal was filed and transmitted to CORC." 7 N.Y.C.R.R § 701.5(d)(3)(i). Scott offers no evidence that he followed this step of the PLRA. See generally Compl.; Am. Compl. The letters Scott provides were both written after Scott commenced this action and more than forty-five days after he filed his appeal. [9] Dkt. No. 68 at 11,12. The letters also do not characterize the grievance process as unavailable or hard to follow. Id. In fact, in his April 18, 2016, letter to CORC Scott stated he would, "await your response in an effort to resolve this matter." Id. at 12. However, Scott filed a federal lawsuit eighteen days before sending that letter to CORC. Am. Compl; Dkt. No. 68 at 12.

[9]   As discussed, Scott appealed to CORC on or about January 22, 2016. See supra at note 5. CORC received his appeal on February 11, 2016. Dkt. No. 68 at 13. A grievant should contact the IGP supervisor within forty-five days of filing an appeal if they have not received a receipt from CORC. 7 N.Y.C.R.R § 701.5(d)(3)(i). March 8, 2016 is forty-five days after Scott filed his appeal. Scott's letter to Upstate IGRC is dated April 14, 2016, id. at 11, and his letter to CORC is dated April 18, 2016. Id. at 12. Both letters were written over a month past the forty-five-day period outlined in 7 N.Y.C.R.R § 701.5(d)(3)(i) and over two weeks after Scott filed this lawsuit.

The length of CORC's delay is relatively brief -- approximately two months. See Dkt. No. 72-4 at 30; Am. Compl. The shorter delay Scott experienced is comparable to the delays in cases where this Court concluded that administrative remedies were available to the plaintiffs. See Berkley, 2018 WL 3736791, at *6 (explaining that the relatively short CORC delay did not excuse the plaintiff from the exhaustion requirement), Hayes, 2018 WL 7356343, at *9 (same); cf. High, 2016 WL 3039687, at *10 (explaining that the relatively long CORC delay, in addition to other factors, did excuse the plaintiff from the exhaustion requirement), Annucci, 2018 WL 3736794, at *4 (same). Considering the totality of the circumstances, Scott's failure to check with CORC as to the status of his appeal prior to commencing this action, and the relatively short delay in receiving a response from CORC leads the undersigned to conclude that plaintiff has failed to demonstrate that administrative remedies were unavailable to him. Berkley, 2018 WL 3736791, Hayes, 2018 WL 7356343. Thus, because Scott failed to exhaust his administrative remedies prior to commencing this action, it is recommended that defendants' motion be granted. [10] It is further recommended that plaintiff's amended complaint be dismissed without prejudice. Berry v. Kerick, 366 F.3d 85, 87 (2d Cir. 2004) (holding that dismissal without prejudice is appropriate where "a prisoner who brings suit without having exhausted these remedies can cure the defect by simply exhausting them and then reinstituting his suit.").

[10]   As the undersigned concludes that plaintiff has failed to exhaust his administrative remedies prior to commencing suit or that administrative remedies were unavailable to him, the undersigned declines to reach the merits of the plaintiff's claims.

## IV. CONCLUSION

**\*7**   **WHEREFORE**, for the reasons stated herein, it is hereby

**RECOMMENDED**, that defendant's Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 (Dkt. No. 72) be **GRANTED**; and it is further

Scott v. Uhler, Not Reported in Fed. Supp. (2019)
2019 WL 5197139

Case 9:22-cv-01263-GTS-TWD    Document 67    Filed 02/03/25    Page 82 of 104

**RECOMMENDED**, that plaintiff's Amended Complaint (Dkt. No. 55) be **DISMISSED** in its entirety, **without prejudice**, and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72. [11]

[11]    If you are proceeding pro se and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(C).

**All Citations**

Not Reported in Fed. Supp., 2019 WL 5197139

**End of Document**    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Scott v. Uhler, Not Reported in Fed. Supp. (2019)

2019 WL 4667495

2019 WL 4667495
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

James N. SCOTT, Plaintiff,

v.

D. UHLER, et al., Defendants.

No. 9:16-CV-403 (TJM/CFH)
|
Signed 09/25/2019

**Attorneys and Law Firms**

James N. Scott, Comstock, NY, pro se.

Ryan W. Hickey, New York State Attorney General, Albany, NY, for Defendants.

**DECISION & ORDER**

THOMAS J. McAVOY, Senior United States District Judge

**I. INTRODUCTION**

 **\*1** This *pro se* action brought pursuant to 42 U.S.C. § 1983 was referred to the Hon. Christian F. Hummel, United States Magistrate Judge, for a Report and Recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). In his July 31, 2019 Report-Recommendation and Order, Dkt. No. 75, Magistrate Judge Hummel recommends that Defendants' motion for summary judgment, Dkt. No. 72, be granted on the grounds that Plaintiff filed to exhaust his administrative remedies as required by the Prison Litigation Reform Act of 1995 ("PLRA"), and that Plaintiff's Fourteenth Amendment claims be dismissed without prejudice. *See generally*, Dkt. No. 75. Plaintiff filed objections. Dkt. No. 76.

**II. STANDARD OF REVIEW**

When objections to a magistrate judge's report and recommendation are lodged, the district court makes a "*de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *See* 28 U.S.C. § 636(b)(1). Objections to a report must be specific and clearly aimed at particular findings in the magistrate's proposal. *Camardo v. Gen. Motors Hourly-Rate Employees Pension Plan*, 806 F. Supp. 380, 381-82 (W.D.N.Y. 1992); *see also United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997) (The Court must make a *de novo* determination to the extent that a party makes specific objections to a magistrate's findings.). When a party makes only conclusory or general objections, or simply reiterates the original arguments, the Court will review the report strictly for clear error. *See Pearson-Fraser v. Bell Atl.*, No. 01-Civ.-2343, 2003 WL 43367, at \*1 (S.D.N.Y. Jan. 6, 2003); *Camardo*, 806 F. Supp. at 382 (W.D.N.Y. 1992). Similarly, "objections that are merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original [papers] will not suffice to invoke de novo review." *Vega v. Artuz*, No. 97 Civ. 3775, 2002 WL 31174466, at \*1 (S.D.N.Y. Sept. 30, 2002).

After reviewing the report and recommendation, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b).

Case 9:22-cv-01263-GTS-TWD    Document 67    Filed 02/03/25    Page 84 of 104
Scott v. Uhler, Not Reported in Fed. Supp. (2019)
2019 WL 4667495

## III. DISCUSSION

The Court presumes familiarity with Magistrate Judge Hummel's Report-Recommendation and Order. Suffice it to say that Magistrate Judge Hummel concluded that Plaintiff failed to exhaust his administrative remedies as required by the PLRA because he commenced the instant action before the Central Office Review Committee ("CORC") issued its decision on Plaintiff's underlying grievance. In reaching this conclusion, Magistrate Judge Hummel explored whether administrative remedies were "unavailable" because CORC failed to respond to Plaintiff's grievance within the thirty-day time limit. Magistrate Judge Hummel noted that the Second Circuit has not addressed the exact issue of "unavailability" where a plaintiff has followed the grievance process yet CORC neglected to respond within thirty days. He then examined case law within this Circuit and found that when determining whether administrative remedies were "unavailable" is such situations, courts rely on the circumstances of each case including whether the plaintiff had taken all steps he could to fulfill the last step of the appeal process, whether the plaintiff represented to the prison grievance authorities that he did not understand the process or found it confusing, and the length of the delay by CORC. Reviewing the facts in the light most favorable to Plaintiff, Magistrate Judge Hummel wrote:

> **\*2** Here, there is no dispute that Scott filed a grievance with Upstate C.F.'s [Inmate Grievance Resolution Committee ("IGRC")] on December 26, 2015; received the IGRC's determination on January 5, 2016; appealed the decision that day; received Superintendent Uhler's decision on January 21, 2016; and appealed the decision to CORC on or about January 22, 2016. CORC received Scott's appeal on February 11, 2016, and issued its final determination on May 18, 2016. Scott has not proffered evidence that he wrote Upstate C.F. IGRC or CORC inquiring as to the status of his appeal <u>before</u> filing this lawsuit. Additionally, when Scott checked with CORC he did not demonstrate that the exhaustion process was confusing to him.
>
> Scott also does not mention or provide evidence of CORC sending him a receipt after he filed his appeal. The PLRA states that, "[i]f a grievant does not receive a copy of the written notice of receipt [by CORC] within 45 days of filing an appeal, the grievant should contact the IGP supervisor in writing to confirm that the appeal was filed and transmitted to CORC." 7 N.Y.C.R.R § 701.5(d)(3)(i). Scott offers no evidence that he followed this step of the PLRA. The letters Scott provides were both written <u>after</u> Scott commenced this action and more than forty-five days <u>after</u> he filed his appeal. The letters also do not characterize the grievance process as unavailable or hard to follow. In fact, in his April 18, 2016, letter to CORC Scott stated he would, "await your response in an effort to resolve this matter." However, Scott filed a federal lawsuit eighteen days before sending that letter to CORC.
>
> The length of CORC's delay is relatively brief -- approximately two months. The shorter delay Scott experienced is comparable to the delays in cases where this Court concluded that administrative remedies were available to the plaintiffs. Considering the totality of the circumstances, Scott's failure to check with CORC as to the status of his appeal prior to commencing this action, and the relatively short delay in receiving a response from CORC leads the undersigned to conclude that plaintiff has failed to demonstrate that administrative remedies were unavailable to him. Thus, because Scott failed to exhaust his administrative remedies prior to commencing this action, it is recommended that defendants' motion be granted.

Dkt. No. 75, at 13-15 [1] (record and case citations omitted, footnotes omitted, emphasis in original).

[1]    Because the Report-Recommendation and Order is not paginated, the Court cites to the CM/ECF pages of this document.

### a. Objection #1

In Objection #1, Plaintiff makes two arguments.

First, he objects "to the fact" that Magistrate Judge Hummel did not take 7 N.Y.C.R.R. § 701.6(g)(2) under consideration. Dkt. # 76, at 5. This regulation provides that "[a]bsent [an] extension, matters not decided within the time limits may be appealed to the next step." 7 N.Y.C.R.R. § 701.6(g)(2). "[I]t is not clear whether the language in § 701.6(g)(2) applies to the CORC, and if so, what the 'next step' is. The regulations do not describe a mechanism for appealing or advancing a grievance when a grievant does not receive a response from CORC." *Sherwood v. Senecal*, No. 9:17-CV-00899 (BKS/TWD), 2019 WL 4564881,

Scott v. Uhler, Not Reported in Fed. Supp. (2019)
2019 WL 4667495

Case 9:22-cv-01263-GTS-TWD    Document 67    Filed 02/03/25    Page 85 of 104

at *3–4 (N.D.N.Y. Sept. 20, 2019)(internal quotation marks and citations omitted). Thus, it appears that this regulation has no application in this matter. Even assuming, *arguendo*, that this regulation applies, Magistrate Judge Hummel's failure to reference it is of no moment. Magistrate Judge Hummel proceeded with his analysis of whether administrative remedies were unavailable by comparing the time that Plaintiff filed his lawsuit with the time that CORC eventually responded. The fact that CORC did not seek consent to file an untimely decision does not change Magistrate Judge Hummel's conclusion. Thus, Plaintiff's objection on this ground is overruled.

 **\*3** Second, Plaintiff argues that administrative remedies were unavailable to him because he did not receive a timely response from CORC. *See* Dkt. # 76, at 5-6. However, as Plaintiff states in his objections, this is the same issue that was presented to Magistrate Judge Hummel. *See id.*, at 5 ("In his complaint and papers in opposition, Plaintiff's main contention is that administrative remedies were unavailable to him because he did not receive a response from CORC in that there were no instructions on how to proceed with a grievance if no response received from CORC."). Because this is simply a rehashing of the issue addressed by Magistrate Judge Hummel, and because this argument does not point to specific error by the magistrate judge, the Court reviews the Report-Recommendation and Order in this regard for plain error and finds none. For the reasons discussed by Magistrate Judge Hummel, the Court agrees that Plaintiff failed to exhaust available administrative remedies before commencing suit in this action. Accordingly, Plaintiff's objection on this ground is overruled.

### b. Objection #2

In Objection #2, Plaintiff objects to the statement in the Report-Recommendation and Order that " 'the record is devoid of any evidence that Scott was treated differently from any similarly situated individual because of intentional and purposeful discrimination.' " Dkt. # 76, at 7 (quoting Dkt. 75, at 9, in turn quoting Dkt. # 72, at 3). The quoted language is where Magistrate Judge Hummel framed the Defendants' second argument for summary judgment[2] by quoting his motion papers. However, because Magistrate Judge Hummel did not address the substantive merits of Plaintiff's claims, *see* Dkt. No. 75, at 15, n. 10 ("As the undersigned concludes that plaintiff has failed to exhaust his administrative remedies prior to commencing suit or that administrative remedies were unavailable to him, the undersigned declines to reach the merits of the plaintiff's claims."), the reference to Defendants' argument does not provide a basis to reject the recommendations. Accordingly, Plaintiff's objection on this ground is overruled.

[2]    The first was that Plaintiff failed to exhaust administrative remedies prior to commencing this action.

### c. Objection #3

In Objection #3, Plaintiff objects to Magistrate Judge Hummel's statement that "Scott also does not mention or provide evidence of CORC sending him a receipt after he filed his appeal." Dkt. No. 76, at 9-10 (citing Dkt. No. 75, at 13). Plaintiff contends that "the record clearly shows that the plaintiff received a receipt on April 25, 2016, stating that CORC responded, confirming that it received the Plaintiff's appeal on February 11, 2016." *Id.*, at 10 (citing Compl.; Am. Compl. at 13). It appears that Plaintiff relies on page 13 of his "Mandatory Pretrial Discovery," Dkt. No. 68, in making this argument.[3] Magistrate Judge Hummel references this document in the Report-Recommendation and Order, writing "Scott wrote to CORC on April 18, 2016, and received confirmation that CORC received his appeal on February 11, 2016." Dkt. No. 75, at 10 (citing Dkt. No. 68 at 12-13). However, Magistrate Judge Hummel also noted that "Scott first wrote to CORC seventeen days after commencing this lawsuit." *Id.* (citing Dkt. No. 68 at 12-13). In light of Magistrate Judge Hummel's two references to Plaintiff's communications with CORC, it is clear that he intended to indicate at page 13 that Scott did not mention or provide evidence of CORC sending him a receipt *immediately* after he filed his appeal. This interpretation is consistent with Magistrate Judge Hummel's conclusions that Plaintiff did not write to CORC until after he commenced this action, and that, therefore, he did not comply with § 701.5(d)(3) (i) before commencing suit. In light of this interpretation, Plaintiff's objection on this ground is overruled.

[3]    Neither the Complaint (Dkt. No. 1), which was dismissed and superseded by the Amended Complaint (Dkt. No. 55), nor the Amended Complaint contain a page 13 or a paragraph 13.

2019 WL 4667495

## IV. CONCLUSION

For the reasons discussed above, the Court **ACCEPTS and ADOPTS** the recommendations in the July 31, 2019 Report-Recommendation and Order, Dkt. No. 75, for the reasons stated therein. Thus, it is hereby

 **\*4**  **ORDERED** that Defendants' Motion for Summary Judgment, Dkt. No. 72, is **GRANTED,** and it is further

**ORDERED** that Plaintiff's Amended Complaint (Dkt. No. 55) is **DISMISSED** in its entirety, **without prejudice**.

The Clerk of the Court may close the file in this matter.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2019 WL 4667495

---

End of Document                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Jenkins v. Short, Not Reported in Fed. Supp. (2020)

2020 WL 9264842

2020 WL 9264842
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Darell JENKINS, Plaintiff,

v.

Sergeant SHORT, et al., Defendants.

9:19-cv-01352 (GTS/TWD)
|
Signed 11/16/2020
|
Filed 11/17/2020

**Attorneys and Law Firms**

DARELL JENKINS, Plaintiff, pro se, 18-A-0025, Southport Correctional Facility, PO Box 2000, Pine City, NY 14871.

OF COUNSEL: LAUREN ROSE EVERSLY, ESQ., Assistant Attorney General, HON. LETITIA JAMES, Attorney General for the State of New York, Attorney for Defendants, The Capitol, Albany, NY 12224.

## <u>ORDER AND REPORT-RECOMMENDATION</u>

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## I. INTRODUCTION

 **\*1** This matter was referred for a Report and Recommendation by the Honorable Glenn T. Suddaby, Chief U.S. District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). Plaintiff Darell Jenkins, an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), commenced this *pro se* civil action under 42 U.S.C. § 1983, asserting claims arising out of his incarceration at Mid-State Correctional Facility ("Mid-State"). (Dkt. No. 1.) The suit was originally filed in the United States District Court for the Western District of New York ("W.D.N.Y."), but was later transferred to this District. (Dkt. No. 6.) The District Court reviewed the complaint in accordance with 28 U.S.C. § 1915, and found only Plaintiff's First Amendment free exercise claims against Defendants Correctional Officer ("C.O.") Lindermayer, Sergeant ("Sgt.") Short, and C.O. O'Neil survived initial review and required a response. (Dkt. No. 10.)

Defendants now move for summary judgment, in lieu of an answer, pursuant to Rule 56 of the Federal Rules of Civil Procedure arguing Plaintiff failed to exhaust his administrative remedies prior to commencing this action. (Dkt. No. 21.) Plaintiff has not responded to Defendants' motion and the time to do so has expired. (*See* Dkt. Nos. 25, 26, 27, 28.) For the reasons set forth below, the Court recommends that Defendants' motion be granted.

## II. BACKGROUND

Plaintiff alleges that on September 1, 2019, at approximately 9:30AM, while Defendants were inside his cell, C.O. Lindermayer "kneeled down on the floor above [Plaintiff's] altar of Santeria, & threw [his] offerings & water away[.] (Dkt. No. 1 at 5. [1]) C.O. O'Neil then described Plaintiff's religion as "voodoo." *Id.* C.O. Lindermayer, Sgt. Short, and C.O. O'Neil told Plaintiff he was not permitted to offer "any food to [his] saints on [his] altar" and that he was not permitted to have frankincense oils. *Id.*

Case 9:22-cv-01263-GTS-TWD   Document 67   Filed 02/03/25   Page 88 of 104

Jenkins v. Short, Not Reported in Fed. Supp. (2020)

2020 WL 9264842

1      Page references to documents identified by docket number are to the page numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office. Paragraph numbers are used where documents identified by the CM/ECF docket number contain consecutively numbered paragraphs. Unless noted, excerpts from the record are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

Plaintiff filed a grievance but the grievance officer "Tapia" [2] "never answered [him]" and he "couldn't do anything because the grievance officer [did] not respond[.]" *Id.* Attached to Plaintiff's complaint is a letter dated September 27, 2019, from C. Tapia, IGP, acknowledging receipt of five pages of correspondence, assigned Grievance No. MS-24259-19. *Id.* at 8. The letter indicates Grievance No. MS-24259-19 was "forwarded to the Superintendent in accordance with Directive #4040" and that Plaintiff would be "notified of the results." *Id.* The letter stated to "Please refer to this grievance # with any future inquires." *Id.*

2      Christopher Tapia is the Inmate Grievance Program ("IGP") Supervisor at Mid-State. (Dkt. No. 23-1 at ¶ 3.)

 **2**  Plaintiff's complaint is dated September 27, 2019. *Id.* at 7. It was notarized on October 3, 2019, and was stamped received by the Clerk for the W.D.N.Y. on October 11, 2019. *Id.* The matter was subsequently transferred to this District by Order of U.S. District Judge Elizabeth A. Wolford, issued on October 15, 2019. (Dkt. No. 5.) Upon receipt of the action, this Court issued a Decision and Order denying Plaintiff's *in forma pauperis* ("IFP") application as incomplete. (Dkt. No. 7.) Plaintiff filed a second IFP application and pursuant to the District Court's March 30, 2020, Decision and Order, Plaintiff's First Amendment free exercise claims against Defendants C.O. Lindermayer, Sgt. Short, and C.O. O'Neil survived initial review, and summonses were issued as to them. (Dkt. Nos. 8, 10, 11.)

Defendants have not answered the complaint and instead move for summary judgment based solely on exhaustion grounds. (Dkt. No. 21-1.) To that end, Defendants have submitted sworn declarations from Rachel Seguin, the Assistant Director of the IGP for DOCCS, and Christopher Tapia, Supervisor of the IGP at Mid-State, describing DOCCS' administrative exhaustion process. (Dkt. Nos. 29-2, 29-3.) Defendants offer evidence that on or about September 4, 2019, Plaintiff filed a series of letters that were consolidated into Grievance No. MS-24269-19, which alleged that on September 1, 2019, during a cell integrity check, C.O. Lindermayer threw out the sacrifices at his altar. (Dkt. No. 21-2 at ¶ 6.) The letters also alleged that, at some point between September 1, 2019 and September 3, 2019, C.O. O'Neil referred to Plaintiff's religion as "voodoo," and that Sgt. Short also interfered with his religious practice. *Id.* The first page of Grievance No. MS-24269-19, was stamped received by the "IGP Office" on September 4, 2019. (*See* Dkt. No. 21-3 at 8.) Due to the nature of the allegations, Grievance No. MS-24269-19 was forwarded to the Superintendent. (Dkt. No. 21-2 at ¶ 7.) On or about April 30, 2020, the Superintendent issued a determination denying Grievance No. MS-24269-19. *Id.* There is no record of Plaintiff appealing Grievance No. MS-24269-19 to the Central Office Review Committee ("CORC"). *Id.* at ¶¶ 9, 13. Thus, Defendants argue summary judgment is appropriate in this case because Plaintiff failed to fully exhaust his administrative remedies prior to the commencement of this action. (Dkt. No. 21-1.) As noted above, Plaintiff has failed to submit any opposition to Defendants' motion.

### III. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

#### A. Standard of Review

A court shall grant summary judgment only if the submissions of the parties taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law" and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

In determining whether a genuine issue of material fact exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008). A verified complaint, as Plaintiff has filed in this case, is to be treated as an affidavit. *Colon v. Coughlin*, 58 F.3d 865, 872 (2d

Cir. 1995) ("A verified complaint is to be treated as an affidavit ... and therefore will be considered in determining whether material issues of fact exist[.]") (citations omitted).

**\*3** Where a party is proceeding *pro se*, the court must "read [the *pro se* party's] supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). However, "a *pro se* party's 'bald assertion,' unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Cole v. Artuz*, No. 93 Civ. 5981 (WHP)(JCF), 1999 WL 983876, at \*3 (S.D.N.Y. Oct. 28, 1999) (citing *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

As noted, Plaintiff did not respond to Defendants' motion for summary judgment. Defendants' motion advised Plaintiff of the consequences of failing to respond to the motion. (Dkt. No. 21 at 3.) The Clerk of the Court provided Plaintiff a similar notice. (Dkt. No. 24.) When Plaintiff failed to timely respond to the motion, the Court *sua sponte* granted Plaintiff additional time in which to do so, again advising Plaintiff of the consequences of failing to respond. (*See* Dkt. Nos. 25, 26, 27, 28.)

"The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). However, when a motion for summary judgment is unopposed, the court may "grant summary judgment if the motion and supporting materials - including the facts considered undisputed - show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3); *see also* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers ... shall be deemed as consent to the granting or denial of the motion."). Moreover, all properly supported facts set forth in Defendants' Statement of Material Facts that have not been specifically controverted shall be deemed admitted. N.D.N.Y. L.R. 7.1(a)(3).

## B. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act of 1995 ("PLRA"), provides, in pertinent part, "[n]o action shall be brought with respect to prison conditions under section 1983 ... by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is required for "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). "[E]xhaustion is mandatory under the PLRA and ... unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007); *see also Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016) (stating that the mandatory language of § 1997e(a) forecloses judicial discretion to craft exceptions to the requirement).

To properly exhaust administrative remedies under the PLRA, inmates are required to complete the administrative review process in accordance with the rules applicable to the institution to which they are confined. *Jones*, 549 U.S. at 218 (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)); *see also Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (exhaustion necessitates "using all steps that the [government] agency holds out, and doing so properly").

**\*4** In New York State prisons, DOCCS has a well-established three-step administrative review process. *See* 7 N.Y.C.R.R. § 701.5. First, an inmate must file a complaint with the facility's IGP clerk within twenty-one calendar days of the alleged occurrence. *Id.* § 701.5(a). A representative of the facility's inmate grievance resolution committee ("IGRC") has sixteen calendar days from receipt of the grievance to informally resolve the issue. *Id.* § 701.5(b)(1). If there is no such informal resolution, then the full IGRC conducts a hearing within sixteen calendar days of receipt of the grievance, *id.* § 701.5(b)(2), and issues a written decision within two working days of the conclusion of the hearing. *Id.* § 701.5(b)(3).

Second, a grievant may appeal the IGRC decision to the facility's Superintendent within seven calendar days of receipt of the IGRC's written decision. *Id.* § 701.5(c)(1). If the grievance involves an institutional issue (as opposed to a DOCCS-wide policy issue), the Superintendent must issue a written decision within twenty calendar days of receipt of the grievant's appeal. *Id.* § 701.5(c)(3)(ii).

2020 WL 9264842

Third, a grievant may appeal to CORC within seven working days of receipt of the Superintendent's written decision. *Id.* § 701.5(d)(1)(i). CORC is to render a written decision within thirty calendar days of receipt of the appeal. *Id.* § 701.5(d)(3)(ii).

Where the grievance involves allegations of employee misconduct, as alleged here, there is an expedited administrative process. *See id.* § 701.8. Complaints of harassment, once given a number and recorded by the IGP clerk, are forwarded directly to the Superintendent of the facility. *Id.* In such cases the Superintendent is required to order an investigation and render a decision within twenty-five calendar days. *Id.* § 701(a)-(f). If the Superintendent fails to respond within the required twenty-five day time limit, the inmate may appeal his grievance to CORC. *Id.* § 701.8(g). Disagreement with the Superintendent's decision in the expedited review process also requires an appeal to the CORC. *See id.* § 701.8-(g)-(h); *see also Espinal v. Goord*, 588 F.3d 119, 125 (2d Cir. 2009) (explaining IGP and the expedited procedure for harassment claims and its appeal mechanism through the CORC). Thereafter, CORC must render a written decision within thirty days of receipt of the appeal. *Id.* § 701.8(i). The Second Circuit has long recognized this procedure as an "available remedy" for purposes of the PLRA. *See Hall v. Cty. of Saratoga*, No. 10-CV-1120 (NAM/CFH), 2013 WL 838284, at *1-2 (N.D.N.Y. Mar. 6, 2013).

At each step of the IGP, a decision must be rendered within a specified time period. "Where the IGRC and/or Superintendent do not timely respond, an inmate must appeal to 'the next step,' " assuming there is a "next step" in the grievance process. *Eleby v. Smith*, No. 9:15-CV-0281(TJM/DEP), 2017 WL 986123, at *4 (N.D.N.Y. Jan. 9, 2017) (quoting 7 N.Y.C.R.R. § 701.6(g)(2)).

Generally, if a plaintiff fails to follow each of the required steps prior to commencing litigation, he has failed to exhaust his administrative remedies as required under the PLRA. *See Ruggiero v. Cty. of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) ("[T]he PLRA requires proper exhaustion, which means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." (quotation marks and citations omitted)).

Nevertheless, while the PLRA mandates exhaustion of administrative remedies, it also "contains its own, textual exception to mandatory exhaustion." *Ross*, 136 S. Ct. at 1858. More specifically, Section 1997e(a) provides only those administrative remedies that "are available" must first be exhausted. 42 U.S.C. § 1997e(a); *Ross*, 136 S. Ct. at 1858 ("[T]he exhaustion requirement hinges on the availability of administrative remedies[.]" (quotation marks and citations omitted)). In the PLRA context, the Supreme Court has determined "availability" means "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Ross*, 136 S. Ct. at 1859 (quotation marks and citations omitted).

 **\*5**  The *Ross* Court identified three circumstances in which a court may find internal administrative remedies are not available to prisoners under the PLRA. *Id.* at 1859-60. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 1859. "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* Finally, an administrative remedy is not "available" when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

Because failure to exhaust is an affirmative defense, the defendants bears the burden of showing that an inmate has failed to satisfy the exhaustion requirements. *See Jones*, 549 U.S. at 216; *Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016). Whether the plaintiff has exhausted his administrative remedies is a question of law. *See Snider v. Melindez*, 199 F.3d 108, 113-14 (2d Cir. 1999). Thus, an inmate's failure to exhaust administrative remedies is properly considered on a motion for summary judgment in lieu of an answer. *Crichlow v. Fischer*, No. 6:15-CV-06252 EAW, 2017 WL 920753, at *5 (W.D.N.Y. Mar. 7, 2017) (citing *Crenshaw v. Syed*, 686 F. Supp. 2d 234, 236 (W.D.N.Y. 2010) (granting a motion for summary judgment *made in lieu of* an answer where inmate failed to exhaust administrative remedies)).

Here, it is undisputed Plaintiff failed to avail himself of the full panoply of administrative remedies prior to commencing this action. (Dkt. No. 21-2.) The record before the Court demonstrates Plaintiff completed only the first step of the grievance process before commencing this lawsuit. *Id.* As stated above, Plaintiff filed a series of letters that were consolidated into

Case 9:22-cv-01263-GTS-TWD   Document 67   Filed 02/03/25   Page 91 of 104
Jenkins v. Short, Not Reported in Fed. Supp. (2020)
2020 WL 9264842

Grievance No. MS-24269-19. *Id.* at ¶ 7. Due to the nature of the allegations, Grievance No. MS-24269-19 was forwarded to the Superintendent for investigation in accordance with DOCCS policy on or about September 4, 2019. *Id.* at ¶ 8. On April 30, 2020, the Superintendent issued a determination denying Grievance No. MS-24269-19. *Id.* at ¶ 9. However, Plaintiff did not appeal the Superintendent's denial of Grievance No. MS-24269-19 to CORC. *Id.* at ¶ 10.

For these reasons, the Court finds Plaintiff failed to exhaust his administrative remedies. *See Bennett v. Fletcher*, No. 9:17-CV-849 (GTS/CFH), 2020 WL 872491, at *7 (N.D.N.Y. Jan. 16, 2020) (citing *Omaro v. Annucci*, 68 F. Supp. 3d 359, 364 (W.D.N.Y. 2014) ("It is well-established that an inmate who does not appeal to CORC has failed to exhaust his administrative remedies.")), *report-recommendation adopted by* 2020 WL 871156 (N.D.N.Y. Feb. 21, 2020); *see, e.g., Hamm v. Farney*, No. 9:13-CV-1302 (BKS/CFH), 2017 WL 8894723, at *5 (N.D.N.Y. Dec. 22, 2017), *report and recommendation adopted by* 2018 WL 922149 (N.D.N.Y. Feb. 16, 2018) (dismissing the plaintiff's complaint for failure to exhaust where the IGP supervisor and DOCCS Assistant Director of IGP both declared that "a search of the DOCCS database confirmed plaintiff's original grievance, as well as an appeal to the Superintendent, but produced no record of an appeal to CORC"); *see also Teaque v. Mullen*, No. 9:18-CV-01412 (GTS/CFH), 2019 WL 8589277, at *7 (N.D.N.Y. Dec. 17, 2019) ("Because plaintiff commenced this action before receiving a response from the Superintendent of Mid-State regarding his grievance, plaintiff did not fully exhaust his administrative remedies before commencing this action."), *report and recommendation adopted by* 2020 WL 858355 (N.D.N.Y. Feb. 21, 2020).

**\*6** "[O]nce a defendant has adduced reliable evidence that administrative remedies were available to the plaintiff and that the plaintiff nevertheless failed to exhaust those remedies, the plaintiff must then 'counter' the defendant's assertion by showing exhaustion [or] unavailability" under *Ross*. *Ferrer v. Racette*, No. 14-cv-1370 (GTS/DJS), 2017 WL 6459525, at *12 (N.D.N.Y. Dec. 18, 2017) (citation omitted); *see Perez v. Colon*, No. 9:19-CV-722 (GTS/DJS), 2020 WL 4549206, at *4 (N.D.N.Y. June 16, 2020) ("finding no basis appeared on the record for concluding that DOCCS' grievance procedure was unavailable to the plaintiff given he failed to respond to the defendants' motion"), *report and recommendation adopted by* 2020 WL 4530602 (N.D.N.Y. Aug. 6, 2020).

Although he did not respond to Defendants' motion, Plaintiff's verified complaint suggests administrative remedies were unavailable to him at the time he commenced this action because the "grievance officer [did] not respond[.]" (Dkt. No. 1 at 7.) Defendants recognize the Superintendent's decision was issued beyond the 25 calendar days set forth in 7 N.Y.C.R.R. § 701.8(f). (Dkt. No. 21-1 at 7-8.) However, it is well-settled that where an inmate does not receive a response to a grievance, the inmate must appeal to the next level of review notwithstanding a lack of response at any level of review. *See Smith v. Kelly*, 985 F. Supp. 2d 275, 281 (N.D.N.Y. 2013) (Suddaby, C.J.) ("[A]ny failure by the IGRC or the Superintendent to timely respond to a grievance ... can—and must—be appealed to the next level ... to complete the grievance process.").

Here, when the Superintendent did not render a decision on Plaintiff's grievance within 25 days (i.e., by September 29, 2019), Plaintiff had the ability to file an appeal with CORC. *See* 7 N.Y.C.R.R. § 701.8(g). "[I]nstead of doing so, [Plaintiff] rushed to Court, without attempting to appeal (the Superintendent's non-response) to [CORC] eviscerating the purpose of the administrative remedy process." *Teaque v. Mullen*, 2020 WL 858355, at *4 (citing *Woodford*, 548 U.S. at 89 (articulating two main purposes of exhaustion of administrative remedies)). Thus, because Plaintiff failed to appeal the Superintendent's non-response to the next level, he cannot be excused from the grievance process. *See Heyliger v. Gebler*, 624 F. App'x 780, 782 (2d Cir. 2015) (summary order) ("Under the regulations ..., if at any step of the grievance process, an inmate did not receive a response within the specified timeframe, he was nonetheless permitted to 'appeal[ ] to the next step.' ") (quoting N.Y. Comp. Codes R. & Regs. tit. 7, § 701.6(g)(2) (2015)).

Based on the foregoing, the Court agrees with Defendants that Plaintiff failed to avail himself of the full panoply of administrative remedies prior to commencing this action. *See James v. Doty*, No. 9:17-CV-1145 (MAD/CFH), 2019 WL 1474309, at *5 (N.D.N.Y. Jan. 4, 2019) ("Plaintiff does not suggest, and the record does not demonstrate, that plaintiff appealed the non-response to CORC."), *report and recommendation adopted by* 2019 WL 457694 (N.D.N.Y. Feb. 6, 2019).

2020 WL 9264842

Moreover, there is no evidence in the record showing the grievance procedure "operate[d] as a simple dead end" to Plaintiff, nor is there any evidence to establish an issue of fact as to unavailability due to an "opaque" administrate scheme. *See Ross*, 136 S. Ct. at 1859-60. As pointed out by Defendants, Plaintiff filed and appealed the denial of an unrelated grievance (Grievance No. MS-24271-19) to CORC on or about November 7, 2019. (Dkt. No. 21-2 at ¶ 10.) *See also Gonzalez v. Coburn*, No. 6:16-cv-6174, 2017 WL 6512859, at *6 (W.D.N.Y. Dec. 20, 2017) (finding the plaintiff's decision to affirmatively participate at all three levels in the inmate grievance program demonstrates that the program was neither a dead-end nor so opaque that he could not avail himself of it). Lastly, the record does not demonstrate prison administrators prevented Plaintiff from using the grievance procedure due to "machination, misrepresentation, or intimidation." *See Ross*, 136 S. Ct. at 1859-60. Thus, given the record and considering the evidence in the light most favorable to Plaintiff, the Court finds there is no genuine dispute of fact that administrative remedies were available.

 **\*7**  In light of the foregoing, the Court recommends granting Defendants' motion for summary judgment, as there is no genuine issue of material fact that Plaintiff failed to exhaust his administrative remedies. Generally, a dismissal for failure to exhaust administrative remedies is without prejudice, so that the inmate-plaintiff can cure the defect by exhausting his administrative remedies and then reinstituting his suit. *See Snider v. Melindez*, 199 F. 3d 108, 111-12 (2d Cir. 1999). However, dismissal with prejudice is appropriate where the plaintiff had the opportunity to exhaust administrative remedies, failed to do so, and is unable to cure his failure to exhaust. *Berry v. Kerik*, 366 F.3d 85, 87 (2d Cir. 2004).

Here, more than six months have passed since Plaintiff should have appealed Grievance No. MS-24269-19 to CORC. (*See* Dkt. No. 21-2 at ¶¶ 8, 9, 13.) As Plaintiff's failure to exhaust his administrative remedies is incurable at this point, the Court recommends dismissing Plaintiff's complaint with prejudice. *See Castineiras v. Helms*, No. 9:17-CV-1084 (BKS/ATB), 2019 WL 2870300, at *5-6 (N.D.N.Y. June 6, 2019).

## IV. CONCLUSION

After carefully considering the record, the Court finds Plaintiff failed to exhaust his administrative remedies.

**ACCORDINGLY**, it is hereby

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 21) be **GRANTED**; and it is further

**RECOMMENDED** that Plaintiff's complaint (Dkt. No. 1) be **DISMISSED WITH PREJUDICE**; and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2008) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [3] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989) (per curiam)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a).

---

[3]    If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

Case 9:22-cv-01263-GTS-TWD    Document 67    Filed 02/03/25    Page 93 of 104

Jenkins v. Short, Not Reported in Fed. Supp. (2020)
2020 WL 9264842

**All Citations**

Not Reported in Fed. Supp., 2020 WL 9264842

---

**End of Document**                                      © 2025 Thomson Reuters. No claim to original U.S. Government Works.

---

Case 9:22-cv-01263-GTS-TWD    Document 67    Filed 02/03/25    Page 94 of 104

Jenkins v. Short, Not Reported in Fed. Supp. (2021)

2021 WL 958512

2021 WL 958512
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Darell JENKINS, Plaintiff,

v.

Sgt. SHORT; Officer Oneill; and Officer Lindermayer, Defendants.

9:19-CV-1352 (GTS/TWD)
|
Signed 03/15/2021

**Attorneys and Law Firms**

DARELL JENKINS, 18-A-0025, Plaintiff, Pro Se, Clinton Correctional Facility, P.O. Box 2000, Dannemora, New York 12929.

HON. LETITIA A. JAMES, Attorney General for the State of New York Counsel for Defendants, OF COUNSEL: LAUREN ROSE EVERSLEY, ESQ., Assistant Attorney General, The Capitol, Albany, New York 12224.

**<u>DECISION and ORDER</u>**

GLENN T. SUDDABY, Chief United States District Judge

 **\*1**  Currently before the Court, in this *pro se* prisoner civil rights action filed by Darell Jenkins ("Plaintiff") against the above three employees of the New York State Department of Corrections and Community Supervision ("Defendants") pursuant to 42 U.S.C. § 1983, are (1) United States Magistrate Judge Thérèse Wiley Dancks' Report-Recommendation recommending that Defendants' motion for summary judgment be granted and that Plaintiff's Complaint be dismissed with prejudice for failure to exhaust his administrative remedies, and (2) Plaintiff's Objection to the Report-Recommendation. (Dkt. Nos. 29, 30-31.) For the reasons set forth below, the Report-Recommendation is accepted and adopted in its entirety.

## I. RELEVANT BACKGROUND

Generally, in her Report-Recommendation, Magistrate Judge Dancks found that (1) because Plaintiff failed to exhaust his available administrative remedies before filing his Complaint, Defendants' motion for summary judgment should be granted, and (2) because Plaintiff cannot at this point cure his failure to exhaust, his Complaint should be dismissed with prejudice. (Dkt. No. 29, at 2-4, 6-13.)

Generally, in his Objection, Plaintiff asserts that his Complaint should not be dismissed with prejudice for failure to exhaust because "the Superintendent never responded back to me when I appealed the grievance." (Dkt. No. 30.) In addition, Plaintiff submits a decision from the Central Officer Review Committee, dated September 10, 2020, deciding his appeal. (Dkt. No. 31.)

## II. STANDARD OF REVIEW

When a *specific* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to a *de novo* review. Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1)(C). To be "specific," the objection must, with particularity, "identify [1] the portions of the proposed findings, recommendations, or report to which it has an objection and [2] the basis for the objection." N.D.N.Y. L.R. 72.1(c). [1] When performing such a *de novo* review, "[t]he judge may ... receive further evidence...." 28 U.S.C. § 636(b)(1). However, a district court will ordinarily refuse to consider evidentiary

material that could have been, but was not, presented to the magistrate judge in the first instance.[2] Similarly, a district court will ordinarily refuse to consider argument that could have been, but was not, presented to the magistrate judge in the first instance. *See Zhao v. State Univ. of N.Y.*, 04-CV-0210, 2011 WL 3610717, at *1 (E.D.N.Y. Aug. 15, 2011) ("[I]t is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not.") (internal quotation marks and citation omitted); *Hubbard v. Kelley*, 752 F. Supp.2d 311, 312-13 (W.D.N.Y. 2009) ("In this circuit, it is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not.") (internal quotation marks omitted).

[1]   *See also Mario v. P&C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) ("Although Mario filed objections to the magistrate's report and recommendation, the statement with respect to his Title VII claim was not specific enough to preserve this claim for review. The only reference made to the Title VII claim was one sentence on the last page of his objections, where he stated that it was error to deny his motion on the Title VII claim '[f]or the reasons set forth in Plaintiff's Memorandum of Law in Support of Motion for Partial Summary Judgment.' This bare statement, devoid of any reference to specific findings or recommendations to which he objected and why, and unsupported by legal authority, was not sufficient to preserve the Title VII claim.").

[2]   *See Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137-38 (2d Cir. 1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters*, 894 F.2d 36, 40, n.3 (2d Cir. 1990) (finding that district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate"); *cf. U. S. v. Raddatz*, 447 U.S. 667, 676, n.3 (1980) ("We conclude that to construe § 636(b)(1) to require the district court to conduct a second hearing whenever either party objected to the magistrate's credibility findings would largely frustrate the plain objective of Congress to alleviate the increasing congestion of litigation in the district courts."); Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition ("The term 'de novo' does not indicate that a secondary evidentiary hearing is required.").

 **\*2**  When only a *general* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review. Fed. R. Civ. P. 72(b)(2),(3); Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition; *see also Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *2-3 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.) [collecting cases], *aff'd without opinion*, 175 F.3d 1007 (2d Cir. 1999). Similarly, when an objection merely reiterates the *same arguments* made by the objecting party in its original papers submitted to the magistrate judge, the Court subjects that portion of the report-recommendation challenged by those arguments to only a *clear error* review.[3] Finally, when *no* objection is made to a portion of a report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review. Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition. When performing such a "clear error" review, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Id.*[4]

[3]   *See Mario*, 313 F.3d at 766 ("Merely referring the court to previously filed papers or arguments does not constitute an adequate objection under either Fed. R. Civ. P. 72(b) or Local Civil Rule 72.3(a)(3)."); *Camardo v. Gen. Motors Hourly-Rate Emp. Pension Plan*, 806 F. Supp. 380, 382 (W.D.N.Y. 1992) (explaining that court need not consider objections that merely constitute a "rehashing" of the same arguments and positions taken in original papers submitted to the magistrate judge); *accord, Praileau v. Cnty. of Schenectady*, 09-CV-0924, 2010 WL 3761902, at *1, n.1 (N.D.N.Y. Sept. 20, 2010) (McAvoy, J.); *Hickman ex rel. M.A.H. v. Astrue*, 07-CV-1077, 2010 WL 2985968, at *3 & n.3 (N.D.N.Y. July 27, 2010) (Mordue, C.J.); *Almonte v. N.Y.S. Div. of Parole*, 04-CV-0484, 2006 WL 149049, at *4 (N.D.N.Y. Jan. 18, 2006) (Sharpe, J.).

2021 WL 958512

4       *See also Batista v. Walker*, 94-CV-2826, 1995 WL 453299, at *1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's] report to which no specific objection is made, so long as those sections are not facially erroneous.") (internal quotation marks and citations omitted).

After conducting the appropriate review, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

## III. ANALYSIS

After carefully considering the matter, the Court can find no error in Magistrate Judge Dancks' thorough Report-Recommendation, clear or otherwise. Magistrate Judge Dancks employed the proper standards, accurately recited the facts, and reasonably applied the law to those facts. As a result, the Report-Recommendation is accepted and adopted in its entirety for the reasons set forth therein. To those reasons, the Court adds only four points.

First, the Court is unpersuaded by Plaintiff's argument in his Objection his Complaint should not be dismissed with prejudice because "the Superintendent never responded back to me when I appealed the grievance." The Court will set aside the fact that, literally speaking, this assertion is undermined by the record evidence: the Superintendent did respond to him, on April 30, 2020. (*See* Dkt. No. 21, Attach. 3, at 12 [attaching decision by Superintendent dated Apr. 30, 2020].) More important, liberally construed, Plaintiff's argument is that the Superintendent never *timely* responded to him. The problem with this argument is that it is immaterial, because Plaintiff adduces no evidence, or even argument, that the time for the Superintendent to respond had expired by October 3, 2019 (or even that he filed an appeal to the Central Office Review Committee and failed to receive a timely response by that time). Regardless of whether the Superintendent failed to timely respond to him, Plaintiff filed his Complaint in this action without waiting the necessary time for a response from him (and/or without filing an appeal to the Central Office Review Committee and waiting the necessary time for a response from it).

 **\*3**  Second, the Report-Recommendation appears to repeat a typographical error contained in Defendants' Statement of Material Facts: the assertion that Plaintiff filed a grievance numbered "MS-242*6*9-19" that was distinct from the grievance that was numbered "MS-242*5*9-19." (*Compare* Dkt. No. 21, Attach. 2, at ¶¶ 6-8, 12 [Defs.' Statement of Material Fact, referencing a grievance numbered "MS-242*6*9-19"] *with* Dkt. No. 21, Attach. 2, at ¶ 13 [Defs.' Statement of Material Fact, referencing a grievance numbered "MS-242*5*9-19"]; *see also* Dkt. No. 29, at 3-4, 13 [Report-Recommendation, referencing both numbers].) In fact, the record evidence relied on by Defendants for this assertion (that there existed a grievance numbered "MS-242*6*9-19") does not support the assertion, but merely the assertion that there existed a grievance numbered "MS-242*5*9-19." (Dkt. No. 21, Attach. 3, at ¶¶ 16, 17, 20 [Tapia Decl., referencing a grievance numbered "MS-242*5*9-19"].)

However, this typographical error does not change the correctness of the Report-Recommendation's finding and conclusion that Plaintiff failed to exhaust his available administrative remedies before he filed his Complaint in this action (pursuant to the "Prison Mailbox Rule") on October 3, 2019. By that time, he had not received a decision of his grievance by the Superintendent, and could not realistically have appealed that decision (or the Superintendent's failure to issue a timely decision) to the Central Office Review Committee and received a response (or failed to receive a timely response) from it.

This is because attached to the Complaint (which is sworn and thus has the force and effect of an affidavit for purposes of a motion for summary judgment) is a notice dated September 27, 2019, advising Plaintiff that his five pages of previous correspondence (from September 1-3, 2019), had been received by the Inmate Grievance Program Supervisor, construed together as a grievance, assigned a grievance number, and forwarded to the Superintendent for decision. (Dkt. No. 1, at 8.) This failure of Plaintiff to exhaust his available administrative remedies before filing his Complaint is also asserted in Defendants' Statement of Undisputed Material Facts and not controverted by Plaintiff (despite the fact that he was twice specifically advised of the consequences of failing to properly oppose Defendants' motion and was granted three extensions of time in which to do so). (*Compare* Dkt. No. 21, Attach. 2, at ¶¶ 2, 6-8 [Defs.' Statement of Material Facts] *with* Dkt. No. 25 [Plf.'s Response].)

Third, rather than oppose Defendants' motion, Plaintiff attempts to adduce new evidence as part of his objection to the Report-Recommendation. The Court declines to consider this late-blossoming evidence for each of two independent reasons. [5] First, Plaintiff has not persuaded the Court that he could not have presented the evidence to Magistrate Judge Dancks before the issuance of her Report-Recommendation, thus causing a waste of judicial resources (and a frustration of the purpose of the Federal Magistrates Act of 1968) if the Court were to consider it now. *See, supra,* note 2 and accompanying text of this Decision and Order. The Court notes that the document appears to have been created on or soon after September 10, 2020, and Plaintiff's final response deadline was not until November 2, 2020. Second, in any event, the document in no way shows that Plaintiff exhausted his available administrative remedies before filing his Complaint in this action; and, indeed, it contradicts any such assertion.

[5]     For the sake of brevity, the Court will set aside the fact that the bottom of the document appears missing, and the fact that the document is not introduced by an affidavit, rendering it somewhat questionable.

Fourth, and finally, although it is conceivable that this late-blossoming document could affect Magistrate Judge Dancks' finding that Plaintiff cannot now cure his failure to exhaust, the Court finds that it does not do so because, again, the Court is exercising its discretion to not consider the document: Plaintiff had a full and fair opportunity to present it to Magistrate Judge Dancks (before the issuance of her thoughtful Report-Recommendation) and he chose not to do so. [6]

[6]     The Court notes that any arguable prejudice to Plaintiff resulting from this exercise of the Court's discretion is lessened by the fact that, in its decision, the Central Office Review Committee granted Plaintiff the injunctive relief he requested in this action. (*Compare* Dkt. No. 1, at 5 [Complaint, requesting, as relief, "$50,000 and to be able to practice my religion and have frankenscent [sp] oils for my altar"] *with* Dkt. No. 31, at 1 [CORC Decision, accepting the grievance in part, and explaining that Plaintiff has been "permitted religious items"].)

**\*4  ACCORDINGLY**, it is

**ORDERED** that Magistrate Dancks' Report-Recommendation (Dkt. No. 29) is **ACCEPTED** and **ADOPTED** in its entirety; and it is further

**ORDERED** that Defendants' motion for summary judgement (Dkt. No. 21) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED** with prejudice.

The Court finds that an appeal from this Decision and Order would not be taken in good faith.

**All Citations**

Not Reported in Fed. Supp., 2021 WL 958512

Davis v. Doe, Not Reported in Fed. Supp. (2017)

2017 WL 8640829

2017 WL 8640829
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Dennis Douglas DAVIS, Plaintiff,

v.

Joe DOE Correctional Officer, et al., Defendants.

Civ. No. 9:16-cv-0994 (MAD/DJS)
|
Signed December 28, 2017
|
Filed 12/29/2017

## Attorneys and Law Firms

DENNIS DOUGLAS DAVIS, 16-A-1016, Sullivan Correctional Facility, Box 116, Fallsburg, New York 12733, pro se.

HON. ERIC T. SCHNEIDERMAN, Attorney General of the State of New York, OF COUNSEL: CHRISTOPHER J. HUMMEL, ESQ., The Capitol, Albany, New York 12224, Attorney for Defendants.

## REPORT-RECOMMENDATION and ORDER

DANIEL J. STEWART, United States Magistrate Judge

**\*1** On June 28, 2016, *pro se* Plaintiff Dennis Douglas Davis commenced this action pursuant to 42 U.S.C. § 1983, asserting claims arising from his confinement at Great Meadow Correctional Facility ("Great Meadow") in the custody of the Department of Corrections and Community Supervision ("DOCCS"). Dkt. No. 2, Compl. Following an initial review of the Complaint, counsel for Gary Woodruff, the then-sole named Defendant, submitted documents to assist Plaintiff in identifying the John Doe Defendant, and Plaintiff amended his complaint to include an additional defendant, Correction Officer R. Livingston. Dkt. Nos. 10, 19, 24, 26, & 27. Presently before this Court is the Motion for Summary Judgment of Defendants Livingston and Woodruff ("Named Defendants"), Dkt. No. 35, Defs.' Mot. Summ. J., which Plaintiff has opposed. [1] Dkt. No. 39, Pl.'s Resp. The Named Defendants contend that Plaintiff has failed to exhaust his administrative remedies, and that Plaintiff has failed to establish a failure to intervene claim against Defendant Woodruff. Dkt. No. 35-6, Defs.' Mem. of Law. The Court finds that the Named Defendants have established that Plaintiff has failed to exhaust his administrative remedies and therefore recommends that the Named Defendants' Motion be **granted**. In addition, as discussed below, the Court recommends that Plaintiff's claims against the still unidentified Defendant be **dismissed** *sua sponte*.

[1] Defendant Joe Doe has not appeared in this action because Plaintiff has not identified this individual; accordingly, he has not been served with a Summons and remains unnamed.

## I. LEGAL STANDARD

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no

**Davis v. Doe, Not Reported in Fed. Supp. (2017)**

2017 WL 8640829

genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard ... they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

**\*2**  When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read his supporting papers liberally, and [ ] interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994); *accord, Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II. EXHAUSTION

### A. Exhaustion Procedure

The Prison Litigation Reform Act ("PLRA") provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citation omitted). Exhaustion in prisoner cases covered by § 1997e(a) is mandatory. *Id.* at 524; *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016) (stating that the mandatory language of § 1997e(a) forecloses judicial discretion to craft exceptions to the requirement). Furthermore, § 1997e(a) requires "proper exhaustion," which means using all steps of the administrative process and complying with "deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). The defendant bears the burden of proving that the administrative remedies available to the plaintiff were not exhausted prior to the initiation of a civil action. *Howard v. Goord*, 1999 WL 1288679, at \*3 (E.D.N.Y. Dec. 28, 1999). [2]

[2]  Exhaustion of administrative remedies is an affirmative defense which must be raised by the defendant. *See Jenkins v. Haubert*, 179 F.3d 19, 28-29 (2d Cir. 1999). The Named Defendants properly raised the affirmative defense in their Answer to the Amended Complaint. Dkt. No. 34 at ¶ 14.

In New York, the administrative remedies consist of a three-step Inmate Grievance Program ("IGP"). First, a grievance is submitted to the Inmate Grievance Resolution Committee ("IGRC"), a committee comprised of both inmates and facility employees. N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(b). An inmate must submit a grievance "within 21 calendar days of the alleged occurrence." *Id.* at § 701.5(a). In addition, an inmate may request an extension of the time limit within forty-five days of the date of the alleged occurrence. *Id.* at § 701.6(g). The IGRC reviews and investigates the formal complaint and then

Davis v. Doe, Not Reported in Fed. Supp. (2017)

Case 9:22-cv-01263-GTS-TWD    Document 67    Filed 02/03/25    Page 100 of 104

2017 WL 8640829

issues a written determination. *Id.* at § 701.5(b). Second, upon appeal of the IGRC decision, the superintendent of the facility reviews the IGRC's determination and issues a decision. *Id.* at § 701.5(c). Finally, upon appeal of the superintendent's decision, the Central Office Review Committee makes the final administrative determination. *Id.* at § 701.5(d). Only upon exhaustion of all three levels of review may a prisoner seek relief in federal court. *Bridgeforth v. Bartlett*, 686 F. Supp. 2d 238, 239 (W.D.N.Y. 2010) (citing, *inter alia*, *Porter v. Nussle*, 534 U.S. at 524); *see also Neal v. Goord*, 267 F.3d 116, 121 (2d Cir. 2001), *overruled on other grounds by Porter v. Nussle*, 534 U.S. 516.

### B. Plaintiff's Failure to Exhaust Administrative Remedies

**\*3** In this case, Plaintiff admits that he did not exhaust his administrative remedies relative to his claims. Dkt. No. 39-1, Pl.'s Mem. of Law, at p. 1. At the time of the relevant events of this action, Great Meadow had a grievance program to which inmates had full access. Dkt. No. 35-5, Decl. of Jeffery Hale, dated Aug. 2, 2017, at ¶¶ 4-9. Plaintiff never filed a grievance regarding his claims. *Id.* at ¶¶ 11 & 12, Ex. A.

Instead of utilizing the grievance procedure, Plaintiff submitted a disciplinary appeal form to Commissioner Annucci regarding a Tier 3 Superintendent's Hearing, a copy of which he includes with his opposition. Pl.'s Mem. of Law, at pp. 1 & 12. He also states that he was interviewed by Todd Johnson, a representative of the Office of the Inspector General regarding the facts alleged in this action. *Id.* at p. 1. This interview was not conducted at Plaintiff's request, but on the officials' initiative. *Id.* Plaintiff also states that he was called to the infirmary without his request to have photographs taken of his face and body after the assault, and that the attending Sergeant and three or four other corrections officers informed him that they were aware of the assault. *Id.* Plaintiff therefore asks that the Court "determine if administrative remedy was already in progress by staff and authorities collectively." *Id.* at p. 2.

The parties' submissions establish that Plaintiff did not exhaust his administrative remedies. The above-described interactions, indicating that prison officials were likely aware of the nature of Plaintiff's complaint, are insufficient to constitute "proper exhaustion." *Macias v. Zenk*, 495 F.3d 37, 44 (2d Cir. 2007) ("Alerting the prison officials as to the nature of the wrong for which redress is sought, does not constitute 'proper exhaustion.' ") (internal citation omitted). "Regardless of whether ... informal complaints put the prison officials on notice of his grievance '*in a substantive sense*,' ... to satisfy the PLRA a prisoner must also *procedurally* exhaust his available administrative remedies." *Id.* at 43. The Court will discuss below whether Plaintiff's contentions may state a valid excuse for his failure to exhaust his administrative remedies.

### C. Whether Plaintiff's Failure to Exhaust Administrative Remedies May be Excused

A prisoner's failure to exhaust administrative remedies may nonetheless be excused if remedies were unavailable to the inmate. *Ross v. Blake*, 136 S. Ct. at 1858. As the Supreme Court recently stated, "[a]n inmate ... must exhaust available remedies, but need not exhaust unavailable ones." *Id.* The Court provided three potential circumstances in which administrative remedies may be unavailable: (1) where the administrative procedure technically exists but operates as a "dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use"; and (3) where prison administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859-60. [3]

[3]    The Second Circuit previously set forth a three-part inquiry for when a failure to exhaust may be excused: "(1) administrative remedies are not available to the prisoner; (2) defendants have either waived the defense of failure to exhaust or acted in such a way as to estop them from raising the defense; or (3) special circumstances, such as a reasonable misunderstanding of the grievance procedures, justify the prisoner's failure to comply with the exhaustion requirement." *Ruggiero v. Cty. of Orange*, 467 F.3d 170, 175 (2d Cir. 2006) (citing *Hemphill v. New York*, 380 F.3d 680, 686 (2d

2017 WL 8640829

Cir. 2004)). The Second Circuit has stated that "*Ross* largely supplants our *Hemphill* inquiry by framing the exception issue entirely within the context of whether administrative remedies were actually available to the aggrieved inmate." *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 123 (2d Cir. 2016).

**\*4** In his opposition papers, Plaintiff contends that he did not follow the exhaustion procedure because (1) he feared retaliation; (2) he believed that utilizing the grievance procedure would be futile; and (3) he did not understand the purpose of the grievance procedure. Pl.'s Mem. of Law, at pp. 1 & 2. None of his arguments, however, are sufficient to raise an issue of material fact as to the availability of administrative remedies that would excuse his failure to exhaust.

Plaintiff first alleges that he did not submit a grievance at Great Meadow because he feared that the staff would retaliate against him for pursuing a charge against them. *Id.* Under *Ross*, threats or other intimidation by prison employees may render administrative remedies unavailable. *Ross v. Blake*, 136 S. Ct. at 1860, n.3. Plaintiff's claims, however, amount to nothing more than a "generalized fear of retaliation," which is insufficient to excuse a failure to exhaust. *See Brown v. Napoli*, 687 F. Supp. 2d 295, 297 (W.D.N.Y. 2009) ("[P]laintiff's mere allegation of a generalized fear of retaliation is insufficient to excuse his failure to file a grievance."); *see also Rodriguez v. Cty. of Suffolk*, 2014 WL 3531897, at \*5 (E.D.N.Y. June 30, 2014) ("Courts tend to find mere 'generalized fear' when no actual threat was made.") (internal citation omitted). As the Second Circuit has stated, "[t]he test for deciding whether the ordinary grievance procedures were available must be an objective one: that is, would 'a similarly situated individual of ordinary firmness' have deemed them available." *Hemphill v. New York*, 380 F.3d 680, 688 (2d Cir. 2004). Here, Plaintiff has merely stated a "generalized fear of retaliation," without allegations of any specific threats or other actions that would prevent him from filing a grievance. As such, Plaintiff's fear of retaliation is insufficient to excuse his failure to exhaust.

Similarly, Plaintiff's contention that he believed it would be more effective to file a complaint in court is unavailing. Plaintiff states that he believed that the grievance program was applicable to "typical" or "minor grievances," and that "[i]n short, Plaintiff Davis had assumed that a serious or major offense by a staff member of the institution upon an inmate, demanded a direct channel to an outside authority." Pl.'s Mem. of Law, at p. 2. The case law is clear that "[p]risoners are required to exhaust their administrative remedies 'even if they believe that administrative remedies would be ineffective or futile.' " *Harrison v. Goord*, 2009 WL 1605770, at \*4 (S.D.N.Y. June 9, 2009); *see also Woodford v. Ngo*, 548 U.S. at 89-90 (stating that "exhaustion requirements are designed to deal with parties who do not want to exhaust," including those who "conclude—correctly or incorrectly—that exhaustion is not efficient in that party's particular case.").

Finally, Plaintiff states that he "was not familiar with the prerequisite procedure of the DOCCS Inmate Grievance Program." Pl.'s Mem. of Law, at p. 2. Plaintiff acknowledged receiving information regarding the grievance program during orientation and expressed a basic understand of the grievance program; he does not contend that he lacked access to the administrative remedies. Dkt. No. 35-2, Aff. of Christopher J. Hummel, dated Aug. 16, 2017, Ex. A, Dep. of Dennis Douglas Davis, dated May 5, 2017, at pp. 74-75. Rather, Plaintiff's less than complete understanding of the purpose of the administrative remedies does not render them not "capable of use." *Ross v. Blake*, 136 S. Ct. at 1859.

**\*5** Plaintiff has not provided any evidence that could satisfy any of the three circumstances that could excuse failing to exhaust under *Ross*. Plaintiff does not demonstrate, or allege, that the grievance procedure operated as a dead end in that officers were unable or unwilling to provide relief, or that the administrative scheme was so opaque that it was incapable of use. *Ross v. Blake*, 136 S. Ct. at 1853-54. Nor does Plaintiff allege that prison officials 'misled, threatened, or otherwise deterred' him from utilizing the IGP." *Hooks v. Howard*, 2010 WL 1235236, at \*7 (N.D.N.Y. Mar. 30, 2010).

Accordingly, for the foregoing reasons, the Court finds that Plaintiff has not established an issue of material fact as to the availability of administrative remedies. The Court therefore recommends that the Named Defendants' Motion be **granted** based upon Plaintiff's failure to exhaust. [4]

Davis v. Doe, Not Reported in Fed. Supp. (2017)

Case 9:22-cv-01263-GTS-TWD    Document 67    Filed 02/03/25    Page 102 of 104

2017 WL 8640829

4      Because the Court recommends that the Named Defendants' Motion be granted based upon Plaintiff's failure to exhaust
       his administrative remedies, it does not reach the Named Defendants' contentions regarding the merits of Plaintiff's
       failure to intervene claim.

As to Plaintiff's claims against the John Doe Defendant, I recommend these claims be **dismissed** for a number of reasons: (1)
Plaintiff's failure to comply with a court order under FED. R. CIV. P. 16(f); [5] (2) Plaintiff's failure to prosecute under FED.
R. CIV. P. 41(b) and N.D.N.Y. L.R. 41.2(a); and (3) Plaintiff's failure to serve within 90 days under FED. R. CIV. P. 4(m). I
also note that even if Plaintiff had properly named the John Doe Defendant, it would be of no consequence because, as noted
above, Plaintiff has failed to exhaust his administrative remedies.

5      In connection with assisting Plaintiff in identifying the John Doe Defendants, the District Judge ordered Plaintiff to "take
       reasonable steps through discovery to identify him and, if identified, seek to amend the complaint to add this individual
       as a defendant in this action." Dkt. No. 10.


## III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Named Defendants' Motion for Summary Judgment (Dkt. No. 35) be **GRANTED** and that
Plaintiff's claims against the Named Defendants be **DISMISSED**; and it is further

**RECOMMENDED**, that Plaintiff's claims against Defendant Joe Doe be **DISMISSED** *sua sponte*; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) [6] days within which to file written objections to the foregoing
report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN
FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)
(citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV.
P. 72 & 6(a).

6      If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-
       day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections.
       FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the
       deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)
       (1)(C).


**All Citations**

Not Reported in Fed. Supp., 2017 WL 8640829

End of Document                                              © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Davis v. Doe, Not Reported in Fed. Supp. (2018)

2018 WL 1582230

2018 WL 1582230
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Dennis Douglas DAVIS, Plaintiff,

v.

Joe DOE Correctional Officer, c/o State of New York, Sgt. Woodruff, Correctional
Officer c/o State of New York, and R. Livingston, Correction Officer, Defendants.

9:16-cv-994 (MAD/DJS)
|
Signed 03/27/2018

**Attorneys and Law Firms**

DENNIS DOUGLAS DAVIS, 16-A-1016, Sullivan Correctional Facility, Box 118, Fallsburg, New York 12733, pro se.

OFFICE OF THE NEW YORK STATE ATTORNEY GENERAL, OF COUNSEL: CHRISTOPHER J. HUMMEL, AAG, The Capitol, Albany, New York 12224, Attorney for Defendants.

## ORDER

Mae A. D'Agostino, U.S. District Judge

**\*1** On June 28, 2016, Plaintiff *pro se* Dennis Douglas Davis ("Plaintiff"), an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), commenced this civil rights action against Defendants Sgt. Woodruff, R. Livingston, and Joe Doe (collectively, "Defendants"), pursuant to 42 U.S.C. § 1983, asserting claims arising out of his incarceration at Great Meadow Correctional Facility. *See* Dkt. No. 2.[1]

[1] The cited page numbers for docket entries in this Order refer to those assigned by the Court's electronic filing system ("ECF").

On August 16, 2017, Defendants filed a motion for summary judgment on the grounds that Plaintiff failed to exhaust his administrative remedies. *See* Dkt. No. 35-6 at 5. In a December 29, 2017 Report-Recommendation and Order, Magistrate Judge Stewart recommended granting Defendants' motion for summary judgment. *See* Dkt. No. 41. Magistrate Judge Stewart found that Plaintiff admitted that he did not file an administrative grievance and Plaintiff's explanations did not excuse him from the exhaustion requirement. *See* Dkt. No. 41 at 5-6, 8-10.

In reviewing a report-recommendation and order, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When a party makes specific objections to a magistrate judge's report, the district court engages in *de novo* review of the issues raised in the objections. *See id.; Farid v. Bouey*, 554 F. Supp. 2d 301, 307 (N.D.N.Y. 2008). When a party fails to make specific objections, the court reviews the magistrate judge's report for clear error. *See Farid*, 554 F. Supp. 2d at 307; *see also Gamble v. Barnhart*, No. 02-CV-1126, 2004 WL 2725126, \*1 (S.D.N.Y. Nov. 29, 2004).

On January 10, 2018, Plaintiff filed objections to Magistrate Judge Stewart's Report-Recommendation and Order. *See* Dkt. No. 43. However, Plaintiff's sole objection went to the merits of his claims without contesting Magistrate Judge Stewart's exhaustion determination. *See id.* at 2-3. As such, Plaintiff has made no specific objections.

Davis v. Doe, Not Reported in Fed. Supp. (2018)
2018 WL 1582230

A court may grant a motion for summary judgment only if "the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law." *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court " ' cannot try issues of fact; it can only determine whether there are issues to be tried.' " *Id.* at 36-37 (quotation and other citation omitted).

Having reviewed Magistrate Judge Stewart's December 29, 2017, Report-Recommendation and Order, the record, and the applicable law, the Court concludes that Magistrate Judge Stewart correctly recommended that the Court should grant Defendants' motion for summary judgment.

Accordingly, the Court hereby

**ORDERS** that Magistrate Judge Stewart's Report-Recommendation and Order (Dkt. No. 41) is **ADOPTED** in its entirety for the reasons stated therein; and the Court further

 **\*2** **ORDERS** that Defendants' motion for summary judgment (Dkt. No. 35) is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2018 WL 1582230

---

**End of Document**                                                   © 2025 Thomson Reuters. No claim to original U.S. Government Works.

---